## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

ARI BARUCH TEMAN,
    *Plaintiff,*

—against—

MEDPRO GROUP INC.; ATTORNEY PROTECTIVE; SCOTT PATRICK; LEWIS BRISBOIS BISGAARD & SMITH LLP; CRISTINA YANNUCCI; SAM COHEN; ZELDES NEEDLE COOPER LLP; ROBERT S. COOPER; MAXIMINO MEDINA; JEREMY VIRGIL; DANAHER LAGNESE, P.C.; SILVER HILL HOSPITAL, INC.,
    *Defendants.*

**Civil Action No. 1:26-cv-03517**

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT CRISTINA R. YANNUCCI AND LEWIS BRISBOIS BISGAARD & SMITH LLP AS COUNSEL

## TABLE OF CONTENTS

PRELIMINARY STATEMENT

FACTUAL BACKGROUND

A.  The Underlying Dispute Over Plaintiff's Client File

B.  Ms. Yannucci's Personal Involvement in the Disputed Conduct

C.  Ms. Yannucci's Continuing Personal Involvement in Document-Retention and Discovery

Issues

ARGUMENT

I.  Legal Standard

II.  Ms. Yannucci Is Likely To Be a Necessary Fact Witness on Contested Issues Central to

This Case

III.  Ms. Yannucci's Personal Interests as a Named Defendant Create a Material Conflict

Under Rule 1.7

IV.  Lewis Brisbois Must Also Be Disqualified

V.  Disqualification Should Be Resolved Before Substantive Motion Practice

CONCLUSION

## TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979)

*Burke v. Consolidated Edison Co. of N.Y., Inc.*, 2026 WL 733877 (S.D.N.Y. Mar. 16, 2026)

*Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984)

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981)

*Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir. 1978)

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127 (2d Cir. 2005)

*Kassis v. Teacher's Ins. & Annuity Ass'n*, 93 N.Y.2d 611 (1999)

*MacArthur v. Bank of N.Y.*, 524 F. Supp. 1205 (S.D.N.Y. 1981)

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009)

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437 (1987)

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 689 N.E.2d 879 (N.Y. 1997)

*Wheat v. United States*, 486 U.S. 153 (1988)

## Rules and Statutes

New York Rule of Professional Conduct 1.7

New York Rule of Professional Conduct 1.9

New York Rule of Professional Conduct 1.10

New York Rule of Professional Conduct 3.7

S.D.N.Y. Local Civil Rule 1.5

## PRELIMINARY STATEMENT

Plaintiff Ari Baruch Teman respectfully moves this Court, pursuant to its inherent authority, Local Civil Rule 1.5, and the New York Rules of Professional Conduct, for an order disqualifying Cristina R. Yannucci and Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") from serving as defense counsel in this action.

Plaintiff recognizes that disqualification is a serious remedy that courts in this District approach with caution, and that motions to disqualify may be used for tactical purposes. Plaintiff does not seek this relief lightly. Disqualification is sought here because the structure of Ms. Yannucci's representation — not merely that she has been named as a defendant — creates concrete and ongoing risks to the integrity of these proceedings that cannot be adequately addressed by lesser measures.

Ms. Yannucci is not litigation counsel with only peripheral knowledge of the underlying events. She is a named defendant whose own contemporaneous conduct forms part of the factual record at issue. Plaintiff's claims arise in material part from communications personally authored

and transmitted by Ms. Yannucci in the days immediately preceding the filing of this action — communications concerning Plaintiff's client file and the scope of a prior Order of this Court. Those communications are now disputed factual matters central to the litigation.

