UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARI TEMAN,
    Plaintiff,

  v.               Case No. 1:26-cv-03517

MEDPRO GROUP INC., *et al.*,
    Defendants.

---

**EMERGENCY LETTER MOTION TO COMPEL IMMEDIATE PRODUCTION OF CLIENT FILE**

Dear Judge Liman:

Plaintiff respectfully submits this emergency motion to compel immediate production of his own client file and related electronically stored information ("ESI") — materials uniquely within Defendants' possession, custody, or control. It is difficult to reconcile the resistance Plaintiff has encountered with the ordinary handling of a client file, particularly after this Court has already recognized that the file is Plaintiff's property. Despite holding the file for over a year, Defendants have produced not a single substantive document from it. Instead, as set out below, Defendants have recently begun demanding third-party authorizations for materials that successor counsel would ordinarily already possess — including the prior-counsel legal file and HIPAA authorizations for providers whose records and releases were already obtained in the underlying action Defendants inherited. That conduct raises substantial concerns that portions of the file may no longer exist in their original maintained form, and creates a real risk that any eventual production will constitute a reconstructed file rather than the original maintained client file Plaintiff is entitled to.

Plaintiff does not seek to litigate the merits of *Teman v. Zeldes Needle Cooper LLP* here, and does not ask the Court to find, at this stage, that any specific document has been destroyed or fabricated. This motion concerns one discrete and urgent issue: the present location, custodial continuity, integrity, and immediate native-format production of Plaintiff's own client file, before further supplementation, reorganization, or third-party reconstruction can alter the file as it exists today.

**Procedural Posture and Plaintiff's Own Compliance**

This action follows this Court's April 21, 2026 Order in the related action, *Teman v. Zeldes Needle Cooper LLP*, No. 24-cv-9830 (Dkt. 70), which recognized that a former client presumptively has full access to the entire attorney file upon termination of the representation, while denying relief on procedural grounds arising from the discovery stay then in place and directing that Plaintiff may commence a separate proceeding to recover the file. That stay has since been lifted, and Plaintiff commenced this action to recover the file and related relief consistent with that direction.

Separately, Plaintiff has substantially complied with the Court's May 21, 2026 Order governing his responses to Defendants' discovery requests. Plaintiff has produced over 200 Bates-numbered documents; served Rule 26 disclosures, interrogatory responses, and responses to requests for production; identified ESI custodians and repositories; produced HIPAA, attorney, and tax authorizations; identified witnesses and providers; produced available expert materials; and

supplemented his damages computations.

Defendants, by contrast, have produced nothing of substance from the underlying client file — no native files, metadata, custodial information, litigation communications, or transferred prior-counsel materials from the underlying PATH/Braverman litigation — notwithstanding this Court's recognition of Plaintiff's presumptive right to that file.

**The Recent Authorization Demands Raise Substantial Integrity and Custodial Concerns**

On May 28, 2026, defense counsel Cristina R. Yannucci of Lewis Brisbois emailed Plaintiff a list of record authorizations Defendants now seek. A true and correct copy of that email is attached as **Exhibit A**. The email is significant in two respects.

First, Defendants demand an authorization for "the legal file maintained by Glen Alan Kendall, Davidoff Law Firm, PLLC for the Underlying Action" — even though Defendants assumed representation of Plaintiff from prior counsel years ago. Successor counsel ordinarily receives and maintains the predecessor's file as a matter of course. A request that Plaintiff now authorize Defendants to obtain that same file from prior counsel is difficult to reconcile with Defendants' possession of a complete and continuously maintained successor-counsel client file.

Second, Defendants demand HIPAA authorizations for numerous medical providers central to the underlying litigation — including PATH Medical, the NYU Sleep Center, Lenox Hill Hospital, Weill Cornell Medical Center, Silver Hill Hospital, Dr. Zvi Osterweil, Dr. Glenn Waldman, Centerpoint Mental Health Center, the Simi Valley Surgery Center, and others — whose records and corresponding HIPAA releases were already obtained, used, and made part of the record in the underlying action. The underlying complaint in *Teman v. Braverman* — the defaulted action that forms the basis of Plaintiff's malpractice claims against Defendants in *Teman v. Zeldes Needle Cooper LLP* — is attached as **Exhibit B**. It names these very providers and is built on their records. The same complaint is filed as Dkt. 87-1 in *Teman v. Zeldes Needle Cooper LLP* and was produced in this litigation under Bates stamps BATES001A00003802026-04-29 through BATES001A00004032026-04-29. The records and authorizations for these providers would ordinarily have been within the underlying client file that Defendants inherited and were obligated to maintain.

