## Ari B. Teman

The Honorable Lewis J. Liman                                                        **VIA ECF**
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620, Courtroom 15C
New York, New York 10007

**Re:** *Teman v. MedPro Group Inc., et al.,* No. 1:26-cv-03517-LJL — Plaintiff's Response to
Defendants' Further Letter of June 4, 2026 (ECF No. 29)

Dear Judge Liman:

Plaintiff respectfully submits this brief response to the new arguments in Defendants' June 4 letter
(ECF No. 29) and will not repeat his prior submissions. Defendants open by arguing that Your
Honor's rules do not permit reply letters; ECF No. 29 is itself a further reply, filed the same day
as Plaintiff's. Plaintiff addresses only what is new.

### 1. For the Third Time, Defendants Concede the Production Is Incomplete

Defendants again represent that "the remainder of the files ZNC maintained as part of its legal
representation of Plaintiff are being collected, processed, and prepared for production." (ECF No.
29 at 3; see ECF No. 26 at 2.) That representation — now made twice in two days — disposes of
mootness. A dispute over the completeness of a production cannot be moot while the producing
party tells the Court the production is ongoing. Nor was the May 29 production the client file:
Defendants' own transmittal describes "responsive and non-privileged documents," redacted for
non-responsiveness under relevance limits confined to the Underlying Action — materially
narrower than the entire file to which a former client is presumptively entitled under *Sage Realty*
across all represented matters.

### 2. The Relief Should Not Await ECF No. 15 — Though Even That Route Permits Immediate Relief

Defendants argue this motion should be set aside in favor of Plaintiff's pending Motion for
Preliminary Injunction (ECF No. 15). Plaintiff does not consent to that course. The instant motion
seeks urgent, preservation-focused relief made necessary by events that post-date ECF No. 15 —
the May 29 production itself — and the emergency is of Defendants' own making: they delivered
a production in which thousands of documents were batch-converted to image-only PDFs,
without a single native email or word-processing file, and padded with publicly available docket
materials from other cases. Defendants cannot manufacture the circumstances requiring
emergency relief and then insist the request wait for ordinary motion practice concluding after
their July 10 response deadline. The claim — return of a client's own file — is summary in
nature, does not await merits discovery, and is the very claim this separate proceeding,
contemplated by the Court's April 21, 2026 Order in the related malpractice case, exists to
resolve. In any event, even were the Court inclined to treat ECF No. 15 as the vehicle, no delay
would follow: the Court may treat the existing letter record (ECF Nos. 21, 25, 27, and
Defendants' responses at ECF Nos. 22, 26, 29) as the motion papers on ECF No. 15 and grant the
relief now, without further briefing.

Examined on its face, that production raises substantial questions whether it reflects the client file
as maintained in the ordinary course of business or a later reconstruction assembled from
available sources. More than 125 documents (over 60 email threads) that Plaintiff himself
previously provided to Defendants — communications addressed or copied to ZNC attorneys and
staff at firm email addresses, which ZNC's own mail systems therefore received — are absent
from the production. The production's metadata reflects that nearly a dozen attorneys and staff
worked on the Braverman matter who were never disclosed as custodians or searched — an
omission that raises questions regarding the completeness of the custodial collection, and whether
the file as it presently exists even permits Defendants to identify everyone who worked on the
matter. And in the related action, Defendants secured dismissal of individual defendants and the

narrowing of discovery in part on characterizations of who performed the work and which matters were related; Defendants' own produced documents and metadata now contradict those characterizations. Plaintiff does not ask the Court to resolve why the production looks this way. But each additional round of "collection, processing, and preparation" alters the state of whatever file remains. That is why interim relief — production of the file as it presently exists, by a date certain, in native format — cannot await ordinary motion practice, whatever vehicle the Court prefers for final resolution.

### 3. The Relief Has Narrowed, Not Expanded

Defendants describe Plaintiff's requests as escalating. The opposite is true: the proposed order attached hereto is the same proposed order already before the Court at ECF No. 28, updated only as to the production date, with provision for working passwords for the encrypted documents, and with the partner declarations described below. At its core, Plaintiff seeks (a) a date certain for completing the production Defendants say is underway; (b) identification of the matters, custodians, and repositories included and excluded; (c) native files for documents created electronically — including working passwords or unencrypted copies of the two password-protected documents produced (DEFTS043411–12, approximately 2,000 pages, inaccessible with any password provided); (d) accompanying metadata; and (e) sworn verification. None of this requires any finding regarding credibility or intent. It disciplines a production Defendants represent is already in progress.

