UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

ARI BARUCH TEMAN

                          Plaintiff,

                -against-

MEDPRO GROUP INC.; ATTORNEY PROTECTIVE;
SCOTT PATRICK; LEWIS BRISBOIS BISGAARD &
SMITH LLP; CRISTINA YANNUCCI; SAM COHEN;
ZELDES NEEDLE COOPER LLP; ROBERT S. COOPER;
MAXIMINO MEDINA; JEREMY VIRGIL; DANAGER
LAGNESE, P.C.; SILVER HILL HOSPITAL, INC.,

                          Defendants.

----------------------------------------------------------------------X

Docket No.:
1:26-cv-03517-LJL

## DEFENDANTS MEDPRO GROUP INC., SOMERSET SERVICES, LLC d/b/a ATTORNEY PROTECTIVE i/s/h/a ATTORNEY PROTECTIVE, and SCOTT PATRICK's MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Max Gershenoff
Amanda B. Drantch
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Attorneys for Defendants
MedPro Group Inc., Somerset Services LLC
d/b/a Attorney Protective i/s/h/a Attorney
Protective and Scott Patrick

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF ALLEGED FACTS AND FACTS SUBJECT TO JUDICIAL NOTICE..........2

ARGUMENT ...........................................................................................................................7

I.      The Standards on This Motion ....................................................................................7

II.     Plaintiff's RICO Claims Should be Dismissed ...........................................................8

III.    Plaintiff's Sherman Act Claims Should be Dismissed ................................................20

IV.     Plaintiff's Conversion Claim Should be Dismissed .....................................................26

V.      Plaintiff's Replevin Claim Should be Dismissed .........................................................27

VI.     Plaintiff's Fraud Claim Should be Dismissed ..............................................................28

VII.    Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Should be Dismissed..29

VIII.   Plaintiff's Legal Malpractice Claim Should be Dismissed ..........................................31

IX.     Plaintiff's "Tortious Interference" Claim Should be Dismissed ...................................32

X.      Plaintiff's Unjust Enrichment Claim Should be Dismissed ..........................................33

XI.     Plaintiff's Claim for Injunctive Relief Should be Dismissed........................................34

XII.    Plaintiff's Claims Should be Dismissed Pursuant to the Fugitive Disentitlement Doctrine
        ...................................................................................................................................34

CONCLUSION........................................................................................................................36

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Albert v. Loksen,
    239 F.3d 256 (2d Cir. 2001).................................................................................32

AMA v. United Healthcare Corp.,
    588 F. Supp. 2d 432 (S.D.N.Y. 2008)...................................................................18

Amusement Indus., Inc. v. Midland Ave. Assocs., LLC,
    820 F. Supp. 2d 510 (S.D.N.Y. 2011)...................................................................26

Angermeir v. Cohen,
    14 F. Supp.3d 134 (S.D.N.Y. 2014)......................................................................13

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).....................................7

Associated Mortg. Bankers, Inc. v. CalCon Mut. Mortg. LLC,
    2017 U.S. Dist. LEXIS 5188 (E.D.N.Y. 2017)......................................................27

Azima v. Dechert LLP,
    2024 U.S. Dist. LEXIS 176048 (S.D.N.Y. 2024)..................................................18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006).....................................7

Berman v. Morgan Keegan & Co.,
    2011 U.S. Dist. LEXIS 27867 (S.D.N.Y. 2011)....................................................30

Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013)..............................................................24, 25

Boyle v. United States,
    556 U.S. 938 (2009)...............................................................................................10

Brock Cap. Grp. LLC v. Siddiqui,
    2022 U.S. Dist. LEXIS 101738 (S.D.N.Y. 2022)..................................................29

Budhani v. Monster Energy Co.,
    527 F. Supp. 3d 667 (S.D.N.Y. 2021)(Liman, J.).................................................34

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
    187 F.3d 229 (2d Cir. 1999)..................................................................................17

Cont'l Fin. Co. v. Ledwith,
    2009 U.S. Dist. LEXIS 52618 (S.D.N.Y. 2009)...................................................................10

Cosmas v. Hassett,
    886 F.2d 8 (2d Cir. 1989)......................................................................................................13

Cruz v. Fxdirectdealer, LLC,
    720 F.3d 115 (2d. Cir. 2013)...................................................................................................9

Dale v. Banque SCS Alliance S.A.,
    2005 U.S. Dist. LEXIS 20967 (S.D.N.Y. 2005)...................................................................12

DirecTV, LLC v. Nexstar Media Grp., Inc.,
    162 F.4th 295 (2d Cir. 2025) .........................................................................................20, 21

Donlon v. City of New York,
    2026 U.S. Dist. LEXIS 33441 (S.D.N.Y. 2026)...................................................................11

E&L Consulting, Ltd. v. Doman Indus.,
    360 F. Supp. 2d 465 (E.D.N.Y. 2005), aff'd, 472 F.3d 23 (2d Cir. 2006), cert.
    denied, 552 U.S. 816 (2007) .................................................................................................21

Electronics Communs. Corp. v. Toshiba Am. Consumer Prods.,
    129 F.3d 240 (2d Cir. 1997)..................................................................................................21

Entretelas Americanas S.A. v. Soler,
    2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. 2020)...................................................................15

Eurycleia Partners, LP v. Seward & Kissel, LLP,
    12 N.Y.3d 553 (N.Y. 2009) ..................................................................................................28

In re Eyewear Antitrust Litig.,
    2025 U.S. Dist. LEXIS 190628 (S.D.N.Y. 2025)...........................................................24, 25

Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP,
    2021 U.S. Dist. LEXIS 126819 .............................................................................................9

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)........................................................................................9, 11, 16

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)....................................................................................................18

Fossil Grp., Inc. v. Angel Seller LLC,
    627 F. Supp. 3d 180 (E.D.N.Y. 2022) ..................................................................................12

Foster v. 2001 Real Estate,
    2015 U.S. Dist. LEXIS 159489 (S.D.N.Y. 2015).................................................................14

Gateguard Inc. v. Goldmont Realty Corp.,
    2026 U.S. Dist. LEXIS 98835 (S.D.N.Y. 2026)................................................................7

GICC Capital Corp. v. Tech. Fin. Grp.,
    67 F.3d 463 (2d Cir.1995).............................................................................................17

Greenberg v. Blake,
    2010 U.S. Dist. LEXIS 57617 (E.D.N.Y. 2010)............................................................10

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989)......................................................................................................16

Hassan v. Deutsche Bank A.G.,
    515 F. Supp. 2d 426 (S.D.N.Y. 2007), aff'd, 336 Fed. Appx. 21 (2d Cir. 2009) ....................32

Heinrich v. Dean,
    655 F. Supp. 3d 184 (S.D.N.Y. 2023)............................................................................11

Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.,
    2013 U.S. Dist. LEXIS 107552 (S.D.N.Y. 2013)...........................................................20

Horvath v. Banco Comercial Portugues,
    2011 U.S. Dist. LEXIS 15865 (S.D.N.Y. 2011).............................................................30

HSCM Bermuda Fund Ltd. v. Newco Cap. Grp. VI LLC,
    619 F. Supp. 3d 434 (S.D.N.Y. 2022).......................................................................27, 28

Jones v. Aetna, Inc.,
    2020 U.S. Dist. LEXIS 174440 (S.D.N.Y. 2020)........................................................24, 25

Khan Funds Mgmt. Am. v. Nations Techs. Inc.,
    2023 U.S. Dist. LEXIS 167530 (S.D.N.Y. 2023)...........................................................12

In re Kingate Mgmt. Ltd. Litig.,
    2016 U.S. Dist. LEXIS 129882 (S.D.N.Y. 2016)...........................................................30

Kirk v. Heppt,
    423 F. Supp. 2d 147 (S.D.N.Y. 2006)..............................................................................8

Krys v. Sugrue (In re Refco Inc.),
    2011 U.S. Dist. LEXIS 142291 (S.D.N.Y. 2011)...........................................................32

Lanzaro-Brunstein v. Creative Portal LLC,
    2026 U.S. Dist. LEXIS 132082 (S.D.N.Y. 2026).......................................................13, 29

Lee v. Mondelez Int'l, Inc.,
    637 F. Supp. 3d 116 (S.D.N.Y. 2022)(Liman, J.)..............................................................7

Lihua Gan v. Gsuig Real Est. Member LLC,
    797 F. Supp. 3d 69 (E.D.N.Y. 2025) ...................................................................................31

Lynn v. McCormick,
    2017 U.S. Dist. LEXIS 207543 (S.D.N.Y. 2017)................................................................11

MacDermid Printing Solutions LLC v. Cortron Corp.,
    833 F.3d 172 (2d Cir. 2016)................................................................................................21

Marino v. Grupo Mundial Tenedora, S.A.,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011).................................................................................30

Moss v. Morgan Stanley, Inc.,
    719 F.2d 5 (2d Cir.1983).......................................................................................................9

Murdock v. Microsoft Corp.,
    2015 U.S. Dist. LEXIS 126025 (S.D.N.Y. 2015)................................................................31

Nachman v. Tesla, Inc.,
    2023 U.S. Dist. LEXIS 176468 (E.D.N.Y. 2023)................................................................33

Neuman v. Garcia,
    2022 U.S. Dist. LEXIS 172851 (S.D.N.Y. 2022)................................................................29

O'Neil v. Ponzi-Flett,
    2009 U.S. Dist. LEXIS 98170 (N.D.N.Y. 2009) .................................................................13

Ortega-Rodriguez v. United States,
    507 U.S. 234 (1993)...............................................................................................................7

Papapietro v. Clott,
    2023 U.S. Dist. LEXIS 16492 (E.D.N.Y. 2023)..................................................................28

Particle Health Inc. v. Epic Sys. Corp.,
    2025 U.S. Dist. LEXIS 173664 (S.D.N.Y. 2025)................................................................23