Three independent grounds warrant disqualification. First, Ms. Yannucci is a likely necessary fact witness on contested issues at the core of this case — including the communications she authored, the basis for positions taken regarding Plaintiff's client file, and her communications with co-defendants and insurers. An attorney whose testimony is likely to be necessary on contested factual issues faces serious advocate-witness concerns under Rule 3.7 that implicate her continued participation as litigation counsel. Second, her personal exposure as a named defendant creates a direct conflict under Rule 1.7(a)(2) that materially limits her ability to exercise independent professional judgment on behalf of her clients. Third, because Ms. Yannucci's disqualification is required, Lewis Brisbois — itself a named defendant with two of its attorneys named as defendants for the same conduct — is subject to firm-wide imputation under Rule 1.10, and screening is impractical because the conduct at issue was carried out in the course of the representation itself.

This conflict did not exist in the abstract before this action was filed. It crystallized on April 23, 2026, when Ms. Yannucci personally transmitted the communication that is among the factual subjects of this litigation — two days after Judge Liman's order and four days before this complaint was filed. Plaintiff brings this motion promptly following that crystallization and Ms. Yannucci's continued appearance as litigation counsel in this action, before any substantive motion practice has commenced. The motion is therefore timely and the relief sought is appropriately tailored to the circumstances that have actually arisen.

Defendants nevertheless elected to proceed with Ms. Yannucci as litigation counsel after she accepted service as a named defendant on May 11, 2026. With full knowledge of her own status as a party, she appeared as litigation counsel for her co-defendants in the same action. The defendants' representation is funded by institutional insurers — Defendants MedPro Group Inc. and Attorney Protective — with access to a broad range of qualified and unconflicted counsel. The choice to proceed with a named defendant as litigation counsel, when unconflicted alternatives were readily available, is relevant to the Court's assessment of any hardship arguments Defendants may raise in opposition to this motion. Any disruption arising from disqualification is the consequence of a knowing choice, not an unavoidable circumstance.

## FACTUAL BACKGROUND

### A.  The Underlying Dispute Over Plaintiff's Client File

Plaintiff retained Zeldes Needle Cooper LLP ("ZNC") to represent him in several matters. Following termination of that relationship, Plaintiff made repeated requests for return of his client file across those matters. The requests were not fulfilled to Plaintiff's satisfaction, giving rise to the dispute underlying the claims in this action.

On April 21, 2026, this Court issued an Order in *Teman v. Zeldes Needle Cooper LLP*, No. 24-cv-9830 (S.D.N.Y.) ("the Related Action"), addressing Plaintiff's motion to compel production of his client file. This Court recognized that a former client "presumptively has full access, with narrow exceptions, to the entire attorney's file in a represented matter, upon termination of the attorney-client relationship," while denying relief on procedural grounds arising from the discovery stay then in place in the Related Action, and noting that a client who seeks the file upon

denial may commence a separate proceeding to recover it. Dkt. No. 70 at 4. That stay has since been lifted.

Plaintiff commenced this separate action seeking recovery of the file and related relief, consistent with this Court's direction in the Related Action Order. This Court's familiarity with the Related Action and the conduct at issue uniquely positions it to evaluate both the disqualification motion and the underlying claims without the need for extensive additional background briefing.

**B.  Ms. Yannucci's Personal Involvement in the Disputed Conduct**

Two days after Judge Liman's Order, on April 23, 2026, Ms. Yannucci transmitted a written communication to Plaintiff, expressly on behalf of "our clients Zeldes Needle Cooper, LLP and Jeremy Virgil," stating in relevant part:

> *As pertains to the 'files' other than those addressed by the Court's Order, please identify the 'files' you seek, as well as instructions for the production — paper or electronic. In response, ZNC will assess the cost of such production and provide you with an estimate and thereafter an invoice for same, payment of which will be required in accordance with Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP, 689 N.E.2d 879, 881 (N.Y. 1997).*

Plaintiff disputes the legal and factual basis for those positions. Plaintiff contends that the communication mischaracterized the scope of Judge Liman's Order, improperly conditioned production on advance identification of files and payment, and that the conditions imposed were inconsistent with Plaintiff's rights as a former client. These are contested factual and legal matters that will be central to the claims and defenses in this litigation.