Plaintiff acknowledges that Defendants characterize at least some of the requested authorizations as relating to pending expert discovery, and that Defendants disclaim any obligation or ability to identify every possible provider, asserting that such information lies within Plaintiff's knowledge. Plaintiff therefore does not ask the Court to find, on this record, that any portion of the file has been destroyed or fabricated. The point is narrower and more pressing: a request to re-obtain, from third parties, records and authorizations that should already reside in a maintained successor-counsel file appears inconsistent with the continued existence of that file in its original maintained form, and at minimum raises questions regarding its completeness, custodial continuity, and present condition.

Plaintiff cannot presently determine whether portions of the file were never obtained, were lost or separated during attorney or staff transitions, remain solely with the insurer, exist only in archival, vendor, backup, or legacy systems, or are now being reassembled through the third-party authorizations sought in Exhibit A. Defendants and their insurer have had more than a year to identify, preserve, organize, and produce the file. Other former counsel produced comparable materials substantially more promptly.

The core concern is one of preservation and evidentiary integrity. Each additional round of third-party collection, re-obtaining of records, supplementation, reorganization, or metadata loss changes the state of the maintained file and increases the risk that the eventual production will no longer authentically reflect the file as it actually existed. Plaintiff is concerned not merely with documents that may be missing, but with the danger that continued reconstruction could yield a file that no longer accurately reflects the maintained historical client file. The Court should require production of the file as it presently exists, because reconstruction of a historical client file through later third-party collection, supplementation, reorganization, or metadata-stripping risks producing what is, in practical effect, a forged or materially altered evidentiary record rather than the original maintained client file — particularly if metadata, chronology, authorship, or custodial integrity are altered or obscured in the process. For this reason, Plaintiff respectfully requests that the Court order production of the file as it presently exists immediately — by Monday, June 1, 2026 — before the third-party authorizations sought in Exhibit A can be used to collect, supplement, or reassemble the file from outside sources.

**Native-Format Production and Metadata Are Central to This Dispute**

Because the integrity, completeness, and custodial continuity of the file are the central concerns, the form of production matters as much as the fact of production. Plaintiff requests that responsive ESI be produced in original native format where such files exist (including DOC, DOCX, XLS, XLSX, PDF, PST, and MSG), together with associated metadata and load files, and that Defendants not substitute flattened PDFs, TIFF renderings, screenshot compilations, static image renderings, or image-only exports for existing native files.

These conversions are not cosmetic. Flattening or imaging a native file strips or obscures metadata, authorship information, embedded comments, revision and edit history, hidden text, formulas, creation and modification timestamps, hyperlinks, and custodial information. In an ordinary document dispute that loss might be tolerable. Here it is dispositive: the very questions Plaintiff raises — when materials were created, by whom, in what sequence, whether and when they were modified, and whether the file has been reorganized or reassembled — can only be answered from metadata and native file characteristics. Metadata is therefore directly relevant to authenticity, completeness, preservation, chronology, authorship, custodial continuity, and overall evidentiary integrity.

An image-only or flattened production would not merely be less convenient; it could mask the very reconstruction and metadata-loss concerns this motion is intended to surface, and would make it difficult or impossible to distinguish an original maintained file from a later reassembled one. Native production with intact metadata is the only form of production that allows the Court and Plaintiff to assess whether the file produced reflects the historical maintained record.

**The Court Can and Should Grant This Relief Now**

The relief requested needs no further parties. All Defendants have appeared except Silver Hill, whose appearance remains pending and is not relevant to the obligation of Zeldes Needle Cooper LLP and its attorneys to produce Plaintiff's client file to him. The materials are held by Defendants Zeldes Needle Cooper LLP, Virgil, Cooper, and Medina — all of whom have appeared — and concern Plaintiff's own client file already within their control.