### 4. A Date Certain Imposes No Burden on a Party That Intends to Comply

If Defendants intend to complete the production they describe, an order setting a date certain costs them nothing: it memorializes what they tell the Court is already underway. By Defendants' own exhibits, this request has been pending for more than two months (Plaintiff maintains the file was first requested from Mr. Virgil more than a year ago, but the Court need not resolve that dispute — even Defendants' timeline suffices). The files are maintained electronically, and comparable productions are ordinarily completed in days. As to cost, *Sage Realty* permits Defendants to invoice reasonable assembly expenses; it does not permit withholding or delay pending payment — and no estimate or invoice has ever been provided. An objection to a deadline for a production Defendants say is in progress would itself confirm why judicial supervision is necessary.

### Conclusion

The obligation to return a client's file promptly upon request, regardless of any fees owed, has been settled law under *Sage Realty* for nearly thirty years; in Plaintiff's experience, every other firm from which he has requested his file has honored it within about a week. It is therefore deeply suspicious that Defendants have fought so hard, and delayed so long, against producing this one file — to the point that, even after Your Honor made clear the file is Plaintiff's property, Defendants required Plaintiff to sue to obtain it, and still resist even timely delivery. But whatever the explanation, the question before the Court is not *why* production remains incomplete; it is whether a production Defendants admit is still underway should proceed without a deadline, native files, metadata, or a completeness certification. It should not. The Court should order production this coming week, by **Friday, June 12, 2026**.

Finally, it is not "frivolous" for a client to demand his own file — and to sue and move to obtain it — when his former law firm refuses to provide it.

### 5. Unsworn Assurances Are Not Evidence — Sworn Verification Is Required

A final point on why sworn verification — rather than further assurances of counsel — is required. Unsworn representations of counsel are not evidence, and litigation cannot function when such representations are simply accepted in the face of a contradicting record. Here, Defendants represented that Silver Hill was unrelated to the Braverman matter, and discovery was narrowed and stayed in the related action in part on that basis; Defendants' own production — which they concede remains incomplete — shows the matters were handled as integrated. Defendants represented that the client file had been produced, while simultaneously representing

that the remainder is still being collected. When a party's representations are repeatedly contradicted by its own disclosures, the remedy is not to ask the Court to take anyone's word — it is to require statements under oath. Accordingly, in addition to production by June 12, 2026, at least two equity partners of Zeldes Needle & Cooper, including Mr. Virgil, should declare under penalty of perjury either that the production constitutes the complete client file, or identify the materials that cannot be located — and explain why.

**6. The Proposed Order Is Severable — the Court Can Grant Part and Ensure Honest Production of a Full Client File in Accordance With the Law**

Plaintiff also notes that the proposed order is severable. Paragraphs A, B, and E — production of the complete client file in native format, a search of the custodians and repositories shown by the production itself to have worked on the matter, and the attestation of two partners that this was done (or that specified materials cannot be located, and why) — amount to nothing more than ordering a law firm to comply with settled law and to confirm to the Court that it has done so. That is a reasonable order to enter against a firm that declined to provide its client's file until it was sued to obtain it. Accordingly, even if the Court is reluctant to order the sworn statements of counsel in Paragraphs C and D, Paragraphs A, B, and E should issue.

The Court has scheduled a June 8, 2026 telephone conference in the related action, *Teman v. Zeldes Needle Cooper*, No. 24-cv-9830, at which the same defense counsel will appear. Should the Court find it efficient, Plaintiff is prepared to address this motion at that conference; otherwise Plaintiff respectfully requests that the Court grant the relief on the papers and enter the proposed order attached hereto — the same order at ECF No. 28, with the production deadline updated to June 12, 2026, and the partner declarations added. The urgency is real: further delay will permit the assembly of a reconstructed file rather than production of the file as it exists — or a candid acknowledgment of what no longer exists.

Respectfully submitted,

/s/ Ari Teman
Ari Baruch Teman
Plaintiff Pro Se                                                    cc:  All counsel of record via ECF

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ARI BARUCH TEMAN,
      Plaintiff,
   v.
MEDPRO GROUP INC., et al.,
      Defendants.

No. 1:26-cv-03517 (LJL)

## [PROPOSED] ORDER

Upon consideration of Plaintiff's Emergency Letter-Motion for Order Compelling Immediate Production of Complete Client File in Native Format, the submissions of the parties, and for good cause shown, IT IS HEREBY ORDERED as follows:

### A. Immediate Production of Complete Client File

Zeldes Needle & Cooper P.C. and all named ZNC attorney defendants shall produce to Plaintiff, by no later than **June 12, 2026**, the complete client file for each of the following matters: (i) Teman v. Braverman/PATH Medical (NY Supreme Court Index No. 805410/2014); (ii) Silver Hill Hospital Inc. v. Teman; (iii) the Buch consolidation matter; (iv) United States v. Teman, to the extent ZNC maintained files relating to that matter; and (v) any other matter in which ZNC represented or communicated with Plaintiff.