PepsiCo, Inc. v. Coca-Cola Co.,
    315 F.3d 101 (2d Cir. 2002).................................................................................................24

Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F.
    Higgins, Inc.,
    2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008)................................................................14

Qian Gao v. Gonzales,
    481 F.3d 173 (2d Cir. 2007).................................................................................................36

Reich v. Lopez,
    858 F.3d 55 (2d Cir. 2017)...................................................................................................16

Ritter v. Klisivitch,
    2008 U.S. Dist. LEXIS 58818 (E.D.N.Y. 2008).......................................................................17

Rock TV Entertainment, Inc. v. Time Warner, Inc.,
    1998 U.S. Dist. LEXIS 799 (S.D.N.Y. 1998)...........................................................................23

Rosner v. Bank of China,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007).......................................................................................19

Rubio v. BSDB Mgmt.,
    2021 U.S. Dist. LEXIS 5588 (S.D.N.Y. 2021).........................................................................27

Sehgal v. Aggarwal,
    2021 U.S. Dist. LEXIS 154043 (E.D.N.Y. 2021).....................................................................17

Sell It Soc., LLC v. Acumen Brands, Inc.,
    2015 U.S. Dist. LEXIS 35404 (S.D.N.Y. 2015).......................................................................23

In re Sharp Int'l Corp.,
    403 F.3d 43 (2d Cir. 2005)........................................................................................................30

Smart Recovery Techs. LLC v. Supplies Plus MI LLC,
    2026 U.S. Dist. LEXIS 58847 (S.D.N.Y. 2026).......................................................................26

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008)................................................................................................16, 17

State v. Seventh Regiment Fund, Inc.,
    98 N.Y.2d 249 (N.Y. 2002) ......................................................................................................26

SYL Consulting LLC v. Cmty. USA II LLC,
    2024 U.S. Dist. LEXIS 16423 (S.D.N.Y. 2024).......................................................................27

Tal v. Computech Int'l, Inc.,
    2022 U.S. Dist. LEXIS 217538 (E.D.N.Y. 2022).....................................................................33

Tech. in P'ship v. Rudin,
    2011 U.S. Dist. LEXIS 114127 (S.D.N.Y. 2011).....................................................................12

Teman v. Biale,
    2025 U.S. Dist. LEXIS 207542 (S.D.N.Y. 2025).......................................................................7

Teman v. Biale, et al.,
    S.D.N.Y. Case No. 1:25-cv-05454-MKV ................................................................6, 8, 35, 36

Teman v. Braverman, et al.,
    Index No. 805410/2014 ...............................................................................................................2

Teman v. Zeldes Needle Cooper LLP, et al.,
    S.D.N.Y. Case No. 1:24-cv-09830-LJL................................................................2

The Jordan (Bermuda) Investment Co. v. Hunter Green Investments Ltd.,
    154 F. Supp. 2d 682 (S.D.N.Y. 2001)................................................................9

Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical,
    886 F. Supp. 1134 (S.D.N.Y. 1995)................................................................18

UBS Sec. LLC v. Voegeli,
    405 F. App'x 550 (2d Cir. 2011)....................................................................34

United States v. Awadalla,
    357 F.3d 243 (2d Cir. 2004)............................................................................8

United States v. Bescond,
    24 F.4th 759 (2d Cir. 2021) ............................................................................8

United States v. Daidone,
    471 F.3d 371 (2d Cir. 2006)..........................................................................16

United States v. Teman,
    465 F. Supp. 3d 277 (S.D.N.Y. 2020).........................................................6, 34

United States v. Yanotti,
    541 F.3d 112 (2d Cir. 2008)..........................................................................19

United States v. Zedner,
    555 F.3d 68 (2d Cir. 2008)..............................................................................7

USA v. Teman,
    S.D.N.Y. Case No. 1:19-cr-00696-PAE ......................................................6, 34

Wexner v. First Manhattan Co.,
    902 F.2d 169 (2d Cir. 1990)..........................................................................14

Wgh Communs. v. Penachio Malara Llp,
    2020 U.S. Dist. LEXIS 221869 (S.D.N.Y. 2020)............................................31

William Gottlieb Mgmt. Co., LLC v. Carlin,
    2025 U.S. Dist. LEXIS 85922 (S.D.N.Y. 2025)..............................................28

Woods v. Mercier,
    2012 WL 3925852 (W.D.N.Y. 2012) ...............................................................9

Zuhovitzky v. UBS AG CHE 101.329.562,
    2024 U.S. App. LEXIS 11558 (2d Cir. 2024) ...................................................8

## PRELIMINARY STATEMENT

Defendants MedPro Group Inc. ("MedPro"), Somerset Services LLC d/b/a Attorney Protective i/s/h/a Attorney Protective ("Attorney Protective"), and Scott Patrick ("Patrick") (collectively the "MedPro Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Ari Baruch Teman's ("Plaintiff" or "Teman") claims against them pursuant to Fed. R. Civ. P. 12(b)(6) and the Court's inherent power.

Teman is attempting to proceed in this action based on conclusory and implausible allegations to the effect that: (i) Defendants Zeldes Needle Cooper LLP ("ZNC"), Jeremy Virgil ("Virgil"), Maximino Medina ("Medina"), and Robert Cooper ("Cooper") (collectively the "ZNC Defendants") – a law firm and its associated attorneys – represented Teman in a New York state court medical malpractice action, in which they supposedly "suppressed" Teman's claims, "coerced" Teman to accept an undervalued settlement, refused to produce Teman's "client file", and engaged in related misconduct; and (ii) Attorney Protective was ZNC's professional liability insurer, and – together with Patrick, its president, and MedPro, its parent company – somehow, through some unspecified means, participated in the ZNC Defendants' supposed suppression of Teman's claims, coercion of Teman's settlement, and refusal to produce Teman's client file.

Based on Teman's thinly-pleaded allegations – often predicated "upon information and belief", except without any "information" to support the supposed "belief" – Teman asserts a laundry-list of claims against the MedPro Defendants, including claims for purported RICO violations, Sherman Act violations, conversion, fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, tortious interference, injunctive relief, and apparently legal malpractice, though the MedPro Defendants are not alleged to have represented Teman in any capacity.

As discussed herein, Teman's claims are defective and subject to dismissal for multiple, independent reasons. What is more, Teman is – as the Court is aware – currently a fugitive from

justice, and Teman's fugitive status will materially prejudice the MedPro Defendants' ability to defend against his frivolous and vexatious claims. Accordingly, even if Teman's conclusory allegations were sufficient to state any claims against the MedPro Defendants – and they are not – the Court should exercise its discretion to dismiss under the fugitive disentitlement doctrine.

## STATEMENT OF ALLEGED FACTS AND FACTS SUBJECT TO JUDICIAL NOTICE

In his Complaint, Teman contends that he retained ZNC, a law firm, to represent him as plaintiff in a medical malpractice action that involved claims of sexual misconduct and substantial alleged damages. See ECF 1, ¶¶ 7, 12-13, 17, 20, 22, 24.[1] Then, "in or around 2016", Virgil and Medina "exerted extreme and improper pressure" on Teman to settle his claims for just $80,000. Id., ¶¶ 18-21.

On some unspecified dates, Teman "repeatedly demanded his client file" from some unidentified persons, but presumably from the ZNC Defendants, because the ZNC Defendants are the only Defendants who are alleged to have had any kind of attorney-client relationship with Teman. Id., ¶¶ 25-30. However, "Defendants" – Teman does not specify which ones – refused to produce Teman's client file and placed "unlawful conditions" on the production of Teman's client file, including demands for "identification of specific documents" and "payment as a condition of access" to the file. Id.

Teman proceeds to allege that – on some unspecified dates – Attorney Protective (ZNC's professional liability insurer), and MedPro (Attorney Protective's parent company), were "copied

---

[1] Though Teman's Complaint in the present case does not identify the medical malpractice action, Teman also is plaintiff in a separate action entitled Teman v. Zeldes Needle Cooper LLP, et al., S.D.N.Y. Case No. 1:24-cv-09830-LJL, which has been marked as related to the present case (the "Related Action"). In his Amended Complaint in the Related Action, Teman alleges that he filed the medical malpractice action in 2014 in New York Supreme Court. See Related Action, at ECF 35, ¶ 8. In this context, the Court may take judicial notice of the fact that Teman commenced a medical malpractice action in November 2014 in the Supreme Court of the State of New York, New York County, entitled Teman v. Braverman, et al., Index No. 805410/2014. This appears to be the medical malpractice action that Teman alludes to in his Complaint in the present case.

on" his demands for his client file, and that Patrick (Attorney Protective's president) supposedly "received and reviewed" some unidentified "communications", "forwarded" those unidentified "communications" to some totally unidentified recipients, and "participated" in some unidentified manner in "decisions concerning the withholding of" Teman's client file. See ECF 1, ¶¶ 14-16, 31-33. Teman then alleges "upon information and belief" that Patrick "directed or approved continued refusal to produce the file, and directed the funding of such activity despite being informed", on some unspecified date, by some unidentified person, that "it was against the law", and despite "being notified of Judge Liman's most-recent order", the content and context of which Teman likewise does not identify. Id.

Teman goes on to contend that MedPro and Attorney Protective have an incentive to engage in "coordinated suppression of claim values" because they provide professional liability insurance to healthcare providers facing medical malpractice claims and attorneys/law firms that prosecute and defend medical malpractice claims. See ECF 1, ¶¶ 37-40. As a result, MedPro and Attorney Protective supposedly "bear[] financial exposure arising from both underlying medical malpractice liability and derivative legal malpractice risk", and therefore "possess a direct financial incentive to minimize aggregate payouts across both categories of risk". Id. Teman proceeds to speculate "upon information and belief" that "Defendants" somehow "utilize this structure to influence litigation strategy, settlement positioning, and claims handling practices across insured parties, including through communications with counsel and funding of defense efforts", and that in Teman's case these "incentives" somehow "manifested in coercive settlement conduct, suppression of material claims, and actions designed to prevent Plaintiff from accessing information necessary to evaluate and pursue his rights." Id., ¶¶ 41-45.