This communication is not a peripheral or historical fact. It was personally authored by Ms. Yannucci four days before Plaintiff filed the Complaint in this action. It is specifically identified in the Complaint as part of the factual basis for multiple claims. It concerns events in which Ms. Yannucci was a direct participant, not merely a recipient of information or a later advisor.

Ms. Yannucci has also represented both ZNC and Jeremy Virgil jointly throughout this dispute, as reflected in her April 23 communication. Both ZNC and Virgil are named defendants in this action.

## C.  Ms. Yannucci's Continuing Personal Involvement in Document-Retention and Discovery Issues

Subsequent to the April 23 communication, Ms. Yannucci has continued to personally manage discovery in the Related Action. On or about May 2026, she transmitted a written communication to Plaintiff purporting to constitute a "good faith attempt to resolve" discovery disputes in that action. Exhibit D. In that communication, she personally took positions on: (1) the scope and meaning of Judge Liman's April 21, 2026 Order as applied to specific categories of documents; (2) the existence and organization of a "docketing system" and "accounts, platforms, and systems" used to maintain documents relevant to this litigation; (3) the custodianship of communications related to the matters at issue; and (4) the characterization of which matters and communications are within or outside the scope of Plaintiff's file rights.

Each of those positions draws on Ms. Yannucci's personal knowledge of the document systems, communications, and file organization at ZNC — knowledge that is itself a contested factual subject in this litigation. In taking those positions as counsel, Ms. Yannucci has become personally associated with factual assertions concerning disputed document-retention and

custodianship issues that are directly relevant to the claims in this action. The advocate-witness conflict is therefore not hypothetical or limited to a future trial. It is already operative in the Related Action and will be equally operative here as this case proceeds through discovery and motion practice.

## ARGUMENT

### I. Legal Standard

Disqualification motions in the Second Circuit are disfavored and subject to careful scrutiny. *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). Courts recognize that such motions are sometimes used tactically to harass opposing counsel or delay proceedings, and therefore impose a high burden on the movant. *Murray v. Metro. Life Ins. Co.,* 583 F.3d 173, 178 (2d Cir. 2009). The movant must demonstrate that disqualification is necessary to preserve the fairness and integrity of the adversarial process — not merely that a technical conflict exists. *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979).

At the same time, courts retain broad inherent authority to disqualify counsel where continued representation would materially impair the integrity of the proceedings, subject an attorney to an irreconcilable conflict of interest, or require counsel to testify about disputed matters central to the case. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748–49 (2d Cir. 1981). The Court applies the New York Rules of Professional Conduct as the relevant standard. *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978).

The Court need not resolve the ultimate merits of Plaintiff's claims to determine whether the conflicts presented by the current structure of representation warrant disqualification. The question is whether the conflict exists on the face of the record as currently constituted. *See Glueck,* 653 F.2d at 749.

This motion satisfies the applicable standard. The conflict is not manufactured or speculative. It arises directly from Ms. Yannucci's own documented, contemporaneous conduct that is now disputed and central to this litigation.

## II.  Ms. Yannucci Is Likely To Be a Necessary Fact Witness on Contested Issues Central to This Case

Rule 3.7(a) of the New York Rules of Professional Conduct provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on a significant issue of fact. Courts in this District have recognized that advocate-witness concerns may arise before trial where counsel's direct factual involvement risks blurring the distinction between witness and advocate, impairing the truth-seeking process, and prejudicing the integrity of the proceedings. *See MacArthur v. Bank of N.Y.,* 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981); *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.,* 69 N.Y.2d 437, 446 (1987).