**Requested Relief**

Plaintiff respectfully requests an order directing Defendants to:

1    Immediately produce the complete client file relating to the underlying PATH/Braverman litigation maintained by Defendants and/or their insurer, in the form and condition in which it presently exists;

2    Produce such materials in original native format where reasonably available (DOC, DOCX, XLS, XLSX, PDF, PST, MSG, and related types), with associated metadata and load files;

3    Refrain from substituting TIFF renderings, flattened PDFs, screenshot compilations, static image renderings, or image-only reproductions for existing native files;

4    Identify the custodians, repositories, archival systems, vendors, and insurer-maintained systems where responsive materials are or were held;

5    Identify any responsive materials that are missing, unavailable, destroyed, lost, or not presently locatable;

6    State whether any portion of the file was transferred, removed, archived, deleted, separated, reorganized, or reconstructed following attorney or staff transitions;

7    State whether Defendants presently possess the medical records and HIPAA authorizations for the providers identified in Exhibit A that were obtained in connection with the underlying action, and if not, account for their absence;

8    Provide a sworn declaration from a knowledgeable custodian or representative of Defendants and/or their insurer attesting to: (a) the current custodians of the file; (b) all repositories, archival systems, backup systems, vendor systems, and insurer-maintained systems where responsive materials are or were held; (c) whether any portions of the file are archived, missing, or unavailable; (d) whether any portions were transferred, separated, reorganized, or reconstructed during attorney or staff transitions; and (e) whether Defendants contend that the production made constitutes the complete client file as it was historically maintained; and

9    Grant such further relief as the Court deems appropriate. The custody, preservation, and integrity issues identified herein bear on Plaintiff's pending Motion to Disqualify Defendant Cristina R. Yannucci and Lewis Brisbois Bisgaard & Smith LLP (Dkt. 15), to the extent the handling and preservation of the file render any individual a necessary fact witness on those issues.

Two exhibits are attached in support of this motion: **Exhibit A** (defense counsel's May 28, 2026 email demanding record authorizations) and **Exhibit B** (the underlying complaint in *Teman v. Braverman*, naming the providers for whom Defendants now seek fresh authorizations).

Respectfully submitted,

/s/ Ari Teman
Ari Teman
Plaintiff Pro Se
Dated: May 28, 2026
Tel Aviv, Israel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARI TEMAN,
    Plaintiff,

  v.           Case No. 1:26-cv-03517

MEDPRO GROUP INC., *et al.*,
    Defendants.

**[PROPOSED] ORDER**

Upon Plaintiff's Emergency Letter Motion to Compel Immediate Production of Client File, and the Court having reviewed the parties' submissions, it is hereby ORDERED:

1   Defendants Zeldes Needle Cooper LLP, Jeremy Virgil, Robert Cooper, and Maximino Medina, and any other attorney who was employed by or affiliated with Zeldes Needle Cooper LLP at the time the firm represented Plaintiff and who possesses any documents belonging to Plaintiff Ari Teman or any materials that would be considered part of Plaintiff's "client file," together with any insurer, vendor, repository, litigation-support provider, or agent acting on their behalf, shall produce the complete client file relating to the underlying PATH/Braverman litigation within their possession, custody, or control.

2   Production shall include, without limitation: pleadings; correspondence; emails and attachments; notes, memoranda, and calendars; medical records; expert materials; discovery materials; billing and docketing records; metadata and other ESI; transferred prior-counsel materials; and archived, backup, insurer-maintained, and litigation-support/vendor-maintained materials.

3   To the extent reasonably available, responsive ESI shall be produced in original native format (including DOC, DOCX, XLS, XLSX, PDF, PST, MSG, and related formats), with associated metadata and load files.

4   Defendants shall not substitute TIFF renderings, flattened PDFs, screenshot compilations, or image-only reproductions for existing native files.

5   Defendants shall identify (a) all custodians of the file; (b) all repositories, archival, backup, and vendor systems where responsive materials are or were held; (c) any responsive materials that are missing, unavailable, destroyed, deleted, lost, or not presently locatable; and (d) whether any portion of the file was transferred, archived, removed, separated, reconstructed, or reorganized following attorney or staff transitions.

6   Defendants shall confirm whether the production made under this Order constitutes the complete client file maintained by Defendants and/or their insurer relating to the underlying PATH/Braverman litigation.

7   Defendants shall provide a sworn declaration from a knowledgeable custodian or representative attesting to the matters set forth in paragraph 5 and confirming whether the production constitutes the complete client file as historically maintained.

8    Production under this Order — including all native files, metadata, custodial disclosures, the sworn declaration, and related materials — shall be completed on or before Monday, June 1, 2026.

9    Nothing herein waives any properly asserted privilege; withheld materials shall be identified on a privilege log compliant with Fed. R. Civ. P. 26(b)(5).


SO ORDERED.


Dated: _____
New York, New York


_____
HON. LEWIS J. LIMAN
United States District Judge