Production shall be made in native format, without conversion to image-only PDF, without flattening, and without stripping of metadata. Every document shall be produced with its original file properties, authorship data, creation and modification dates, and version history intact. Any document that cannot be produced in native format shall be accompanied by a written explanation of why the native format is unavailable. Any password-protected document shall be produced with a working password or in unencrypted form.

### B. Comprehensive Custodian Search

All ZNC attorneys and staff who worked on any Teman matter — including without limitation Jeremy Virgil, Jason Prueher, Maximino Medina Jr., Lori A. DaSilva-Fiano, Marisa R. Pulla, Gabriele Scala, Michael Tone, Diane Barrett, Jeanne Rieger, Nancy Mankulics, Jamie Kircher, Daphne Williams, and any individual associated with the "qraysor" author profile — shall immediately search the following repositories for any documents relating to Plaintiff or any Teman matter: (i) ZNC work email accounts; (ii) personal Gmail and all other personal email accounts used in connection with any Teman matter; (iii) text messages and iMessage; (iv) WhatsApp, Signal, and any other messaging applications; (v) Slack, Microsoft Teams, and any other workplace communication platforms; (vi) Box, Dropbox, Google Drive, OneDrive, iCloud, and any other cloud storage repositories; (vii) external hard drives, USB drives, and any other portable storage media; and (viii) physical files, paper documents, and any other non-electronic storage.

All responsive documents identified through this search shall be produced to Plaintiff in native format within fourteen (14) days of the date of this Order.

### C. Sworn Statement by Defense Counsel

Cristina R. Yannucci, Esq. and Samuel Cohen, Esq. of Lewis Brisbois Bisgaard & Smith LLP shall provide a sworn statement on the record, within seven (7) days of the date of this Order, addressing each of the following, separately for each Teman matter: (i) whether they have been provided with the complete client file for each Teman matter, and if so, by whom and in what form; (ii) whether their client or any representative of their client has made any statement, directly or indirectly, suggesting that any Teman client file was lost, damaged, destroyed, or is otherwise unavailable in whole or in part; (iii) whether they, or any discovery vendor or service acting at their direction, provided any instruction — verbal, written, or through software settings — to remove metadata, flatten documents, convert documents to image-only format, or otherwise alter the technical properties of documents before production; (iv) whether they currently possess, in any format, any

Word documents, PDFs, emails, images, spreadsheets, or other files relating to Plaintiff or any Teman matter that have not yet been produced to Plaintiff; and (v) whether the production made on May 28, 2026 represents the complete universe of documents in their possession, custody, or control relating to any Teman matter, or whether additional documents exist.

**D. Sworn Statement by Coverage Counsel**

Max Gershenoff, Esq. and Amanda Drantch, Esq. of Rivkin Radler LLP, as coverage counsel for MedPro Group Inc. and Attorney Protective, shall provide a sworn statement on the record, within seven (7) days of the date of this Order, addressing each of the following: (i) whether Rivkin Radler has been informed, at any time, that the complete client file for any Teman matter exists in its original form and is available for production; (ii) whether Rivkin Radler has been informed, at any time, that any portion of any Teman client file was lost, damaged, destroyed, or is otherwise unavailable, and if so, by whom, when, and in what circumstances; (iii) whether any representative of MedPro, Attorney Protective, ZNC, or Lewis Brisbois has made any representation to Rivkin Radler regarding the condition, completeness, or availability of the Teman client files in connection with coverage evaluation or claims handling; and (iv) whether Rivkin Radler itself possesses any documents relating to any Teman matter, including without limitation correspondence, coverage analyses, reservation of rights letters, claims files, or communications with ZNC or Lewis Brisbois regarding the client file.

**E. Sworn Statements by ZNC Partners**

At least two equity partners of Zeldes Needle & Cooper P.C., including Jeremy Virgil, shall each provide a sworn declaration under penalty of perjury, within seven (7) days of the date of this Order, stating either (i) that the production constitutes the complete client file for each Teman matter as historically maintained, or (ii) identifying the categories of client-file materials that cannot be located, and explaining why they cannot be located, when their absence was discovered, and what efforts were made to locate them.

SO ORDERED.

Dated: New York, New York  
    June ___, 2026

_____  
HON. LEWIS J. LIMAN  
United States District Judge