3

Teman also alleges that MedPro and Attorney Protective: (i) have substantial power in a supposed "market" for "professional liability insurance and malpractice claims resolution in medical malpractice litigation within the United States, and alternatively within the State of New York"; (ii) "willfully acquired and maintained their market power through exclusionary and anticompetitive conduct" by "structuring insurance coverage in a manner that internalizes liability across both sides of malpractice risk", "creating financial incentives to suppress the value of malpractice claims irrespective of their merits", "influencing litigation strategy and settlement practices across insured parties in order to minimize aggregate payouts", "interfering with independent legal representation by introducing undisclosed financial conflicts arising from shared insurance coverage", "discouraging full litigation of claims that would expose the true market value of malpractice liability", and similar vaguely-alleged activities; and (iii) harmed competition in the market by "distorting the pricing and valuation of malpractice claims", "suppressing settlement values below competitive levels", "disadvantaging plaintiffs and law firms that seek to litigate claims independently of insurer influence", "impairing the ability of competing insurers and legal service providers to operate in a market governed by fair and independent claim valuation", and "reducing quality by impairing the availability of independent, conflict-free legal representation in malpractice litigation". See ECF 1, ¶¶ 109-113.

According to Teman, these actions somehow caused him to suffer "antitrust injury" and "specific injury" in that his "claims were suppressed and undervalued as a direct result of Defendants' anticompetitive conduct, reflecting broader market-wide distortion rather than isolated misconduct". See ECF 1, ¶¶ 114-118. Teman also alleges that "Defendants" engaged in "attempted monopolization" by engaging in this supposedly "anticompetitive conduct", with a "specific intent to control or distort" the putative market for professional liability insurance and

4

malpractice claims resolution in medical malpractice litigation, and "with a dangerous probability of achieving monopoly power in that market due to their integrated insurance structure". Id., ¶ 119.

Based on these allegations, Teman asserts claims against the MedPro Defendants for purported RICO violations, Sherman Act violations, conversion, fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, tortious interference, injunctive relief, and legal malpractice, though – as noted above – the MedPro Defendants are not alleged to have represented Teman in any capacity. See ECF 1, ¶¶ 46, et seq.

In addition to the MedPro Defendants and the ZNC Defendants, Teman also names Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois"), Cristina Yannucci ("Yannucci"), and Sam Cohen ("Cohen") (collectively the "Lewis Brisbois Defendants") as Defendants in this action. See ECF 1, ¶¶ 11-13. As the Court is aware, the Lewis Brisbois Defendants are counsel for the defendants – including but not limited to ZNC, Virgil, Medina, and Cooper – in the Related Action that Teman filed under S.D.N.Y. Case No. 1:24-cv-09830-LJL.

Moreover, Teman names Silver Hill Hospital as a Defendant in this action, and alleges that Silver Hill Hospital was in some way "involved in" Teman's claims in his 2014 malpractice lawsuit, as well as a law firm called Danaher Lagnese, P.C. ("Danaher Lagnese"), which Teman alleges was counsel for Silver Hill Hospital in connection with the 2014 malpractice lawsuit. See ECF 1, ¶¶ 17-18. However, other than alleging that Danaher Lagnese "participated in settlement negotiations on behalf of Silver Hill" in the malpractice lawsuit, and vaguely alleging that the "Defendants", collectively, engaged in the conduct described above, Teman does not allege that the Lewis Brisbois Defendants, Silver Hill Hospital, or Danaher Lagnese engaged in any particular wrongdoing.

In this context, the Court may take notice of the fact that Teman is a convicted felon and fugitive from justice. In January 2020, Teman was convicted in this court of two counts of wire fraud and two counts of bank fraud. See USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 92. Teman's convictions stemmed from a scheme in which he created hundreds of thousands of dollars worth of unauthorized checks drawn on the bank accounts of several former customers of his home security company, with whom he was feuding, and then deposited the checks into accounts under his control. See United States v. Teman, 465 F. Supp. 3d 277, 284-291 (S.D.N.Y. 2020)(recounting these events).

Thereafter, Teman was sentenced, among other things, to serve a prison term of one year and a day, followed by three years of supervised release. USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 253. While on supervised release, Teman was authorized to travel to Israel for a limited period but failed to return to the United States by June 1, 2025, as directed by the court. See id., at ECF 578, and Docket Sheet, passim. As a result, Teman has been a fugitive since June 1, 2025. See id., at ECF 567, 569, 575, 578, and Docket Sheet, passim.

The Court also may take notice of Teman's history of frivolous and vexatious conduct in court proceedings. Strictly by way of example, Teman: (i) filed papers on the public docket in his criminal case in which he insinuated that the presiding judge gave a sexually-transmitted disease to a child (see USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 585); (ii) made numerous other pro se filings in his criminal case that were found by the court to be frivolous and/or vexatious (id., at ECF 312, 488, 514, 581, 586, 588); (iii) filed a pro se lawsuit against – among others – the presiding judge and prosecutors in his criminal case, containing a litany of scandalous, conclusory, and implausible allegations, which the court stayed under the fugitive disentitlement doctrine (see Teman v. Biale, et al., S.D.N.Y. Case No. 1:25-cv-05454-MKV, at

6

ECF 1, 20, 25); (iv) filed a <u>pro se</u> motion in another civil case in this District which the court found to be frivolous and to contain false representations (<u>see</u> <u>Gateguard Inc. v. Goldmont Realty Corp.</u>, 2026 U.S. Dist. LEXIS 98835 at *1-*3 (S.D.N.Y. 2026)); and (v) filed a motion to disqualify Yannuci as counsel in the present case, which this Court denied as frivolous (<u>see</u> ECF 34, p. 4).[2]

**ARGUMENT**

**I.      The Standards on This Motion**

As this Court has noted:

> To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. This "does not impose a probability requirement at the pleading stage" but rather "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." <u>Twombly</u>, 550 U.S. at 556. That is, a complaint need not allege "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. at 555.

<u>Lee v. Mondelez Int'l, Inc.</u>, 637 F. Supp. 3d 116, 122-123 (S.D.N.Y. 2022)(Liman, J.).

What is more, and "[a]s the Supreme Court and the Second Circuit have explained, a 'fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim.'" <u>Teman v. Biale</u>, 2025 U.S. Dist. LEXIS 207542 at *2 (S.D.N.Y. 2025), <u>quoting</u> <u>United States v. Zedner</u>, 555 F.3d 68, 76 (2d Cir. 2008) and <u>Ortega-Rodriguez v. United States</u>, 507 U.S. 234, 246 (1993). In this context, federal courts have the

---

[2] Indeed, it appears that Teman filed this action as a vexatious attempt to open up a "second front" as to discovery disputes regarding his "client file" in the Related Action. For instance, on April 11, 2026, Teman filed a motion in the Related Action to compel production of his "client file". <u>See</u> Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, at ECF 60. On April 21, 2026, this Court denied Teman's motion to compel in the Related Action, finding that Teman had made the motion while a stay of discovery was in place in the Related Action. <u>See</u> <u>id</u>., at ECF 70. Then, on April 27, 2026 – less than a week after the Court denied Teman's motion to compel in the Related Action – Teman commenced the present case, in which the centerpiece of his claims is that Defendants, including the ZNC Defendants and their counsel in the Related Action, have unlawfully withheld production of his "client file".

7

discretion to dismiss civil actions with prejudice under the fugitive disentitlement doctrine, or stay the actions, where there is a sufficient nexus between the plaintiff's absence from custody and the civil case. See, e.g., Biale, supra; United States v. Awadalla, 357 F.3d 243, 249, fn. 5 (2d Cir. 2004).

"To exercise its discretion under the fugitive disentitlement doctrine, the Court must apply a two-step test." Biale, supra, citing United States v. Bescond, 24 F.4th 759, 771 (2d Cir. 2021). The first step is the determination that "the litigant is a fugitive." Id. The second step requires the Court to determine whether disentitlement "would serve the doctrine's objectives" Id. In this respect, "the Court must consider whether disentitlement would serve the purposes of: 1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." Id. (internal quotations/citations omitted).

Against the backdrop of these standards, and as discussed more fully below, none of Plaintiff's claims against the MedPro Defendants have merit, and all his claims should be dismissed.

## II.    Plaintiff's RICO Claims Should be Dismissed

"Because the mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Kirk v. Heppt, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006); see also Zuhovitzky v. UBS AG CHE 101.329.562, 2024 U.S. App. LEXIS 11558 at * 4 (2d Cir. 2024)(noting that "Civil RICO is an unusually potent weapon" and "for that reason courts strive to flush out frivolous RICO allegations    at    an    early    stage    of    the    litigation")(internal quotations/citations omitted).

8

With that in mind, to state a viable civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege:  (i) that a defendant; (ii) through the commission of two or more acts; (iii) constituting a pattern; (iv) of racketeering activity; (v) directly or indirectly conducted or participated in; (vi) an enterprise; (vii) the activities of which affect interstate or foreign commerce.  See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983); see also The Jordan (Bermuda) Investment Co. v. Hunter Green Investments Ltd., 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001). However, in the present case Teman fails to adequately plead any of the elements of his Section 1962(c) claim.

First, Plaintiff attempts to allege that all the Defendants together constitute an association-in-fact racketeering enterprise. See ECF 1, ¶¶ 47-49; see also 18 U.S.C. 1961(4)(defining "enterprise", in the RICO context, to include "any union or group of individuals associated in fact although not a legal entity"). However, any alleged RICO enterprise must be distinct from the person or persons conducting the affairs of the enterprise (i.e., the defendants on the RICO claim). See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004); Cruz v. Fxdirectdealer, LLC, 720 F.3d 115, 120 (2d. Cir. 2013).