Ms. Yannucci possesses first-hand, non-cumulative knowledge on the following contested factual issues:

- The April 23, 2026 communication — which she authored — including the factual basis for each position asserted therein, her understanding of Judge Liman's Order at the time, and the instructions or information she received before sending it;

- Her communications with co-defendants ZNC, Virgil, and others, and with insurer defendants, regarding Plaintiff's client file requests and the strategy for responding to them;

- The basis for the positions taken regarding which files were covered by Judge Liman's Order and which were not, including whether that characterization reflected a good-faith interpretation of the Order or instructions from other parties;

- The factual circumstances surrounding the continued limitation on access to Plaintiff's files across the four matters in which ZNC represented him; and

- The existence, organization, and custodianship of document retention systems at ZNC — including the "docketing system" and "accounts, platforms, and systems" used to maintain communications and files — concerning which Ms. Yannucci has already made factual representations as counsel in the Related Action (*see* Exhibit D); and

- The basis for jointly representing both ZNC and Virgil in this dispute, and communications between those clients regarding the disputed events.

These are not peripheral or cumulative matters. They concern the factual events underlying Plaintiff's claims and the defenses likely to be asserted. Ms. Yannucci is not a witness who happens to have knowledge of some incidental fact — she is the author of a communication that is itself one of the operative events in dispute. No other witness can provide equivalent testimony regarding her own state of mind, her own communications, or her own factual basis for the positions she took. Unlike cases involving merely background factual knowledge possessed by litigation counsel, the disputed communication here is itself among the operative events underlying Plaintiff's claims.

Permitting Ms. Yannucci to continue as litigation counsel creates a substantial risk that she will function as an unsworn witness — making factual representations to the Court during argument and motion practice regarding the meaning and basis of her own communications, without being subject to cross-examination or the constraints of sworn testimony. This is precisely

the prejudice that Rule 3.7 is designed to prevent. Absent disqualification or other protective measures, Plaintiff may be placed in the untenable position of simultaneously litigating against and potentially cross-examining current litigation counsel concerning disputed operative facts.

Courts have recognized that the advocate-witness concern is not limited to trial. Where counsel's direct factual involvement in disputed events means that her advocacy throughout the litigation will necessarily draw on personal knowledge not available to opposing counsel or the Court, the conflict operates at every stage. *See MacArthur*, 524 F. Supp. at 1208. That is the case here: Ms. Yannucci's personal involvement means that arguments she advances in motion practice, positions she asserts during discovery, and representations she makes to the Court will be informed by facts within her personal knowledge that are also at issue in this case.

### III.  Ms. Yannucci's Personal Interests as a Named Defendant Create a Material Conflict Under Rule 1.7

Rule 1.7(a)(2) of the New York Rules of Professional Conduct prohibits representation where there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own personal interests. The issue is not merely that counsel has been named as a defendant. Rather, it is that counsel's own conduct is intertwined with the disputed factual issues central to the litigation, such that her personal exposure may materially influence strategic decisions made on behalf of her clients.

Here, Plaintiff's claims concern events in which Ms. Yannucci was personally involved. Her continued representation of ZNC, Virgil, and co-defendants creates a risk that the following strategic decisions will be shaped, consciously or otherwise, by her own personal exposure:

- How to characterize the April 23, 2026 communication — which is simultaneously a central factual component of Plaintiff's claims and a communication she must defend as counsel;

- Whether to allocate responsibility among defendants in a manner that minimizes her own exposure versus the exposure of ZNC or individual attorneys;

- What positions to take on disputed factual issues concerning the file-withholding dispute, where her own involvement may make certain admissions or concessions individually costly;

- Settlement considerations, where her interests as a defendant may diverge from those of her insurer clients or ZNC; and

- The scope of discovery to pursue or resist, where documents and communications involving her personally are likely to be relevant.

This is not a hypothetical or future conflict. The April 23 communication is already part of the operative record. Decisions about how to characterize it, what context to provide, and what positions to take concerning its legal significance are decisions Ms. Yannucci will be required to make as counsel in the ordinary course of this litigation — decisions in which her personal interests are directly engaged.