Moreover, to sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts demonstrating that the association-in-fact enterprise had some existence beyond the underlying pattern of racketeering activity. See, e.g., Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, 2021 U.S. Dist. LEXIS 126819 at *34 - *36 (S.D.N.Y. 2021)(recommending dismissal of RICO claims where the complaint failed to allege that enterprise had any existence independent of the alleged racketeering activity); Woods v. Mercier, 2012 WL 3925852 at *6 (W.D.N.Y. 2012)(dismissing civil RICO claim because plaintiff "failed to allege an enterprise that is distinct from the racketeering activity in which it allegedly engaged").

Furthermore, an association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). To sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts to demonstrate that the association-in-fact enterprise was in some way different from and had some existence beyond the sum of its parts. See, e.g., Cont'l Fin. Co. v. Ledwith, 2009 U.S. Dist. LEXIS 52618, at *17 (S.D.N.Y. 2009)(pleading insufficient where plaintiffs only alleged that together defendants engaged in predicate acts); Greenberg v. Blake, 2010 U.S. Dist. LEXIS 57617, at *18-*21 (E.D.N.Y. 2010)(complaint alleging association-in-fact enterprise must provide "solid information" to demonstrate actual existence of enterprise beyond the individual defendants, acting together, and "[c]onclusory allegations that there was an enterprise are wholly insufficient.").

However, Plaintiff does not plead any association-in-fact enterprise that is distinct from the persons who conducted the affairs of the enterprise. Instead, he alleges that the Defendants, collectively, constituted both the enterprise and the persons who conducted the affairs of the enterprise. See ECF 1, ¶¶ 47-49. Nor does Plaintiff plead any facts to suggest that the purported association-in-fact enterprise had any existence beyond the predicate acts of racketeering activity. At most, Plaintiff alleges that the Defendants worked together to engage in racketeering activity to prevent him from obtaining his "client file" and thereby, in some unidentified way, to "suppress" the value of his malpractice claim. See id., ¶¶ 1-3, 46-67, and passim.

While Plaintiff contends that the supposed enterprise had a common purpose "to minimize malpractice liability exposure and financial payouts by suppressing claims, coercing settlements, and controlling access to client information", he does not adduce facts to support these allegations.

10

See ECF 1, ¶ 48. For example, Plaintiff pleads no facts to suggest that the MedPro Defendants were related with the Lewis Brisbois Defendants, Defendant Silver Hill Hospital, or Defendant Danaher Lagnese. The only connection alleged between the MedPro Defendants and the ZNC Defendants is that Attorney Protective was ZNC's professional liability insurer. Nor are Plaintiff's vague allegations that the MedPro Defendants "received and reviewed" unidentified "communications", "forwarded" those unidentified "communications" to unidentified recipients, and "participated" in some unidentified manner in "decisions concerning the withholding of" Teman's client file sufficient to establish that the MedPro Defendants shared any common purpose or engaged in any coordinated conduct with the other members of Plaintiff's notional "enterprise".

Accordingly, Plaintiff's allegations are insufficient to establish the existence of any association-in-fact enterprise. See, e.g., First Capital Asset Mgmt., v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004)("[F]or an association of individuals to constitute an enterprise, [they] must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.")(Internal citation omitted); Heinrich v. Dean, 655 F. Supp. 3d 184, 191-192 (S.D.N.Y. 2023)(dismissing RICO claim for failure to adequately allege association-in-fact enterprise where, as here, the plaintiff's only substantive allegations to establish the existence of the enterprise were that the defendants engaged in criminal activity towards the plaintiff – "the very 'pattern' of activity underlying Plaintiffs' RICO claim"); Lynn v. McCormick, 2017 U.S. Dist. LEXIS 207543 at *12-*14 (S.D.N.Y. 2017)(concluding that plaintiffs failed to allege a RICO enterprise because they merely "allege[d] that the [d]efendants came together for the purpose of engaging in the fraudulent activity that form[ed] the basis of the asserted pattern of racketeering activity," rendering the enterprise and the pattern "one and the same")(internal quotations/citation omitted); Donlon v. City of New York, 2026 U.S. Dist. LEXIS 33441 at *22-

11

*24 (S.D.N.Y. 2026)(allegations that defendants, working together in an alleged enterprise, shared a common purpose of "consolidat[ing] political power, obstruct[ing] justice, and punish[ing] dissent", were – much like Plaintiff's allegations in the present case – "conclusory", "merely summarize[d] some of the alleged predicate acts", and did not establish a common purpose sufficient to demonstrate the existence of an association-in-fact enterprise).

Even if Plaintiff's "enterprise" allegations were sufficient – and they are not – Plaintiff fails to sufficiently allege that any of the MedPro Defendants participated in the operation and management of any such enterprise. See, e.g., Khan Funds Mgmt. Am. v. Nations Techs. Inc., 2023 U.S. Dist. LEXIS 167530 at *29 (S.D.N.Y. 2023)(holding that "the mere existence of an enterprise is not enough: one is liable under RICO only if he participated in the operation or management of the enterprise itself. ….")(Internal quotations/citations omitted). In the Second Circuit, the "operation and management" test is rigorously applied. See, e.g., Dale v. Banque SCS Alliance S.A., 2005 U.S. Dist. LEXIS 20967 at *19 (S.D.N.Y. 2005). Conclusory allegations of participation are insufficient. See, e.g., Tech. in P'ship v. Rudin, 2011 U.S. Dist. LEXIS 114127 at *11-*13 (S.D.N.Y. 2011).

Here, Plaintiff alleges – at most – that the MedPro Defendants were copied on Plaintiff's demands for his "client file", and at some unidentified time and unspecified manner "participated" in or "directed" "decisions concerning the withholding of" Teman's client file. See ECF 1, ¶¶ 14-16, 31-33. Plaintiff's bare allegations are insufficient to meet the "rigorous" standards in this Circuit. See, e.g., Fossil Grp., Inc. v. Angel Seller LLC, 627 F. Supp. 3d 180, 204-205 (E.D.N.Y. 2022)(conclusory allegations that counterclaim-defendants led the enterprise and developed the plan for its purposes were insufficient to plead the operation and management element of RICO claim, where none of the allegations explained how the counterclaim-defendants managed the

12

enterprise itself, vis-à-vis one another); O'Neil v. Ponzi-Flett, 2009 U.S. Dist. LEXIS 98170 at*4-*5 (N.D.N.Y. 2009)("unsubstantiated and conclusory allegations that certain named and unnamed defendants participated in certain enterprises and took actions at unspecified times and places are insufficient to state a RICO claim")(internal quotations/citations omitted).

Nor does Plaintiff sufficiently allege that the MedPro Defendants engaged in any predicate acts of racketeering activity. To the extent that Plaintiff attempts to predicate his RICO claims on wire fraud, they must satisfy Rule 9(b)'s particularity requirements. See, e.g., See Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); Angermeir v. Cohen, 14 F. Supp.3d 134, 144 (S.D.N.Y. 2014). This, requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lanzaro-Brunstein v. Creative Portal LLC, 2026 U.S. Dist. LEXIS 132082 at *6 (S.D.N.Y. 2026)(internal quotations/citation omitted). What is more, "[w]here multiple defendants are accused of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. … The requirements of Rule 9(b) are not satisfied by a complaint in which defendants are clumped together in vague allegations." Id. at *8-*9 (internal quotations/citations omitted).

Here, however, the only supposed acts of wire fraud that Plaintiff alleges are that: (i) on or about February 16, 2026, unspecified "Defendants" transmitted unidentified "communications", in which the "Defendants" supposedly falsely represented that a "declaration page" from an unidentified policy "constituted a complete insurance policy"; (ii) on or about April 23, 2026, Defendant Yannuci sent Plaintiff an email in which she falsely stated "that Plaintiff was required to identify specific documents and pay fees to obtain his own client file"; and (iii) "on multiple

13

occasions", "including but not limited to May 2022, May 2024, and thereafter", Defendants ZNC and Virgil supposedly transmitted unspecified "[s]imilar communications". See ECF 1, ¶ 53.

Assuming – for argument's sake – that these threadbare allegations were sufficient to demonstrate that anyone used the interstate wires in furtherance of any fraudulent scheme, Plaintiff pleads no facts to demonstrate that the MedPro Defendants had any role in any of these wires. To the contrary, Plaintiff merely alleges "these communications were coordinated among Defendants, including insurer Defendants and counsel, as part of a unified strategy to delay production of the client file and suppress Plaintiff's claims." See ECF 1, ¶ 53. In this context, where more than one defendant is charged with fraud in the context of a RICO claim, the plaintiff must "particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." Procapui-Productores de Camaroes de Icapui Ltda. v. Marcial Gerald Layani, G.F. Higgins, Inc., 2008 U.S. Dist. LEXIS 121633 (S.D.N.Y. 2008); see also Foster v. 2001 Real Estate, 2015 U.S. Dist. LEXIS 159489 at * 20, fn. 1 (S.D.N.Y. 2015)(dismissing civil RICO claims where the complaint did not explain how defendants were "alleged to have engaged in the required two predicate acts, a showing that is required"). Here, however, Plaintiff's allusions to actions supposedly taken by "Defendants", collectively – without particularizing which Defendant did what or when, and without alleging connections between various of the "Defendants" – are insufficient to meet this standard.

Plaintiff likewise fails to allege that the MedPro Defendants acted with any fraudulent intent. Although intent may be averred generally under Rule 9(b), a civil RICO plaintiff must supply a factual basis for a "strong inference" of fraudulent intent, not mere speculation and conclusory allegations. See, Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Yet, speculation

14

and conclusory allegations are all that Plaintiff offers here, so his RICO claims against the MedPro Defendants should be dismissed to the extent that they are predicated on wire fraud.