The concern is compounded by her joint representation of ZNC and Jeremy Virgil, both of whom are named defendants. As this litigation develops, questions of relative responsibility between the firm and the individual attorney are likely to arise. An attorney who is herself a defendant cannot give each client undivided and independent advice on how to navigate those questions. *See Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir. 1984).

### IV.  Lewis Brisbois Must Also Be Disqualified

Under Rule 1.10(a) of the New York Rules of Professional Conduct, a conflict of interest affecting one attorney in a firm is imputed to all other attorneys in the firm. Because Ms. Yannucci's disqualification is warranted on the grounds set forth above, Lewis Brisbois as a firm must also withdraw from representation of any defendant in this action.

The imputation here is not merely formal. Lewis Brisbois is itself a named defendant. Its own alleged conduct is at issue in the Complaint. Critically, Ms. Yannucci is not the only Lewis Brisbois attorney named as a defendant: Sam Cohen, also a Lewis Brisbois attorney who participated in the same representation, is Defendant No. 6 in this action. Complaint ¶ 13. Both Mr. Cohen and Ms. Yannucci are alleged to have participated in the same conduct giving rise to Plaintiff's claims. Both are likely necessary fact witnesses on contested issues. The firm therefore does not have a pool of uninvolved attorneys who can simply step in to replace Ms. Yannucci — the conflict runs through the firm's own alleged participation in the disputed events, not merely through one attorney's personal involvement.

Screening is not a practical remedy in these circumstances. The conduct at issue was carried out in the course of Lewis Brisbois's representation of ZNC and Virgil — it arose from within the representation itself. Information barriers between Ms. Yannucci and other firm attorneys would not cure the conflict because the tainted information is not extrinsic; it is the substance of the representation. Where the disqualifying conflict is rooted in the representation at issue, rather than a prior unrelated matter, screening is generally unavailable. See Kassis v. Teacher's Ins. & Annuity Ass'n, 93 N.Y.2d 611, 617–18 (1999). That principle applies with particular force here, where two of the firm's own attorneys are named defendants for conduct arising directly from the

representation. There is no apparent Lewis Brisbois attorney presently involved in this matter who would not either be a named defendant, possess relevant factual knowledge of the disputed events, or be subject to imputed disqualification arising from the firm's own status as a party. These concerns are particularly acute where a law firm simultaneously appears as counsel and party concerning the same disputed conduct. The firm disqualification is therefore not a byproduct of Ms. Yannucci's individual conflict — it is independently required by the firm's own position in this litigation.

One further consideration bears on the balancing of interests implicated by this motion. Courts weighing disqualification routinely consider whether the relief would impose undue financial hardship on the party whose counsel is disqualified. That concern carries reduced weight here. The defense of ZNC, Virgil, and the other defendants is funded by Defendant MedPro Group Inc. and its affiliate Attorney Protective — among the largest professional liability insurers in the United States. The financial burden of retaining independent, conflict-free counsel is therefore not present in the way it would be for an individual or small-firm defendant of limited means. The transition to unconflicted counsel is readily achievable without prejudice to any defendant's ability to mount a full defense.

Moreover, MedPro is itself a named defendant in this action with its own financial interests in the litigation outcome. Lewis Brisbois is therefore in the position of being retained and funded by a party whose interests in how this litigation is conducted may not be perfectly aligned with those of ZNC, Virgil, and the other defendants it funds. That structural tension is an additional reason why the current representation arrangement warrants the Court's attention, independent of the advocate-witness and personal-interest conflicts identified above.

**V.  Disqualification Should Be Resolved Before Substantive Motion Practice, and the Court Should Note That Ms. Yannucci's Opposition Is Itself Subject to the Conflict**

Plaintiff respectfully requests that the Court resolve this motion on an expedited basis and defer any substantive motion practice — including any motion to dismiss — pending its resolution. This request is not an attempt to delay the proceedings. It is directed to a concrete procedural problem that will arise immediately if the motion is not resolved first.