Plaintiff's attempt to predicate his RICO claims on supposed "extortion" fares no better. At bottom, Plaintiff's "extortion" allegations seem to be that "Defendants" – Plaintiff does not specify which ones – imposed "conditions" on his ability to access his "client file", by requiring him to pay for the access and to identify the specific documents that he wanted produced. See ECF 1, ¶¶ 53-60. However, extortion is defined by 18 U.S.C. § 1951(b)(2) as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Applying that definition, courts have held that RICO applies to extortionate acts where they constitute a "wrongful use of actual or threatened force, violence, or fear, or under color of official right." Entretelas Americanas S.A. v. Soler, 2020 U.S. Dist. LEXIS 20692 at *26-*28 (S.D.N.Y. 2020)(internal quotations/citation omitted).

Plaintiff pleads zero facts to suggest that the MedPro Defendants obtained any of Plaintiff's property, much less through any "wrongful use of actual or threatened force, violence, or fear, or under color of official right". Plaintiff does not even plead any facts to suggest that the MedPro Defendants ever had possession of his "client file", that he ever directed any of his requests for his "client file" to the MedPro Defendants, or that the MedPro Defendants imposed "conditions" on the production of the client file. Accordingly, Plaintiffs' RICO claims against the MedPro Defendants should be dismissed to the extent that they are predicated on extortion.[3]

Plaintiff also fails to allege any pattern of racketeering activity. In this respect, isolated racketeering acts are insufficient to support RICO liability. Rather, the acts of racketeering activity

---

[3] Plaintiffs' allegations to the effect that Defendants Virgil and Medina "exerted extreme and improper pressure on Plaintiff to settle" his malpractice action likewise are insufficient to plead extortion-based RICO claims against the MedPro Defendants. See ECF 1, ¶¶ 14-21. Plaintiff pleads no facts to demonstrate that the MedPro Defendants were involved in any way in Virgil and Medina's supposed "extreme and improper pressure".

must be sufficient to "constitute a pattern." <u>See</u>, <u>United States v. Daidone</u>, 471 F.3d 371, 375-376 (2d Cir. 2006). To establish a pattern, a plaintiff not only must allege at least two acts of racketeering activity within 10 years, but also must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." <u>See</u> <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern – a series of related predicate acts extending over a substantial period of time – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 183 (2d Cir. 2008).

In terms of closed-ended continuity, the time span associated with the allegations made in this action falls well short of the mark. Since the Supreme Court's decision in <u>H.J. Inc.</u>, the Second Circuit generally has not held a period of fewer than two years to constitute a substantial period of time. <u>See</u>, <u>e.g.</u>, <u>First Capital Asset Mgmt.</u>, 385 F.3d at 181; <u>see</u> <u>also</u> <u>Reich v. Lopez</u>, 858 F.3d 55, 60 (2d Cir. 2017)("closed-ended continuity is 'primarily a temporal concept,' <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 184 (2d Cir. 2008), and it requires that the predicate crimes extend 'over a substantial period of time.' <u>H.J.</u>, 492 U.S. at 242. Predicate acts separated by only a few months will not do, <u>Id.</u>; this Circuit generally requires that the crimes extend over at least two years.") Here, however, the only "predicate acts" that Plaintiff pleads with any particularity at all amount to "Defendants'" February 16, 2026 "communications" regarding the declarations page of an unidentified insurance policy, and Yannuci's April 23, 2026 email regarding the production of Plaintiff's client file, both of which supposedly occurred within just a few months earlier this year.

16

Plaintiff is similarly deficient in pleading an open-ended pattern of racketeering activity, which requires facts establishing a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999); GICC Capital Corp. v. Tech. Fin. Grp., 67 F.3d 463, 466 (2d Cir.1995)(describing open-ended continuity as "past criminal conduct coupled with a threat of future criminal conduct"). To determine the existence of a continuing threat, a court looks at the nature of the enterprise and of the predicate acts. See Cofacredit, 187 F.3d at 242. The Second Circuit has made clear that "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Spool, 520 F.3d at 185. In this case, however, Plaintiff's Complaint simply does not contain any facts that would allow a court to draw such a conclusion with respect to the MedPro Defendants.

Furthermore, Courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern. See, e.g., Sehgal v. Aggarwal, 2021 U.S. Dist. LEXIS 154043 at * 11 (E.D.N.Y. 2021)("[C]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.")(Internal quotations/citation omitted). This is because a single narrow scheme with one victim and limited participants does "not constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO." Ritter v. Klisivitch, 2008 U.S. Dist. LEXIS 58818 at * 32 (E.D.N.Y. 2008); Spool, 520 F.3d at 186 (holding that "inherently terminable" scheme does not pose threat of continued criminal activity thereby precluding Plaintiff from alleging open-ended continuity).

17

In the present case, Plaintiff has not alleged a single well-pleaded fact to suggest that anyone other than himself was targeted or affected by the alleged conduct. Nor has he adduced anything to suggest that the Defendants' conduct amounted to anything other than a single, narrow, inherently terminable scheme aimed at preventing him from obtaining his "client file". Considering that Plaintiff has – at most – alleged a single, narrow scheme with one victim and limited participants, he has not pleaded the existence of any open- or closed-ended pattern of racketeering activity.

Moreover, Plaintiff's RICO claims are defective because he has not alleged a cognizable RICO injury. To do so, Plaintiff was obligated to plead facts demonstrating: (i) a clear, definite, and provable amount of damages; (ii) that his damages were proximately caused by Defendants' alleged racketeering activity; and (iii) that he exhausted its legal and contractual remedies before bringing suit. See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768-770 (2d Cir. 1994); AMA v. United Healthcare Corp., 588 F. Supp. 2d 432, 441 (S.D.N.Y. 2008).

Plaintiff's RICO claims fail each of these requirements. Though Plaintiff alleges that he suffered more than $24,000,000.00 in damages, along with treble and punitive damages, he does not plead a single fact to demonstrate how he arrived at this enormous figure. Instead, Plaintiff's damages appear to be based on speculation such that, if only he had not been pressured to accept a settlement in his medical malpractice case, and if only he had been able to obtain his "client file", then he somehow would have been $24,000,000.00 richer. However, "a RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable". Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995); see also Azima v. Dechert LLP, 2024 U.S. Dist. LEXIS 176048 at *31-*32 (S.D.N.Y. 2024)("Where, as here, an alleged RICO violation is predicated on acts of fraud, a plaintiff must allege that the defendant's acts were not only the but for cause of the plaintiff's injury, but the proximate cause as well, necessitating

18

a direct relation between the injury asserted and the injurious conduct alleged ... a link that is too remote, purely contingent, or indirect is insufficient.")(Internal quotations/citations omitted).

Here, Plaintiff's purported damages not only are speculative and unprovable, but Plaintiff pleads no facts to suggest that any of his losses were proximately caused by the MedPro Defendants, who are alleged – at most – to have been copied on Plaintiff's demands for his client file, and to have in some unenumerated way "participated" in decisions by others to withhold the client file. Moreover, Plaintiff does not allege any facts to demonstrate that he exhausted his legal and contractual remedies before commencing this RICO action against the MedPro Defendants. Plaintiff would be hard-pressed to do so even if he had tried, considering – among other things – that Plaintiff previously filed the Related Action, in which he likewise is seeking the production of his client file. See Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, at ECF 106.

Plaintiff's RICO conspiracy claim under 18 U.S.C. 1962(d) likewise is defective. Where, as here, a plaintiff's substantive RICO claims are subject to dismissal, his RICO conspiracy claims also should be dismissed. See, e.g., Rosner v. Bank of China, 528 F. Supp. 2d 419 (S.D.N.Y. 2007)("[b]ecause the Court finds that Rosner does not sufficiently allege a violation of § 1962(a) or § 1962(c), the Court need not consider § 1962(d), as a complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d).").

In any case, to state a claim under Section 1962(d), a plaintiff must allege that the defendant "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." United States v. Yanotti, 541 F.3d 112, 121-122 (2d Cir. 2008). Here, however, the most Plaintiff alleges as to the MedPro Defendants is that they were copied on certain of his unspecified demands for his "client file", and in some unspecified way "participated in decisions concerning the withholding of Plaintiff's file." See ECF 1, ¶¶ 31-33. Even with the benefit of every reasonable inference, these vague allegations

19

are insufficient to plead that the MedPro Defendants agreed to participate in the affairs of any enterprise through any racketeering activity.

Finally, despite Plaintiff's efforts to create the appearance of a complex "RICO" scheme, his claims really amount – at most – to dressed-up claims for common torts (such as conversion, fraud, and legal malpractice), which even then are only vaguely pleaded. For example, Plaintiffs' "RICO" claims are based on the same purported conduct (improper withholding of the "client file", pressure to settle the medical malpractice case) and seek the same purported damages ($24,000,000.00) as his conversion, fraud, aiding and abetting breach of fiduciary duty, tortious interference, and unjust enrichment claims. See ECF 1, passim. For this reason, as well, Plaintiff has not stated any "RICO" claims. See, Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., 2013 U.S. Dist. LEXIS 107552, at * 9 (S.D.N.Y. 2013)("[T]he allegations in the Complaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO amount merely to a breach of contract claim [and common business torts], which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.")(internal quotations/citation omitted).

Accordingly, Plaintiff's RICO claims against the MedPro Defendants should be dismissed.

### III.    Plaintiff's Sherman Act Claims Should be Dismissed

Plaintiff's claim against the MedPro Defendants for violation of Section 2 of the Sherman Act also is defective. Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations … ." 15 U.S.C. § 2.