Any motion to dismiss filed by Ms. Yannucci before disqualification is resolved will require her to characterize the legal sufficiency of allegations in which her own conduct is centrally implicated. She will argue the meaning and legal effect of her own communications. She will advance positions about disputed factual events in which she was personally involved. The issue is not merely that counsel communicated a legal position before litigation commenced. The issue is that counsel's own communications and factual understanding are now disputed subjects of the litigation itself. The conflict creates a substantial risk that litigation positions concerning those communications may be influenced by counsel's own personal interests.

Moreover, if substantive motions are decided before disqualification is resolved and the conflict is later addressed adversely to Defendants, there may be a question whether any defendant was adequately represented at the time. Resolving disqualification first eliminates that risk and promotes efficient administration of the case. *See Wheat v. United States,* 486 U.S. 153, 160 (1988) (courts have independent interest in ensuring that criminal proceedings are not tainted by conflicts of interest, applicable by analogy to civil proceedings).

The same structural concerns identified in this motion may also affect any opposition briefing submitted by counsel whose own conduct is directly implicated in the disputed events. The

Court may wish to take that circumstance into account in evaluating any opposition filed, and may consider whether defendants would benefit from the opportunity to obtain independent counsel for the limited purpose of responding to this motion.

Early resolution of this motion also serves the practical interests of all parties and the Court. Disqualification at the outset of litigation — before discovery has commenced, before depositions have been taken, and before Defendants have relied on current counsel for substantive strategic work — minimizes transition costs and avoids the far greater disruption that would result from disqualification later in the proceedings. Plaintiff therefore requests that any order of disqualification include a period of forty-five (45) days within which Defendants may retain and substitute unconflicted counsel, during which current counsel may assist solely in transitioning the matter. The alternative — deferring the issue until closer to trial — increases the risk that the conflict will deepen, that attorney-client communications will become further entangled with the disputed conduct, and that disqualification, if ultimately required at a later stage, will be substantially more disruptive than it would be today. The relief requested is calibrated to minimize, not maximize, burden on the other parties.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

1. Disqualifying Defendant Cristina R. Yannucci from serving as counsel for any defendant in this action, with a period of forty-five (45) days within which Defendants may retain and substitute unconflicted counsel, during which current counsel may assist solely in transitioning the matter;

2. Disqualifying Defendant Lewis Brisbois Bisgaard & Smith LLP from serving as counsel for any defendant in this action;

3. In the alternative, if the Court does not disqualify Lewis Brisbois at this stage, precluding Ms. Yannucci from serving as trial counsel and requiring that defendants retain separate independent counsel for purposes of any matters in which Ms. Yannucci's testimony, communications, or personal conduct are at issue;

4. Directing that the Court resolve this motion on an expedited basis before substantive motion practice proceeds; and

5. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**s/ Ari Baruch Teman**
Ari Baruch Teman
Pro Se Plaintiff
1521 Alton Road #888
Miami Beach, FL 33139
ari@teman.com
781-718-3375

---

**EXHIBITS IN SUPPORT**

- Exhibit A — Email chain: Teman / Yannucci / Lewis Brisbois, April 22–27, 2026 (Notice of Ongoing Malpractice Exposure and client file production)

- Exhibit B — Order, Teman v. Zeldes Needle Cooper LLP, No. 24-cv-9830-LJL, Dkt. No. 70 (S.D.N.Y. Apr. 21, 2026)

- Exhibit C — Complaint, Teman v. MedPro Group Inc. et al., No. 1:26-cv-03517, Dkt. No. 1 (S.D.N.Y. Apr. 27, 2026)

- Exhibit D — Letter from Cristina R. Yannucci to Plaintiff re: discovery disputes in Teman v. Zeldes Needle Cooper LLP, No. 24-cv-9830-LJL (S.D.N.Y.), including positions taken on document retention systems, custodianship of communications, and scope of Judge Liman's April 21, 2026 Order