In this context, "[a] private plaintiff must demonstrate that it has standing under the federal antitrust laws." DirecTV, LLC v. Nexstar Media Grp., Inc., 162 F.4th 295, 308 (2d Cir. 2025). To do so, it must show that "it suffered a special kind of antitrust injury" that is "of the type the

antitrust laws were intended to prevent and that flows from that which makes or might make defendants' acts unlawful." Id. at 308-309 (internal quotations omitted). "An antitrust injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Id. at 309 (internal quotations/citation omitted). "[B]ecause the antitrust laws protect competition, not competitors, a plaintiff must show that more than its own business suffered; it must ultimately show that the challenged action harmed consumers." MacDermid Printing Solutions LLC v. Cortron Corp., 833 F.3d 172, 187 (2d Cir. 2016) (internal quotations omitted).

Importantly, a complaint alleging a violation of Section 2 of the Sherman Act is subject to dismissal where it includes only conclusory statements to the effect that the challenged action caused harm to competition in the relevant market, as opposed to harm to the plaintiff as an individual. See, e.g., Electronics Communs. Corp. v. Toshiba Am. Consumer Prods., 129 F.3d 240, 245 (2d Cir. 1997)(dismissing claim where complaint contained only a conclusory statement as to the alleged harm to competition); E&L Consulting, Ltd. v. Doman Indus., 360 F. Supp. 2d 465, 476 (E.D.N.Y. 2005), aff'd, 472 F.3d 23 (2d Cir. 2006), cert. denied, 552 U.S. 816 (2007) (same).

Here, Plaintiff vaguely alleges that "Defendants" – Plaintiff never specifies which ones, but presumably the MedPro Defendants – engaged in anticompetitive conduct by "structuring insurance coverage in a manner that internalizes liability across both sides of malpractice risk", "creating financial incentives to suppress the value of malpractice claims irrespective of their merits", "influencing litigation strategy and settlement practices across insured parties in order to minimize aggregate payouts", "interfering with independent legal representation by introducing undisclosed financial conflicts arising from shared insurance coverage", "discouraging full

21

litigation of claims that would expose the true market value of malpractice liability", and similar vaguely-alleged activities. See ECF 1, ¶ 112. Plaintiff then alleges – in totally conclusory terms – that these supposed activities somehow harm competition in the relevant market by "distorting the pricing and valuation of malpractice claims", "suppressing settlement values below competitive levels", "disadvantaging plaintiffs and law firms that seek to litigate claims independently of insurer influence", "impairing the ability of competing insurers and legal service providers to operate in a market governed by fair and independent claim valuation", and "reducing quality by impairing the availability of independent, conflict-free legal representation in malpractice litigation". See ECF 1, ¶ 113.

However, Plaintiff merely speculates that any of the MedPro Defendants' vaguely-alleged actions had these supposed anticompetitive effects. How did the MedPro Defendants "structur[e] insurance coverage in a manner that internalizes liability across both sides of malpractice risk"? What "financial incentives" did the MedPro Defendants "creat[e]", and in which cases did any such "financial incentives" actually "suppress the value of malpractice claims irrespective of their merits"? In what instances did the MedPro Defendants ever "influenc[e] litigation strategy and settlement practices across insured parties", "distort[] the pricing and valuation of malpractice claims", "disadvantag[e] plaintiffs and law firms that seek to litigate claims independently of insurer influence", "impair[] the ability of competing insurers and legal service providers to operate", etc.? Plaintiff does not say. Nor, does Plaintiff identify a single other person, besides himself, who supposedly was injured by any of the MedPro Defendants' supposed activities.

In fact, Plaintiff does not even manage to plausibly allege any relevant market. Instead, he alleges the purported "market" to be a supposed "market for professional liability insurance and malpractice claims resolution in medical malpractice litigation within the United States, and

22

alternatively within the State of New York". <u>See</u> ECF 1, ¶ 109. However, Plaintiff's Complaint provides to facts to suggest how any "market" for "malpractice claims resolution" could exist, either alone or in tandem with a market for professional liability insurance.

Plaintiff's conclusory "antitrust injury" allegations therefore are insufficient to withstand dismissal. <u>See</u>, <u>e.g.</u>, <u>Sell It Soc., LLC v. Acumen Brands, Inc.</u>, 2015 U.S. Dist. LEXIS 35404 at *11 (S.D.N.Y. 2015)(plaintiff failed to sufficiently allege antitrust injury where allegations of marketwide effects amounted to speculative conclusions); <u>Rock TV Entertainment, Inc. v. Time Warner, Inc.</u>, 1998 U.S. Dist. LEXIS 799 at *6-*11 (S.D.N.Y. 1998) (dismissing Sherman Act claim where, though the plaintiff alleged in conclusory terms that "competition has been adversely affected" because of defendants' actions, the plaintiff failed to plead any facts to demonstrate that competition in the relevant market actually was harmed).

Furthermore, to state a claim for monopolization under Section 2 of the Sherman Act, Plaintiff was required to plausibly allege that the MedPro Defendants: (i) possess monopoly power in the relevant market, which, again, Plaintiff implausibly defines as "the market for professional liability insurance and malpractice claims resolution in medical malpractice litigation within the United States, and alternatively within the State of New York"; and (ii) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. <u>See</u> <u>Particle Health Inc. v. Epic Sys. Corp.</u>, 2025 U.S. Dist. LEXIS 173664 at *40 (S.D.N.Y. 2025); ECF 1, ¶ 109.

In this respect, "monopoly power" is defined as "the ability to control prices or exclude competition". <u>Discover Fin. Servs. v. Visa U.S.A.</u>, Inc., 2005 U.S. Dist. LEXIS 62846 at *4 (S.D.N.Y. 2005)(internal quotations/citation omitted). The Second Circuit has held that "[a]bsent additional evidence, such as an ability to control prices or exclude competition", even "a

23

64 percent market share is insufficient to infer monopoly power." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 109 (2d Cir. 2002); see also Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc., 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013)(allegation that defendant's market share was 60 percent insufficient to state claim under Section 2 of Sherman Act).

In the present case, however, Plaintiff simply alleges that MedPro and its affiliates entities possess some unspecified "substantial market power in the Relevant Market", and that MedPro "is among the leading providers of healthcare liability insurance in the United States". At the same time, Plaintiff does not allege a single fact to suggest that the MedPro Defendants have the ability to control prices or exclude competition, and – indeed – Plaintiff affirmatively alleges that MedPro is only one of the "leading providers of healthcare liability insurance in the United States", which obviously forecloses any claim that the MedPro Defendants are running or attempting to run a monopoly. Accordingly, to the extent that Plaintiff's Sherman Act claim is based on monopolization, it should be dismissed. See, e.g., Jones v. Aetna, Inc., 2020 U.S. Dist. LEXIS 174440 at *5-*7 (S.D.N.Y. 2020)(allegations that defendant had 4.5 percent share of insurance market in United States, and 33 percent market share in New York, were "plainly insufficient" to state a claim under Section 2 of the Sherman Act); In re Eyewear Antitrust Litig., 2025 U.S. Dist. LEXIS 190628 at *41-*43 (S.D.N.Y. 2025)(allegations that defendants controlled a bare majority of the pertinent market insufficient to state a claim under Section 2, where the plaintiffs failed to offer any non-conclusory allegations that the defendants had the ability to control prices or exclude competition).[4]

Plaintiffs Sherman Act claim likewise is defective to the extent that it is based on a theory of attempted monopolization. "To state an attempted monopolization claim, a plaintiff must

---

[4] In the present case, Plaintiff does not allege – even in conclusory fashion – that the MedPro Defendants have the ability to control prices or exclude competition.

establish (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." In re Eyewear Antitrust Litig., supra at *30. Here, however, Plaintiff does not allege any facts – as opposed to conclusory statements – to demonstrate that the MedPro Defendants engaged in any predatory or anticompetitive conduct. Though Plaintiff vaguely alleges that the MedPro Defendants engaged in acts such as "structuring insurance coverage in a manner that internalizes liability across both sides of malpractice risk", "creating financial incentives to suppress the value of malpractice claims irrespective of their merits", "influencing litigation strategy and settlement practices across insured parties in order to minimize aggregate payouts", etc. – and labels them as "anticompetitive" – it is unclear how these acts, even if committed, would have any impact on the supposed "market for professional liability insurance and malpractice claims resolution in medical malpractice litigation". See ECF 1, ¶ 112.

Nor does Plaintiff plead any facts to demonstrate that the MedPro Defendants had any specific intent to monopolize the market or any dangerous probability of achieving monopoly power. See, e.g., Bookhouse of Stuyvesant Plaza, Inc., 985 F. Supp. 2d at 623-624 (dismissing Section 2 claim where – as here – plaintiffs did not plausibly allege any predatory or anticompetitive conduct, and their allegations regarding specific intent to monopolize and a dangerous probability of achieving monopoly power were "entirely conclusory, merely reciting the required elements without alleging any supporting facts"); Jones, supra at *5-*7 (dismissing Section 2 claims for failure to sufficiently allege either monopolization or attempted monopolization, where – much as in the present case – the plaintiff's complaint was "bereft of facts indicating whether or how [the defendant's] supposed conduct actually excluded or is likely to exclude competition in the health insurance market").

25

Accordingly, Plaintiff's Sherman Act claims against the MedPro Defendants should be dismissed.

## IV.    <u>Plaintiff's Conversion Claim Should be Dismissed</u>

As this Court has noted, "[t]he elements of a conversion claim under New York law are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." <u>Smart Recovery Techs. LLC v. Supplies Plus MI LLC</u>, 2026 U.S. Dist. LEXIS 58847 at *58 (S.D.N.Y. 2026)(Internal quotations/citation omitted). In this respect, "[s]ome affirmative act – asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by the defendant – has always been an element of conversion." <u>Amusement Indus., Inc. v. Midland Ave. Assocs., LLC</u>, 820 F. Supp. 2d 510, 534 (S.D.N.Y. 2011), <u>quoting</u> <u>State v. Seventh Regiment Fund, Inc.</u>, 98 N.Y.2d 249, 260, (N.Y. 2002).

Here, Plaintiff alleges that "Defendants" – again, he does not specify which ones – supposedly "exercised unauthorized dominion" over his client file by "refusing to produce it" and by "conditioning its release on unauthorized demands". <u>See</u> ECF 1, ¶ 75. However, Plaintiff's Complaint is devoid of any allegations to suggest that any of the <u>MedPro Defendants</u> ever had possession of his client file, ever refused to produce it, or ever conditioned its release on any unauthorized demands. To the contrary, Plaintiff appears to be trying to contend that it was the <u>ZNC Defendants</u> that engaged in this conduct, and that the MedPro Defendants – specifically Defendant Patrick – in some unspecified way, at some unidentified time, "participated in decisions concerning the withholding of Plaintiff's file." <u>Id</u>., ¶¶ 31-33. Nowhere does Plaintiff adduce any facts to demonstrate a connection between the MedPro Defendants and the ZNC Defendants that would vest the MedPro Defendants with authority to direct the ZNC Defendants' conduct

26

regarding the client file. Nor does Plaintiff plead facts to show how or why the MedPro Defendants participated in any decisions by the ZNC Defendants to withhold the file. To the contrary, Plaintiff simply alleges that Attorney Protective was ZNC's professional liability insurer, Patrick was Attorney Protective's president, and MedPro was Attorney Protective's parent company, and speculates that the MedPro Defendants were involved in the ZNC Defendants' decision-making regarding the client file.

These kinds of conclusory allegations are insufficient to plead a conversion claim against the MedPro Defendants. See, e.g., Associated Mortg. Bankers, Inc. v. CalCon Mut. Mortg. LLC, 2017 U.S. Dist. LEXIS 5188 at *14-*17 (E.D.N.Y. 2017)(conclusory allegations that defendant "knew of and condoned" actions by others held insufficient to state conversion claim); Rubio v. BSDB Mgmt., 2021 U.S. Dist. LEXIS 5588 at *15 (S.D.N.Y. 2021)(holding "generic and conclusory" statements without additional allegations supporting a conversion claim, was insufficient to state a plausible claim for conversion).

Accordingly, Plaintiff's conversion claim should be dismissed to the extent that it is asserted against the MedPro Defendants.

## V.    Plaintiff's Replevin Claim Should be Dismissed

To state a claim for replevin under New York law, "the claimant must establish two elements: 1) that it has a possessory right to property superior to that of the party currently in possession of the property; and 2) that it is entitled to the immediate possession of that property." SYL Consulting LLC v. Cmty. USA II LLC, 2024 U.S. Dist. LEXIS 16423 at *8 (S.D.N.Y. 2024).

The subject of a claim for replevin must be a "specific, identifiable item of personal property." HSCM Bermuda Fund Ltd. v. Newco Cap. Grp. VI LLC, 619 F. Supp. 3d 434, 444 (S.D.N.Y. 2022) (internal quotations omitted). If the opposing party came into possession of the property lawfully, the claimant must also show that he made a demand for the property, and was

27

refused. See, e.g., William Gottlieb Mgmt. Co., LLC v. Carlin, 2025 U.S. Dist. LEXIS 85922 at *11 (S.D.N.Y. 2025).

In the present case, Plaintiff includes a replevin claim in his Complaint, through which he seeks "immediate possession of his client file". See ECF 1, ¶¶ 79-81. However, Plaintiff does not allege any facts to demonstrate that the MedPro Defendants are in possession of Plaintiff's client file. If anything, Plaintiff appears to contend that it is his former counsel the ZNC Defendants – rather than the MedPro Defendants – who are in possession of the client file. See id., ¶ 51.

Because Plaintiff does not allege any facts to demonstrate that the MedPro Defendants are in possession of his client file, his replevin claim should be dismissed to the extent that it is asserted against the MedPro Defendants. See, e.g., HSCM Bermuda Fund Ltd., 619 F. Supp. 3d at 444 (dismissing replevin claim where plaintiffs did not allege that defendant was in possession of property to which plaintiffs had a superior right).

## VI.    Plaintiff's Fraud Claim Should be Dismissed

Plaintiff's fraud claim also is defective to the extent it is asserted against the MedPro Defendants. "The elements of a cause of action for fraud under New York law are 'a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.'" Papapietro v. Clott, 2023 U.S. Dist. LEXIS 16492 at *46 (E.D.N.Y. 2023), quoting Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (N.Y. 2009).

Here, however, Plaintiff does not allege any particularized facts to show that the MedPro Defendants made representations to him at all, let alone material misrepresentations. Instead, Plaintiff vaguely alleges that "Defendants, including Yannuci and Cohen" falsely represented that: (i) a declarations page of some unidentified insurance policy constituted the entire policy; and (ii) Plaintiff was required, in some unknown context, to identify specific documents and pay unidentified fees in connection with the production of his client file. See ECF 1, ¶¶ 54, 85-86.

28

These vague allegations – in which Plaintiff improperly clumps all the disparate "Defendants" together without specifically identifying who said what, and when – are insufficient to plead a fraud claim with the particularity required by Rule 9(b). See, e.g., Lanzaro-Brunstein, supra; see also Neuman v. Garcia, 2022 U.S. Dist. LEXIS 172851 at *25-*26 (S.D.N.Y. 2022)("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'. …Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. … Because Rule 9(b) requires that a defendant receive fair notice of the fraud claim, a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must 'plead with particularity by setting forth separately the acts complained of by each defendant")(internal quotations/citations omitted)(emphasis in original).

Nor does Plaintiff allege that he justifiably relied on any of the alleged misrepresentations. To the contrary, Plaintiff's allegations indicate that he did not rely on the supposed misrepresentations and instead challenged them "through good-faith meet-and-confers and administrative follow-ups rather than immediate judicial intervention", and ultimately by making a motion to compel in some unidentified forum, but presumably in the Related Action that Plaintiff filed. See ECF 1, ¶ 87. Plaintiff's fraud claim should be dismissed for this reason, as well. See, e.g., Brock Cap. Grp. LLC v. Siddiqui, 2022 U.S. Dist. LEXIS 101738 at *8-*16 (S.D.N.Y. 2022) (dismissing fraudulent inducement claim at the pleading stage for failure to plausibly allege reliance element, and noting that "analysis of the reasonableness of reliance is properly considered at the motion to dismiss stage because the standard is an objective one").

## VII.    Plaintiff's Aiding and Abetting Breach of Fiduciary Duty Claim Should be Dismissed

Under New York law, a claim of aiding and abetting breach of fiduciary duty has three elements: (1) existence of a breach of fiduciary obligations, of which the aider and abettor had

29

actual knowledge; (2) the defendant's knowing inducement or participation in the breach; and (3) the plaintiff's damages as a result of the breach. See, e.g., In re Sharp Int'l Corp., 403 F.3d 43, 49-50 (2d Cir. 2005). Where, as here, a plaintiff's aiding and abetting breach of fiduciary duty allegations sound in fraud, the allegations must be pleaded with particularity under Rule 9(b). See, e.g., Marino v. Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).[5] Moreover, the complaint "must allege facts supporting a strong inference that defendant had actual knowledge of the breach of duty". Berman v. Morgan Keegan & Co., 2011 U.S. Dist. LEXIS 27867 at *37 (S.D.N.Y. 2011).

Against this backdrop, Plaintiff fails to state a claim against the MedPro Defendants for aiding abetting any breach of fiduciary duty by ZNC. As discussed above, Plaintiff's only substantive allegations against the MedPro Defendants are that they were copied on Plaintiff's demands for his "client file", and at some unidentified time and unspecified manner "participated" in or "directed" the "decisions concerning the withholding of" the client file. See ECF 1, ¶¶ 14-16, 31-33. These vague and conclusory allegations are not sufficient to allege that the MedPro Defendants induced or participated in any breaches of fiduciary duty. See, e.g., In re Kingate Mgmt. Ltd. Litig., 2016 U.S. Dist. LEXIS 129882 at *152-*153 (S.D.N.Y. 2016)(dismissing aiding and abetting breach of fiduciary duty claims where plaintiffs "alleged only conclusory allegations [defendants] knowingly assisted in those breaches, [and] have provided no specific allegations as to how they assisted or induced them, or whether they acted dishonestly in doing so"); Horvath v. Banco Comercial Portugues, 2011 U.S. Dist. LEXIS 15865 at *24 (S.D.N.Y. 2011)(dismissing aiding and abetting claims where plaintiff "failed to plead non-

---

[5] In keeping with the fact that Plaintiff's aiding and abetting breach of fiduciary duty claim sounds in fraud, Plaintiff's aiding and abetting breach of fiduciary duty claim is based on the same substantive allegations as his fraud claim and RICO claim (which is predicated on wire fraud).

conclusory facts that Millennium had actual knowledge of BCP's breach of fiduciary duty and that Millennium provided substantial assistance to BCP"). What is more, Plaintiff pleads no particular damages in connection with his aiding and abetting breach of fiduciary duty claim, nor does he allege that he suffered any particular damages as the result of the purported breach. For this reason, as well, Plaintiff's aiding and abetting claim should be dismissed. See, e.g., Lihua Gan v. Gsuig Real Est. Member LLC, 797 F. Supp. 3d 69, 94 (E.D.N.Y. 2025)(dismissing aiding and abetting breach of fiduciary duty claim where – much as in this case – the plaintiffs had not adequately pleaded either factual or proximate causation).

## VIII.  Plaintiff's Legal Malpractice Claim Should be Dismissed

"The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client." Wgh Communs. v. Penachio Malara Llp, 2020 U.S. Dist. LEXIS 221869 at *10 (S.D.N.Y. 2020)(internal quotations/citation omitted). However, Plaintiff does not allege any facts to suggest that he was ever in any kind of attorney-client relationship with the MedPro Defendants, that the MedPro Defendants were negligent in the context of any such attorney-client relationship, or that any such negligence proximately caused Plaintiff to suffer any actual damages. To the contrary, Plaintiff alleges that Attorney Protective was ZNC's professional liability insurer, Patrick is Attorney Protective's president, and MedPro is Attorney Protective's parent company.

Accordingly, Plaintiff's legal malpractice claim also should be dismissed, to the extent that it is asserted against the MedPro Defendants. See, e.g., Murdock v. Microsoft Corp., 2015 U.S. Dist. LEXIS 126025 at *9-*10 (S.D.N.Y. 2015)(dismissing legal malpractice claim where plaintiff failed to allege any attorney-client relationship with defendant).

31

**IX.    Plaintiff's "Tortious Interference" Claim Should be Dismissed**

Plaintiff also asserts a "tortious interference" claim, without specifying whether the alleged interference was with a contract or prospective business relations. Either way, however, the claim is defective and should be dismissed.

To assert a claim for tortious interference with contract, a plaintiff must plead: (i) the existence of a valid contract with a third party; (ii) the defendant's knowledge of that contract; (iii) the defendant's intentional and improper procurement of a breach of that contract; and (iv) the breach resulted in damages to the plaintiff.  See, e.g., Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001). A plaintiff "must allege each of these elements in a non-conclusory fashion."  Krys v. Sugrue (In re Refco Inc.), 2011 U.S. Dist. LEXIS 142291 at *84 (S.D.N.Y. 2011).

Here, however, Plaintiff does not allege valid contracts with third parties, the MedPro Defendants' knowledge of any such contracts, the MedPro Defendants' intentional or improper procurement of any breaches of any such contracts, or how any such breach caused him to suffer any damages. Instead, Plaintiff generally alleges that "Defendants" – without specifying which ones – somehow "interfered with Plaintiff's ability to pursue claims and obtain testimony, including through actions relating to a key witness." See ECF 1, ¶¶ 101-102. Plaintiff does not identify the "claims" he was unable to pursue, the "testimony" he was unable to obtain, the "actions relating to a key witness", or the "key witness".

To plead a cause of action for tortious interference with prospective business relations, a plaintiff must allege:  (i) business relations with a third party; (ii) the defendant's interference with those business relations; (iii) the defendants' use of wrongful means or acting with the sole purpose of harming the plaintiff; and (iv) injury to the business relationship.  See, Hassan v. Deutsche Bank A.G., 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007), aff'd, 336 Fed. Appx. 21 (2d Cir. 2009).

32

Again, Plaintiffs' allegations do not meet any of these standards, considering that his Complaint fails to identify any business relations with any third party, any wrongful means used by the MedPro Defendants to interfere in any such relations, or any injury to any such relations.

Accordingly, Plaintiff's tortious interference claim should be dismissed.

## X.        Plaintiff's Unjust Enrichment Claim Should be Dismissed

To state a claim for unjust enrichment in New York, a plaintiff must sufficiently allege "(i) that the defendant benefitted; (ii) that the benefit came at the plaintiff's expense; and (iii) equity and good conscience require restitution." Tal v. Computech Int'l, Inc., 2022 U.S. Dist. LEXIS 217538 at *14 (E.D.N.Y. 2022)(internal quotations/citation omitted).

In light of these standards, Plaintiff's unjust enrichment claim is defective because Plaintiffs does not allege any facts to demonstrate that any of the MedPro Defendants obtained benefit at Plaintiff's expense, nor does he allege any facts to demonstrate that equity and good conscience require restitution of any such unidentified benefit. Instead, Plaintiff simply alleges that "Defendants" somehow "were enriched at Plaintiff's expense through fees and avoided liability". See ECF 1, ¶ 104. However, Plaintiff does not allege that the MedPro Defendants received any "fees" from him, nor does he identify any "liability" that the MedPro Defendants "avoided", or plead any facts to show that any such "liability" would otherwise have run in his direction.

Not only has Plaintiff failed to plead the required elements of his unjust enrichment claim, but the claim is impermissibly duplicative of Plaintiff's other defective claims. See, e.g., Nachman v. Tesla, Inc., 2023 U.S. Dist. LEXIS 176468 at *12 (E.D.N.Y. 2023)("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.")(Internal quotations/citation omitted). In keeping with the fact that Plaintiff's unjust

enrichment claim is duplicative of his other claims, the unjust enrichment claim is predicated on the same facts as Plaintiff's other claims, and seeks the same damages.

Accordingly, the unjust enrichment claim should be dismissed.

**XI.     Plaintiff's Claim for Injunctive Relief Should be Dismissed**

Plaintiff also asserts a claim for injunctive relief, in which he seeks "immediate production of his client file". See ECF 1, ¶ 107. However, as this Court has noted, "[i]t is well settled that a request for … injunctive relief is not an independent cause of action … . Rather, the injunction is merely the remedy sought for the legal wrongs alleged in the … substantive counts." Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021).

In any case, to obtain a permanent injunction, a party must establish: (i) success on the merits; (ii) the lack of an adequate remedy at law; and (iii) irreparable harm if the relief is not granted. See, e.g., UBS Sec. LLC v. Voegeli, 405 F. App'x 550, 551 (2d Cir. 2011). For the reasons set forth herein, Plaintiff will not succeed on the merits of his claims. Nor should Plaintiff be heard to allege that he lacks an adequate remedy at law regarding the production of his client file, when he is currently aggressively pursuing the production of his client file in the Related Action. Nor, for that matter, does Plaintiff allege any facts to show that he will suffer irreparable harm absent the "immediate production of his client file".

Accordingly, Plaintiff's claim for injunctive relief should be dismissed.

**XII.    Plaintiff's Claims Should be Dismissed Pursuant to the Fugitive Disentitlement Doctrine**

In addition, the Court should exercise its discretion to dismiss Plaintiff's claims pursuant to the fugitive disentitlement doctrine. As discussed above, there is no doubt that Teman is a convicted fraudster and fugitive from justice. See, e.g., USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 92; United States v. Teman, 465 F. Supp. 3d 277, 284-291 (S.D.N.Y.

2020); see also Biale, supra at *2-*3 (finding that "Teman is a fugitive because he has absconded from supervision, refused to return by the court-ordered deadline, and apparently remains outside of the United States"). The first step of the fugitive disentitlement test is satisfied here.

As discussed above, the second step of the fugitive disentitlement test requires the Court to "determine whether disentitlement would serve the doctrine's objectives." Biale, supra (internal quotations/citation omitted). Here, disentitlement would serve the doctrine's objectives. First, it would "assur[e] the enforceability of any decision that may be rendered against the fugitive". Biale, supra. For instance, in Biale, the Court found that application of the doctrine as to Teman was appropriate because – were it otherwise – there could be "no assurance that Teman will comply with its instructions while he remains outside of the United States in defiance of court orders". Here, too, the Court can have no assurance that Teman will comply with any discovery orders, fee awards, sanctions orders, or contempt orders that the Court may issue in this case, and his fugitive status will make it difficult, and perhaps impossible, for the Court to enforce any such orders as this case proceeds. This consideration is particularly relevant in light of Teman's recent history as a frivolous and vexatious litigant.

Second, application of the fugitive disentitlement doctrine would impose an appropriate penalty on Teman for flouting the judicial process in his criminal case. Biale, supra. Teman should not be permitted to flee from justice in one federal case, and proceed as a civil plaintiff in others.

Third, and relatedly, application of the doctrine would discourage flights from justice, by making clear to potential fugitives that fugitive status could preclude their ability to commence and prosecute civil lawsuits. Conversely, failure to apply the doctrine would send a terrible message to prospective fugitives, and potentially incentivize flights from justice, by signaling that a fugitive could at the same time flout the court system and exploit the court system.

Fourth – and most significantly – the MedPro Defendants face considerable prejudice if Teman is entitled to proceed with this litigation and lob defective and conclusory claims at them from his fugitive perch overseas. For instance, the MedPro Defendants will be unable to take Teman's deposition in person, will likely encounter other difficulties in obtaining discovery from him, and the Court's ability to enforce its rulings via sanctions, fee awards, and contempt orders will be impeded. See Biale, supra (finding application of the fugitive disentitlement doctrine appropriate as to Teman where – much as in the present case – "Teman's fugitive status may prejudice the defendants in this action if, for example, they need to depose Teman, or otherwise take discovery from him, in order to defend themselves against his serious accusations"); Qian Gao v. Gonzales, 481 F.3d 173, 177 (2d Cir. 2007) (applying the doctrine to case "is the posture of 'heads I win, tails you'll never find me.'").

Accordingly, the Court should exercise its discretion to dismiss Teman's claims pursuant to the fugitive disentitlement doctrine.

## CONCLUSION

For the reasons set forth herein, Plaintiff's claims against the MedPro Defendants should be dismissed.

Dated: Uniondale, New York
       July 10, 2026

RIVKIN RADLER LLP

By:   /s/ Max Gershenoff

Max Gershenoff
Amanda B. Drantch
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333
*Counsel for Defendants MedPro Group Inc.,*
*Somerset Services LLC d/b/a Attorney*

36

*Protective i/s/h/a Attorney Protective and Scott Patrick*

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1 and the Court's order entered on July 2, 2026, I hereby certify that the MedPro Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint complies with the pertinent word count limitations, inasmuch as it contains 11,535 words, excluding the caption, table of contents, table of authorities, signature block, and required certificates.

Dated:  Uniondale, New York
        July 10, 2026

                          RIVKIN RADLER LLP

                   By:    /s/ Max Gershenoff
                          Max Gershenoff
                          Amanda B. Drantch

4920-6736-4012, v. 2

38