**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------
ARI BARUCH TEMAN,

                                  Plaintiff,

        - against -

MEDPRO GROUP INC., ATTORNEY PROTECTIVE,
SCOTT PATRICK, LEWIS BRISBOIS BISGAARD &
SMITH LLP, CRISTINA YANNUCCI, SAM COHEN,
ZELDES NEEDLE COOPER LLP, ROBERT S. COOPER,
MAXIMINO MEDINA, JEREMY VIRGIL, DANAHER
LAGNESE, P.C., SILVER HILL HOSPITAL, INC.,

                               Defendants.

-------------------------------------------------------------------------

**Case No.: 1:26-CV-03517-LJL**

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE COMPLAINT**</u>



                        **FURMAN KORNFELD & BRENNAN LLP**
                        Spencer A. Richards, Esq. (SAR7177)
                        *Attorneys for Defendant*
                        DANAHER LAGNESE, P.C.
                        88 Pine Street, 32nd Floor
                        New York, NY 10005
                        T:     (212) 867-4100
                        F:     (212) 867-4118
                        Email: srichards@fkblaw.com

**TABLE OF CONTENTS**                                                         Page

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................3

        A.  Silver Hill Commences a Fee Action Against Plaintiff ....................................3

        B.  ZNC Files Counterclaims on Plaintiff's Behalf ...............................................4

        C.  Silver Hill and Plaintiff Settle the Fee Action ................................................4

        D.  Plaintiff Commences The ZNC Related Action ...............................................5

PROCEDURAL HISTORY .................................................................................................5

LEGAL STANDARD ..........................................................................................................6

LEGAL ARGUMENT ..........................................................................................................8

     POINT I.    PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF
           LAW ........................................................................................................8

        A.  Plaintiff's Claims Accrued In 2017 And Are Now Time-Barred .....................8

        B.  Plaintiff Fails To State A Cognizable RICO Claim Against Danaher Because
           The Firm Was Not Part Of An Enterprise And Was Not Involved In Any Pattern
           Of Racketeering .................................................................................................9

           *i.*  *The Complaint Does Not Identify Danaher as Part of the Alleged
              Enterprise* ..........................................................................................10

           *ii.*  *The Complaint Does Not Allege That Danaher Was Involved in Any
              Pattern of Racketeering* .....................................................................12

           *iii.*  *Plaintiff Has Failed to Allege Closed or Open Ended Continuity* .......15

        C.  Plaintiff's Conspiracy Claim Fails Because the Complaint Does Not Allege a
           Substantive Violation or Any Agreement Involving Danaher .........................15

     POINT II.    PLAINTIFF'S LEGAL MALPRACTICE COUNT FAILS AS
           A MATTER OF LAW .................................................................................17

A.  Plaintiff's Legal Malpractice Claim is Time-Barred ........................................17

B.  Plaintiff's Legal Malpractice Count Fails to State A Claim Against Danaher 17

    i.     *Plaintiff Fails to Allege An Attorney-Client Relationship* ...................18

    ii.     *Plaintiff Fails to Allege Proximate Cause* ............................................19

POINT III.  PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF
    LAW ...........................................................................................................19

A.  Plaintiff's Fraud Claim is Time-Barred ...........................................................19

B.  Plaintiff's Fraud Claim Fails Because Plaintiff Does Not Allege Any Material
    Misrepresentation by Danaher ..........................................................................20

POINT IV.  PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS
    AS A MATTER OF LAW ........................................................................21

A.  Plaintiff's Aiding and Abetting Claim Expired ...............................................21

B.  Plaintiff's Aiding and Abetting Claim Fails to State A Claim  .......................22

POINT V.  PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM
    FAILS AS A MATTER OF LAW .............................................................23

A.  Plaintiff's Tortious Interference Claim Expired ..............................................23

B.  Plaintiff's Tortious Interference Claim Fails To State A Claim Because Danaher
    Did Not Interfere With Any Contract ...............................................................23

POINT VI.  PLAINTIFF'S VIOLATION OF THE SHERMAN ACT
    CLAIM FAILS AS MATTER OF LAW ...................................................24

A.  Plaintiff's Violation of the Sherman Act Count Expired.................................24

B.  Plaintiff's Violation of the Sherman Act Count Fails to State A Claim..........24

POINT VII. PLAINTIFF'S CLAIMS FOR CONVERSION, REPLEVIN,
    AND INJUNCTIVE RELIEF FAIL AS A MATTER OF
    LAW ...........................................................................................................25

POINT VIII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS
    AS A MATTER OF LAW .........................................................................26

POINT IX. PLAINTIFF'S EXECUTED OCTOBER 11, 2017 RELEASE
BARS ALL OF THE CLAIMS......................................................................27

CONCLUSION ............................................................................................................27

WORD COUNT CERTIFICATION ...........................................................................29

## TABLE OF AUTHORITIES

Page

*4 K & D Corp. v. Concierge Auctions, LLC*,
2 F. Supp. 3d 52 (S.D.N.Y. 2014)..................................................................................................9

*Acklin v. Eichner*,
2021 WL 4442819 (S.D.N.Y. Sept. 27, 2021)........................................................................10, 13

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987)........................................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................................6, 7

*Azrielli v. Cohen L. Offs.*,
21 F.3d 512 (2d Cir. 1994*)* ...........................................................................................................12

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*,
69 F.Supp.3d 342 (S.D.N.Y. 2014) ..............................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................6, 7

*Black v. Ganieva*,
619 F.Supp.3d 309 (S.D.N.Y. 2022)........................................................................................13, 16

*Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*,
632 F. Supp. 3d 471 (S.D.N.Y. 2022)...........................................................................................23

*Case v. Clivilles*,
216 F. Supp. 3d 367 (S.D.N.Y. 2016) ..........................................................................................18

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999)......................................................................................................15, 16

*Continental Petroleum Corp. v. Corp. Funding Partners, LLC*,
2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ..............................................................................10

*Crawford v. Franklin Credit Mgmt.*,
758 F.3d 473 (2d Cir. 2014).........................................................................................................14

*DeJesus v. Sears Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996) ...............................................................................................................7

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)...................................................................................................7

*Diamond v. Sokol*,
468 F. Supp. 2d 626 (S.D.N.Y. 2006)...................................................................................19

*Dingle v. City of New York*,
728 F. Supp. 2d 332 (S.D.N.Y. 2010).....................................................................................6

*Dore v. Wormley*,
690 F. Supp. 2d 176 (S.D.N.Y. 2010) ...................................................................................25

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
67 F.3d 463 (2d Cir. 1995) ...................................................................................................15

*Giraldo v. Kessler,*
694 F.3d 161 (2d Cir. 2012)....................................................................................................7

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)............................................................................ 12-13

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004).........................................................................................11, 15

*HOP Energy, L.L.C. v. Local 553 Pension Fund*,
678 F.3d 158 (2d Cir. 2012)..................................................................................................27

*Hecht v. Com. Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990)....................................................................................................16

*Hubbuch v. Cap. One, N.A.*,
2025 WL 1983218 (S.D.N.Y. June 11, 2025) .....................................................................10

*In re Google Digital Advert. Antitrust Litig.*,
721 F. Supp. 3d 230 (S.D.N.Y. 2024)...................................................................................24

*Int'l Bus. Machines Corp. v. Johnson*,
629 F. Supp. 2d 321 (S.D.N.Y. June 26, 2009) . ..................................................................25

*JP Morgan Chase Bank v. Winnick*,
406 F. Supp. 2d 247 (S.D.N.Y. 2005)...................................................................................22

*Johnson v. City of New York*,
2023 WL 5629232 (S.D.N.Y. Aug. 31, 2023)......................................................................27

v

*Jus Punjabi, LLC v. Get Punjabi US, Inc.*,
640 Fed. Appx. 58 (2d Cir. 2016)......................................................................................9, 15

*Kaiser v. USAA Life Ins. Co.*,
818 F. Supp. 3d 607 (S.D.N.Y. 2026)......................................................................................25

*Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*,
2023 WL 6124801 (S.D.N.Y. Sept. 19, 2023)........................................................................10, 16

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018)......................................................................................11

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012) ......................................................................................8, 9, 19

*Koppel v. 4987 Corp.*,
167 F.3d 125 (2d Cir. 1999)......................................................................................6

*Kottler v. Deutsche Bank AG*,
607 F. Supp. 2d 447 (S.D.N.Y. 2009)......................................................................................21, 22

*Lawson v. Rubin*,
2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ......................................................................................11

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273, 295 (2d Cir. 2006)......................................................................................22

*Lloyd v. City of New York*,
2017 WL 2266876 (S.D.N.Y. May 22, 2017) ......................................................................................27

*Martinez v. JPMorgan Chase Bank, N.A.*,
178 F. Supp. 3d 184 (S.D.N.Y. 2016)......................................................................................9

*Mason Tenders Dist. Council Pension Fund v. Messera*,
958 F. Supp. 869 (S.D.N.Y. 1997)......................................................................................18

*MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*,
701 F. Supp. 2d 518 (S.D.N.Y. 2010)......................................................................................17

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)......................................................................................14

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
723 F.3d 192 (2d Cir. 2013)......................................................................................13

vi

*O'Brien v. Di Grazia*,
544 F.2d 543 (1st Cir. 1976)..................................................................................7

*Paul Hobbs Imports Inc. v. Verity Wines LLC*,
2023 WL 374120 (S.D.N.Y. Jan. 24, 2023) ........................................................13, 16

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................22

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
460 F. Supp. 3d 481 (S.D.N.Y. 2020)..................................................................20

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
507 F.3d 117 (2d Cir. 2007)................................................................................ 6-7

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)............................................................................................10, 12

*Rivera v. Est. of Ruiz*,
2020 WL 1503663 (S.D.N.Y. Mar. 30, 2020) ....................................................19

*Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*,
160 F. Supp. 3d 542 (S.D.N.Y. 2016)..................................................................17

*Rosemeier v. Schenker Int'l, Inc.*,
895 F. Supp. 65 (S.D.N.Y. 1995).........................................................................23

*Schatzki v. Weiser Cap. Mgmt., LLC*,
995 F. Supp. 2d 251 (S.D.N.Y. 2014)..................................................................26

*Shalik v. Hewlett Assocs., L.P.*,
93 A.D.3d 777 (2d Dept. 2012) ...........................................................................19

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008).................................................................................15

*Stonewell Corp. v. Conestoga Title Ins. Co.*,
678 F. Supp. 2d 203 (S.D.N.Y. 2010)..................................................................17

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002).............................................................................................7

*Tops Markets, Inc. v. Quality Markets, Inc.*,
142 F.3d 90 (2d Cir. 1998)...................................................................................24

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021)..................................................................................20

*United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.--Charco Redondo Butane*,
755 F. Supp. 1195 (S.D.N.Y. 1989).....................................................................................18

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) ...............................................................................................13

*United States v. Sessa*,
125 F.3d 68 (2d Cir. 1997)...................................................................................................16

*W. Energy Opportunities II, LLC v. Finalis Sec., LLC*,
2025 WL 935201 (S.D.N.Y. Mar. 26, 2025) .......................................................................12

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018)...................................................................................................9

*Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*,
2015 WL 5671724 (S.D.N.Y. Sept. 22, 2015)......................................................................26

*Zito v. Leasecomm Corp.*,
2003 WL 22251352 (S.D.N.Y. Sep. 30, 2003)......................................................................14

*Zuhovitzky v. UBS AG CHE*,
2023 WL 4584452 (S.D.N.Y. July 18, 2023) ......................................................................13

## STATUTES

18 U.S.C. §1962........................................................................................................... *passim*

15 U.S.C. § 2...............................................................................................................2, 5, 24

15 U.S.C. § 15.......................................................................................................................24

CPLR §213............................................................................................................................19

CPLR §214............................................................................................................................17

This Memorandum of Law is respectfully submitted in support of Defendant's, Danaher Lagnese, P.C. (the "Firm" or "Danaher"), motion brought pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for dismissal of Plaintiff's, Ari Teman ("Teman" or "Plaintiff") Complaint with prejudice in its entirety.

## PRELIMINARY STATEMENT

This RICO action rests upon Plaintiff's unfounded allegations that doctors, lawyers, and insurers conspired to suppress the value of Plaintiff's prior medical related injury claims against Silver Hill Hospital ("Silver Hill"). On June 4, 2012, Plaintiff was admitted to Silver Hill, which is a nationally recognized mental health hospital dedicated exclusively to the treatment of psychiatric and substance use disorders in adults and adolescents. Following his admission in 2012, Silver Hill commenced a fee action in Connecticut[1] against Plaintiff to recover unpaid fees Plaintiff allegedly owed in connection with his admission at Silver Hill. In the Fee Action, Zeldes, Needle & Cooper, PC ("ZNC"), filed counterclaims on behalf of Plaintiff alleging that certain doctors at Silver Hill assaulted Plaintiff. Silver Hill retained Danaher in connection with the counterclaims and negotiated a settlement with ZNC, and thereafter Plaintiff and Silver Hill released the claims against each other. Now, Plaintiff claims in this action that Danaher is a member of a RICO enterprise and engaged in a pattern of racketeering activity merely because Danaher represented Silver Hill and negotiated a settlement agreement.

This isn't Plaintiff's first complaint against Danaher arising out of the Fee Action settlement.[2] This time, however, Plaintiff lodges a RICO claim, premised on an alleged scheme

---

[1] *Silver Hill Hospital, Inc. v. Teman* bearing Docket No. FST-CV- 14-6022274-S ("Fee Action").

[2] Plaintiff has repeatedly pursued meritless litigation arising from the same underlying events. By way of example, Plaintiff filed multiple Connecticut actions against Silver Hill and, later, Danaher asserting substantially similar allegations concerning his treatment and the alleged fabrication of evidence and has asserted counterclaims in unrelated New York litigation that again sought to relitigate these issues.

among insurers and law firms to reduce malpractice exposure and settlement costs by suppressing claims, coercing settlements, and controlling access to client information. Plaintiff also alleges various other inapplicable causes of action against Danaher including conversion, replevin, fraud, aiding and abetting breach of fiduciary duty, legal malpractice, tortious interference, unjust enrichment, injunctive relief, and violation of § 2 of the Sherman Act. Nevertheless, Plaintiff once again targets Danaher, a law firm whose sole involvement was serving as opposing counsel. As a result, all of the allegations against Danaher are meritless.

*First*, Plaintiff's RICO claims fail as a matter of law because they are time-barred. Plaintiff's RICO claims accrued on October 11, 2017 and expired on October 11, 2021. Plaintiff did not commence this action until April 27, 2026, over four years after the claim expired. In addition, the RICO claims fail to state a claim because Plaintiff does not allege Danaher is a member of an enterprise and does not identify any racketeering conduct against Danaher.

*Second*, Plaintiff's legal malpractice claim is time-barred. Plaintiff did not commence this action until more than five years after the claim expired. In addition, the claim fails to state a cause of action because no attorney-client relationship ever existed between Danaher and Plaintiff and Plaintiff fails to allege that any act by Danaher proximately caused his claimed loss.

*Third*, Plaintiff's fraud claim is untimely by nearly three years. Substantively, the claim cannot survive Rule 9(b) as every misrepresentation identified in the Complaint is attributed to other defendants, and Plaintiff does not plead any statement that Danaher ever made to him.

*Fourth*, the aiding and abetting claim is time-barred and fails to allege that Danaher knew of or substantially assisted any breach of duty.

- 2 -

*Fifth*, Plaintiff's tortious interference claim is pleaded more than five years past the limitations deadline. Additionally, the Complaint does not identify any contract with which Danaher interfered and no breach thereof.

*Sixth*, Plaintiff's Sherman Act claim is more than four years late, but it also fails to allege that Danaher was involved in any monopolization scheme. Plaintiff's theory rests on MedPro and Attorney Protective's alleged dual-insurer structure, and a law firm's participation in settlement negotiations has no connection to market power in any insurance market.

*Seventh*, the conversion, replevin, and injunctive relief claims all rest on the theory that the client file was wrongfully withheld. However, Danaher never had the file, and without possession, Plaintiff's conversion, replevin and request for injunctive relief all fail.

*Finally*, the unjust enrichment claim fails because Danaher was never enriched at Plaintiff's expense. Danaher merely negotiated a settlement on behalf of its own client, Silver Hill, which is standard litigation practice.

Ultimately, none of Plaintiff's claims are supported by any particularized factual allegations specific to Danaher and each independently fails to satisfy this Court's well-established pleading standards. Accordingly, as set forth more fully below, the Complaint should be dismissed in its entirety, with prejudice, as against Danaher.

## STATEMENT OF FACTS

### A. Silver Hill Commences a Fee Action Against Plaintiff

In or around June 2012, Plaintiff was referred to Silver Hill by Dr. Eric Braverman, a New York physician, who has allegedly treated Plaintiff for multiple physical and psychiatric conditions, including severe fatigue, sensations resembling electric shocks, borderline personality disorder, and suicidal ideation. Ex. C at 5.

Plaintiff's hospitalization left an unpaid balance of $7,480.00. Ex. B. Silver Hill retained Mark Sank, Esq. to pursue recovery of the balance in the Fee Action and on April 17, 2014, Silver Hill sued Plaintiff in Connecticut Superior Court. Ex. B.

### B. ZNC Files Counterclaims on Plaintiff's Behalf

Plaintiff, then represented by ZNC, filed a Fifth Amended Answer, Special Defenses, and Counterclaims dated March 6, 2017, in response to Silver Hill's claim for unpaid medical bills. Ex. C at 5. Plaintiff's answer asserted three special defenses: fraudulent inducement, unclean hands, and a claim that Plaintiff's father was the one who signed the financial responsibility authorization and not Plaintiff himself. Ex. C at 4-5.

Plaintiff's counterclaims concerned an allegation that Dr. Eric Braverman, Plaintiff's former doctor, fraudulently diagnosed him with borderline personality disorder and pressured his parents into sending him to Silver Hill for a therapy program he did not need. Ex. C, "Counterclaims" ¶¶3-6. Plaintiff further alleges that Silver Hill misrepresented the length and nature of the stay, kept him on inpatient lockdown for over a week rather than one night, and that staff assaulted him, including a specific allegation of being struck in the genitals while a staff member blocked sightlines and threatened him. Ex. C, "Counterclaims" ¶¶15, 27, 29-31.

### C. Silver Hill and Plaintiff Settle the Fee Action

Of the five counterclaims originally pled, only the assault and battery claim survived to the end; Plaintiff's original claims for negligence, false imprisonment, fraud, and negligent infliction of emotional distress were all voluntarily withdrawn. Ex. C. On April 25, 2017, Silver Hill, represented by Danaher, replied to those counterclaims denying all of those allegations. Ex. D. The parties ultimately reached a global settlement on October 11, 2017, where Plaintiff agreed to accept $40,000 in exchange for a general release. Ex. E.

### D. **Plaintiff Commences The ZNC Related Action**

On December 19, 2024, Plaintiff initiated the related case, *Teman v. Zeldes Needle Cooper LLP et al*, No. 1:24-cv-09830 (LJL) (S.D.N.Y. December 19, 2024) in this same Court. Ex. F. In that case, Plaintiff alleges ZNC committed legal malpractice and breached their fiduciary duty by allowing the case to be dismissed with prejudice for failure to prosecute. Ex. F at 6 ¶¶18-19, 25. Plaintiff claims his damages equal the lost value of the malpractice action, which ZNC had represented to him was worth approximately $24 million. Ex. F, ¶¶10, 29.

### **PROCEDURAL HISTORY**

On April 27, 2026, Plaintiff filed the instant Complaint, asserting eleven causes of action, including RICO claims under 18 U.S.C. §§ 1962(c) and (d), legal malpractice, tortious interference, conversion, replevin, fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, and a Sherman Act §2 monopolization claim against ZNC, its malpractice insurer MedPro Group, Attorney Protective, ZNC's defense counsel, Lewis Brisbois Bisgaard and Smith LLP, Silver Hill and its defense counsel, Danaher. Ex. A.

Plaintiff alleges that the named law firms and malpractice insurers engaged in a coordinated scheme to coerce him into an undervalued settlement, suppress his strongest claims, and unlawfully withhold his client file, all in order to minimize Defendants' financial obligations. Ex. A, ¶¶1-2. Specifically, Plaintiff alleges that in 2016, ZNC physically confined him and deprived him of sleep to coerce a $80,000 settlement with Silver Hill. Ex. A at 4-5, ¶¶15-19. Plaintiff alleges that Danaher was aware of the circumstances surrounding the settlement negotiations and participated in those negotiations on behalf of Silver Hill, which resulted in a settlement that stripped out sexual misconduct allegations and thereby avoided Silver Hill's mandatory reporting obligations. Ex. A, ¶¶22-24.

Plaintiff further alleges that various Defendants refused to produce his client file, driven by an incentive to suppress malpractice claims arising from MedPro and Attorney Protective's dual-sided insurance coverage of both healthcare providers and the law firms that defend them. Ex. A, ¶¶25-33, 37-45. Critically, not one of these allegations is directed towards Danaher.

## **LEGAL STANDARD**

FRCP 12(b) provides, in relevant part, that a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of a motion to dismiss. In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded allegations of the complaint and view those allegations in the light most favorable to plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 130 (2d Cir. 1999).

Ordinarily, a complaint must simply "contain a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). However, the allegations in an initiating pleading "must meet the standard of 'plausibility." *Dingle v. City of New York*, 728 F. Supp. 2d 332, 343 (S.D.N.Y. 2010). A plaintiff's complaint must contain factual allegations which are sufficient "to raise a right to relief above the speculative level" and not simply generic labels, broad conclusions, or formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, the court should not credit "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" (*id*. at 678), offers "'a formulaic recitation of the elements of a cause of action,'" (*id*.) (internal citations and quotations omitted), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Port*

*Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Although the Supreme Court has held that a complaint should not be dismissed unless there are no set of facts that the plaintiff could prove which would entitle him to relief (*see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)), the Court has clarified that this standard should not be taken literally to mean that the court has a duty to "conjure up unpleaded facts."  *Twombly*, 550 U.S. at 562 (*quoting O'Brien v. Di Grazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).  The Second Circuit's view is consistent: a party must set forth sufficient facts to allege each element of their claim. *See DeJesus v. Sears Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).  More specifically, a party must allege facts to demonstrate "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 556.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  This Court may also take judicial notice of relevant matters of public record when deciding a motion to dismiss. *See Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012).

Since Plaintiff has failed to satisfy this well-established standard, Danaher respectfully requests that this Court dismiss the Complaint with prejudice.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff's Claims Accrued In 2017 And Are Now Time-Barred

Civil RICO claims are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (adopting the Clayton Act's uniform four-year statute of limitations for all civil RICO claims); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (recognizing that RICO claims are subject to a four-year statute of limitations). Courts begin the statute of limitations analysis by identifying the injury for which the plaintiff seeks relief. *See Koch,* 699 F.3d at 150-51. The court then determines when the plaintiff discovered, or reasonably should have discovered, that injury, as the four-year limitations period begins to run at that point. *See id.*

Plaintiff's RICO claims are predicated on his former counsel's alleged withholding of his client file and alleged efforts to suppress his insurance coverage limits during the representation. As part of his RICO claims, Plaintiff alleges that he lost the value of his legal claims, was deprived of his client file, and incurred costs in attempting to recover the client file and the rights associated with it. Ex. A, ¶67. To the extent Plaintiff asserts any RICO claims against Danaher, the only conduct attributed to Danaher culminated on October 11, 2017, when Plaintiff alleges he was coerced into accepting a $80,000 settlement. Ex. A, ¶¶14-21. Given that Plaintiff was personally present for the conduct he now challenges, Plaintiff knew of his alleged injury when it occurred, and any RICO claim accrued at that time in 2017. Applying RICO's four-year statute of limitations, Plaintiff's claims expired in 2021, and the limitations period has now expired.

Although Plaintiff alleges that he "did not discover the full extent of Defendants' conduct until 2024-2026" and that Defendants concealed the alleged scheme through misrepresentations regarding insurance coverage, the withholding of the client file, and misleading statements by counsel, accrual begins at the time of injury, which was in 2017. Ex. A, ¶¶34-36. By ratifying the settlement, Plaintiff was on inquiry notice of the alleged injury and reasonably should have discovered it at that point. *See Koch,* 699 F.3d at 151-53 (discussing inquiry notice and when RICO claims accrue).

**B. <u>Plaintiff Fails To State A Cognizable RICO Claim Against Danaher Because The Firm Was Not Part Of An Enterprise And Was Not Involved In Any Pattern Of Racketeering</u>**

Every RICO plaintiff must state sufficient facts that allege: "1) a violation of the RICO statute, 18 U.S.C. Section 1962; 2) an injury to business or property; and 3) that the injury was caused by the defendant's RICO violation." *Martinez v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184, 188-89 (S.D.N.Y. 2016). In order to state a claim under § 1962(c), a plaintiff must sufficiently allege: "(1) conduct (2) of an enterprise" and (3) "at least two predicate acts, [that] amount to, or pose a threat of, continuing criminal activity." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 535 (S.D.N.Y. 2014); *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018); *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 Fed. Appx. 58, 58 (2d Cir. 2016).

Here, Plaintiff premises the RICO claim by alleging that his former lawyers and their insurers schemed to suppress claims, coerce settlements, and control access to his client file. Specifically, Plaintiff claims that the amount of his 2017 settlement was suppressed as a result of the alleged enterprise's conduct. Notably, however, Danaher is excluded from the Complaint's own definition of the alleged enterprise. Ex. A, ¶47. Additionally, Plaintiff does not allege that Danaher committed a single predicate act and does not suggest that Danaher poses a threat of continuing criminal activity. Because RICO claims are such an "unusually potent weapon" and

plaintiffs "have been overzealous in pursuing" them, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Hubbuch v. Cap. One, N.A.*, 2025 WL 1983218, at *7 (S.D.N.Y. June 11, 2025), report and recommendation adopted, No. 25-CV-406 (VSB) (RWL), 2025 WL 1934472 (S.D.N.Y. July 15, 2025). Here, Plaintiff fails to adequately plead a RICO violation against Danaher arising out of the Firm's representation of Silver Hill.

### i.    *The Complaint Does Not Identify Danaher as Part of the Alleged Enterprise*

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp.3d 342, 359 (S.D.N.Y. 2014) (citation omitted). "[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2023 WL 6124801, at *10 (S.D.N.Y. Sept. 19, 2023). "In determining whether Plaintiff has alleged the existence of an association-in-fact RICO enterprise, courts analyze the hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit." *BWP Media*, 69 F.Supp.3d at 360.

A RICO defendant must have participated "in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Continental Petroleum Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (such "sparse" allegations "fall far short of alleging that defendants collectively functioned an association-in-fact sufficient to constitute a RICO enterprise"). To withstand dismissal, Plaintiff is required to "explain each participant's role in the alleged fraudulent or illegal conduct." *Acklin v. Eichner*, 2021 WL 4442819, at *4 (S.D.N.Y. Sept. 27, 2021).

- 10 -

Specifically, "the RICO defendant must have played '*some* part in directing [the enterprise's] affairs.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 176 (2d Cir. 2004). Courts have applied this principle to attorneys and other professionals, recognizing that providing legal or other professional services to an enterprise does not constitute participation in the operation or management of that enterprise. *See id.* (holding attorneys may not be liable under RICO where the only role in the alleged enterprise was providing legal work); *see also Lawson v. Rubin*, 2018 WL 2012869, at *11 (E.D.N.Y. Apr. 29, 2018) (declining to hold an attorney liable under RICO where the attorney did not exert operational or management control over the alleged enterprise). As the Second Circuit expressed, allowing litigation activities to serve as predicate acts under RICO could "spawn a retaliatory action" for every unsuccessful lawsuit, "inundat[ing] federal courts with procedurally complex RICO pleadings," and "erode" the preclusion doctrines by allowing courts to reconsider "the validity of documents presented in the underlying litigation as well as the judicial decisions that relied on them." *Kim v. Kimm*, 884 F.3d 98, 103-104 (2d Cir. 2018).

Here, Plaintiff fails to particularize the hierarchy, organization, and activities of Danaher's supposed role within the alleged association. Despite naming Danaher as a defendant and including the Firm within undifferentiated references to "Defendants," the Complaint does not identify Danaher as a member of the alleged enterprise. Plaintiff's own Complaint defines the alleged RICO enterprise as consisting of "[ZNC] and its attorneys; Lewis Brisbois and its attorneys; Attorney Protective and MedPro; and affiliated individuals including Scott Patrick." Ex. A ¶47. Danaher is conspicuously absent from that definition.

Even if Danaher were included in Plaintiff's list of defendants in the enterprise, Plaintiff does not allege Danaher shares a common purpose to engage in a particular fraudulent course of

- 11 -

conduct with these defendants. In other words, Plaintiff does not explain how any action by Danaher caused the allegedly suppressed settlement amount. Indeed, the only allegations against Danaher are: (1) that the firm served as counsel for Silver Hill in the Fee Action and was "aware of the circumstances surrounding the settlement negotiations" (Ex. A, ¶18); (2) "participated in settlement negotiations on behalf of Silver Hill" (Ex. A, ¶22); and (3) that Danaher was "aware that Plaintiff intended to proceed to trial." (Ex. A, ¶23). Even if these allegations were true, which they are not, there is no basis to support the conclusory allegation that Danaher was part of an alleged enterprise.

Moreover, Danaher is not alleged to have directed or managed anyone within that enterprise. Merely negotiating a settlement on behalf of an opposing party does not suffice for this claim to stand. Indeed, the Complaint merely alleges that Danaher carried out professional services, which is insufficient to demonstrate management within an enterprise. *Reves*, 507 U.S. at 179 (concluding that accountants providing routine services to the enterprise are not liable under RICO); *see Azrielli v. Cohen L. Offs*., 21 F.3d 512, 521 (2d Cir. 1994) (dismissing RICO claim against defendant-attorney because defendant "had merely acted as an attorney for the other individual defendants"). Likewise, it is undisputed that Danaher was opposing counsel to Plaintiff and accordingly, the Firm had no attorney-client relationship with any member of the alleged enterprise.

### ii. *The Complaint Does Not Allege That Danaher Was Involved in Any Pattern of Racketeering*

To establish a pattern of racketeering, Plaintiff must "plausibly allege that each defendant—not merely the enterprise as a whole—engaged in at least two predicate acts." *W. Energy Opportunities II, LLC v. Finalis Sec., LLC*, 2025 WL 935201, at *7–8 (S.D.N.Y. Mar. 26, 2025); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (holding that since

- 12 -

"the pleadings do not indicate individually which of the three defendants actually engaged in the particular predicate acts…[s]uch 'group pleading' does not comply with the requirements of RICO or the particularity standards of Rule 9(b)."); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (noting that focus of § 1962(c) "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise").

Here, the alleged predicate acts identified in the Complaint involve wire fraud.[3] Ex A, ¶¶51-56. However, not one of those predicate acts is attributed to Danaher. The specific wire communications identified in the Complaint include an April 23, 2026 email from Cristina Yannucci regarding file production conditions, and May 2022 and May 2024 communications attributed to ZNC attorneys. Ex. A, ¶54. Danaher is not alleged to have engaged in any wire communication constituting or furthering a fraudulent scheme.

Plaintiff also fails to allege the supposed wire fraud with the required particularity. Since Plaintiff is alleging civil RICO claims based in part upon wire fraud (Ex A. ¶¶51-56), the Complaint must satisfy the heightened pleading standard under FRCP Rule 9(b) and "must be particularly scrutinized." *Zuhovitzky v. UBS AG CHE*, 2023 WL 4584452, *8 (S.D.N.Y. July 18, 2023); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 197-198 (2d Cir. 2013); *Black v. Ganieva*, 619 F. Supp. 3d 309, 342 (S.D.N.Y. 2022) (recognizing that a RICO claim predicated on wire fraud requires particularized allegations identifying the specific words, statements, or information alleged to be fraudulent); *Acklin v. Eichner*, 2024 WL 4826799, at *18 (S.D.N.Y. Nov. 18, 2024) ("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain

---

[3] Although Plaintiff describes the predicate acts relied on, several of these allegations are pleaded "upon information and belief" only (*see*, e.g., Ex A. ¶54), which does not satisfy FRCP 9(b)'s heightened pleading standards. *See e.g.*, *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-cv-10597, 2023 WL 374120, at *7 (S.D.N.Y. 2023).

- 13 -

why they were fraudulent.") (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).

"It is not enough to allege that predicate acts were committed by somebody, in furtherance of an enterprise in which the defendants were involved. Rather, to state a violation of §1962(c) by any defendant, Plaintiff must allege that that defendant personally committed two or more predicate acts." *See Zito v. Leasecomm Corp.*, 2003 WL 22251352, at *13 (S.D.N.Y. Sep. 30, 2003). This scrutinization is warranted "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 489 (2d Cir. 2014).

The Complaint separately fails to plead any predicate act of mail or wire fraud against Danaher with the particularity Rule 9(b) requires: it does not identify any mail or wire communication sent or received by any Danaher attorney, nor state the contents of any such communication; it does not say who was involved, or when or where any communication took place; and it does not offer any explanation of how any communication attributable to Danaher was fraudulent.

Danaher merely represented Silver Hill in settlement negotiations and is alleged to be "aware of" the circumstances of the settlement. Ex. A, ¶23. However, this does not constitute a predicate act since representation of an adverse party in settlement negotiations is standard litigation practice. Moreover, Danaher is not, and never has been, in possession of Plaintiff's client file. Accordingly, to the extent Plaintiff's RICO claims are premised on the alleged withholding of the client file, those claims fail.

### iii.    *Plaintiff Has Failed to Allege Closed or Open Ended Continuity.*

"[A] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (internal quotation marks omitted); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Closed-ended continuity requires "a series of related predicate acts extending over a substantial period of time" at least two years in the Second Circuit. *See Spool*, 520 F.3d at 184; *see also First Cap. Asset Mgmt., Inc.*, 385 F.3d at 181. Open-ended continuity requires there to be "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999).

Here, Plaintiff fails to specifically allege that Danaher engaged in any illicit predicate act. Thus, the allegations plainly fail to meet threshold closed-ended continuity. *See Spool,* 520 F.3d at 184-85. It is indisputable that Danaher's negotiations of a settlement agreement on behalf of Silver Hill with ZNC do not give rise to closed-ended continuity. Likewise, Plaintiff does not allege that Danaher poses any ongoing or future threat of criminal activity to give rise to open-ended continuity.

### C. Plaintiff's Conspiracy Claim Fails Because the Complaint Does Not Allege a Substantive Violation or Any Agreement Involving Danaher

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of" Sections 1962(a), (b), or (c). 18 U.S.C. § 1962(d). In order to "establish a RICO conspiracy, a plaintiff must show a conspiracy to commit a substantive RICO violation." *Jus Punjabi, LLC.*, 640 F. Appx. at 58.

"To establish the existence of a RICO conspiracy under 18 U.S.C. § 1962(d), "a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit,* 187 F.3d at 244; *see also United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997). In other words, "a complaint must allege that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *Black,* 619 F.Supp.3d at 329. "[T]he existence of a RICO enterprise is not a required element of a RICO conspiracy claim." *Id.* at 330. But "where a RICO conspiracy claim does not adequately plead an agreement to conduct which, if completed, would satisfy the elements of the substantive RICO statute, the conspiracy claim under §1962(d) also fails." *Id.*

"Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). "[C]ourts ordinarily dismiss complaints that contain only conclusory, boilerplate allegations as to the existence of the relevant agreement." *Paul Hobbs Imports Inc.*, 2023 WL 374120, at *13.

Here, Count II is subject to dismissal because Plaintiff has failed to state a substantive violation under §1962(c). "[C]ourts ordinarily dismiss any accompanying counts alleging a RICO conspiracy in violation of subsection 1962(d) once they have dismissed substantive counts in the same complaint alleging a violation of subsections 1962(a), (b), or (c)." *Khan Funds*, 2023 WL 6124801 at *13, *quoting Paul Hobbs*, 2023 WL 374120, at *13.

In addition, the Complaint is devoid of specific facts that would support the inference of Danaher's participation in any illicit agreement. Plaintiff fails to allege that Danaher engaged in any predicate act or other conduct in an effort to suppress Plaintiff's settlement amount. As such, Count II is ripe for dismissal with prejudice.

- 16 -

## POINT II

## PLAINTIFF'S LEGAL MALPRACTICE COUNT FAILS AS A MATTER OF LAW

### A.  Plaintiff's Legal Malpractice Claim is Time-Barred

Under CPLR §214(6), legal malpractice claims must be commenced within three years of the accrual of damages by the plaintiff. *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d 518, 524 (S.D.N.Y. 2010). A legal malpractice claim accrues at the time the alleged malpractice occurs, not from when the malpractice is discovered. *See id.* at 525. There are no exceptions to measuring the accrual date from the date of an attorney's alleged malpractice. *Rohe v. Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn, LLP*, 160 F. Supp. 3d 542, 548-49 (S.D.N.Y. 2016).

First, no attorney-client relationship ever existed between Danaher and Plaintiff. But, even assuming such a relationship existed, any legal malpractice claim accrued, at the latest, upon execution of the settlement or the filing of the Notice of Withdrawal on October 11, 2017. Plaintiff was therefore required to commence this action by October 11, 2020. Plaintiff did not file suit until April 27, 2026, more than five years after the limitations period expired. Accordingly, the legal malpractice claim is time-barred.

### B.  Plaintiff's Legal Malpractice Count Fails to State A Claim Against Danaher

In New York, to state a valid claim for legal malpractice, a plaintiff must set forth facts tending to show all of the following elements: "(1) an attorney-client relationship, (2) attorney negligence (3) that is the proximate cause of a loss, and (4) actual damages." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 208–09 (S.D.N.Y. 2010).

### i.    *Plaintiff Fails to Allege An Attorney-Client Relationship*

The basis for any legal malpractice claim is the attorney-client relationship. *Case v. Clivilles*, 216 F. Supp. 3d 367, 379 (S.D.N.Y. 2016) (failure to establish an attorney-client relationship prevents a plaintiff from proceeding on a legal malpractice claim). An attorney-client relationship is formed where there is a mutual understanding that the attorney will render legal services on the client's behalf. *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 891 (S.D.N.Y. 1997). It is fundamental that an "explicit undertaking to perform a specific task is required to establish an attorney-client relationship." *Id.* New York adheres to a strict privity rule, meaning plaintiffs must establish that they were in contractual privity with the defendant-attorney to succeed on a legal malpractice claim. *Id.* Absent fraud, collusion, or malicious acts, an attorney is not liable to third parties not in privity or near-privity for harm caused by professional negligence. *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.--Charco Redondo Butane*, 755 F. Supp. 1195, 1200-1201 (S.D.N.Y. 1989).

Plaintiff does not and cannot allege that Plaintiff was in legal privity with Danaher nor that an attorney-client relationship existed between the two parties. Danaher never represented Plaintiff; the Firm only represented Silver Hill in the Fee Action counterclaims and other related actions involving Plaintiff. *Id.* at 1200 ("it is well settled in New York that an attorney is not liable in simple negligence to a third party absent privity of contract."). This alone warrants dismissal. Plaintiff has not alleged that he ever consulted, hired, or retained Danaher, and therefore it is unclear what professional duty Danaher owed to Plaintiff. Likewise, Plaintiff does not and cannot allege that Plaintiff had a reasonable, good faith basis to believe that Plaintiff maintained an attorney-client relationship with Danaher, sufficient enough to invoke privity.

### ii.    Plaintiff Fails to Allege Proximate Cause

Plaintiff also fails to properly allege proximate cause as the Complaint does not contain any factual allegations connecting any specific harm to any specific act undertaken by Danaher. To establish proximate cause for legal malpractice, the plaintiff must allege a "case within a case," demonstrating that "but for" the attorney's conduct, the plaintiff would have prevailed or received a better result in the underlying matter. *Diamond v. Sokol*, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006). In other words, a plaintiff is required to establish that the alleged conduct caused the actual injury. *See Rivera v. Est. of Ruiz,* 2020 WL 1503663, at *4 (S.D.N.Y. Mar. 30, 2020). "Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding legal malpractice." *Diamond v. Sokol*, 468 F. Supp. 2d at 633-34.

All three of Plaintiff's alleged "themes" (Ex. A ¶97) are unrelated to Danaher. Even if they were related to Danaher, Plaintiff fails to allege that, but for any action by Danaher, Plaintiff would have obtained a more favorable settlement than the one he voluntarily executed himself.

### POINT III

### PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW

### A.  Plaintiff's Fraud Claim is Time-Barred

Under New York law, a fraud action must be commenced within either "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." *Koch*, 699 F.3d at 154; CPLR § 213(8). New York law provides "that a plaintiff may be put on inquiry notice, which can trigger the running of the statute of limitations if the plaintiff does not pursue a reasonable investigation." *Koch*, 699 F.3d at 155; *Shalik v. Hewlett Assocs., L.P.*, 93 A.D.3d 777, 778 (2d

Dept. 2012) ("the two-year period begins to run when the circumstances reasonably would suggest to the plaintiff that he or she may have been defrauded.").

First, every misrepresentation pleaded in the Complaint is attributed to other defendants because the claim relates to the withholding of Plaintiff's client file. Any fraud claim against Danaher can therefore only be based on the Firm's participation in the 2017 settlement, meaning the claim accrued no later than October 11, 2017. Accordingly, the six-year period expired on October 11, 2023, almost three years before this Complaint was filed on April 27, 2026. Plaintiff personally participated in the 2017 settlement which placed him on inquiry notice at that point. Plaintiff's allegation that he did not discover the "full extent" of Defendants' conduct until 2024-2026 does not delay accrual. Ex. A. ¶34.

**B. Plaintiff's Fraud Claim Fails Because Plaintiff Does Not Allege Any Material Misrepresentation by Danaher**

To state a claim for fraud, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 500 (S.D.N.Y. 2020). In addition, allegations of fraud must satisfy the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such particularity may be achieved by identifying the allegedly fraudulent statements or omissions, specifying who made them, stating when and where they were made, and explaining why they were false or misleading. *See Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021).

Here, Plaintiff has entirely failed to plead that Danaher made a representation of any kind to Plaintiff. *See* Ex. A ¶¶82-87. The specific fraudulent statements identified in the Complaint

- 20 -

include communications with Attorney Yannucci and Attorney Cohen. Ex. A ¶85. The Complaint fails to identify any specific communications made by Danaher. Accordingly, it is respectfully requested that this Court dismiss Count V against Danaher.

**POINT IV**

**PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS AS A MATTER OF LAW**

**A.  Plaintiff's Aiding and Abetting Claim Expired**

The time for Plaintiff to assert claims for aiding and abetting a breach of fiduciary duty and/or fraud expired, at the latest, in 2022.  A claim for aiding and abetting is subject to a statute of limitations period of six (6) years from the date the cause of action accrued or two (2) years from the date the plaintiff discovered, or could, with reasonable diligence, have discovered the alleged fraudulent scheme. *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).

Here, both periods expired years before Plaintiff filed suit. The only conduct alleged against Danaher is its participation, as opposing counsel, in the 2017 settlement. Plaintiff personally participated in the 2017 settlement and alleges that he experienced the circumstances surrounding it firsthand. Plaintiff was therefore on notice of the facts underlying any aiding and abetting claim at the moment the settlement was executed. Using the two-year discovery rule, any aiding and abetting claim against Danaher therefore accrued no later than October 11, 2019, and the six-year period expired on October 11, 2023. Plaintiff did not commence this action until April 27, 2026, nearly three years after the six-year period expired, and nearly ten years after the claim accrued. Accordingly, this claim is time-barred regardless of the rule applied.

- 21 -

**B.  Plaintiff's Aiding and Abetting Claim Fails to State A Claim**

Under New York law, "the elements for a claim of aiding and abetting a breach of fiduciary duty are a breach by a fiduciary of obligations to another, that the defendant knowingly induced or participated in the breach, and damages." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006). "[A] person knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator." *Kottler*, 607 F. Supp. 2d at 466. Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur. *Id.* at 464. The "mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006).

Here, Plaintiff's claim for aiding and abetting a breach of fiduciary duty fails as a matter of law because the Complaint does not contain any allegations that Danaher had actual knowledge of any alleged breach by ZNC or that Danaher knowingly participated in or substantially assisted such a breach. Ex A ¶¶89-90. The Complaint alleges "Insurer Defendants and Lewis Brisbois knowingly induced and substantially assisted breaches of those duties." Ex A ¶90. Accordingly, the claim is ripe for dismissal as Danaher had no knowledge of any breach, and the Complaint is devoid of any allegations detailing how Danaher assisted any breach. *See JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005) (finding that a defendant must have been "directly involved" in the action leading to the fraud).

- 22 -

## POINT V

## PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW

### A. Plaintiff's Tortious Interference Claim Expired

Under New York law, a claim for tortious interference with contract is governed by a three-year statute of limitations and accrues upon the occurrence of the injury, rather than on the date of the defendant's alleged wrongful conduct or the date the plaintiff discovers the injury. *See Rosemeier v. Schenker Int'l, Inc.*, 895 F. Supp. 65, 66 (S.D.N.Y. 1995).

Here, to the extent a tortious interference claim is asserted against Danaher, it accrued, at the latest, upon execution of the settlement or the filing of the Notice of Withdrawal on October 11, 2017. Plaintiff was therefore required to commence this action by October 11, 2020, but did not until April 27, 2026. As this action was initiated more than five years after the limitations period expired, any tortious interference claim against Danaher is time-barred.

### B. Plaintiff's Tortious Interference Claim Fails To State A Claim Because Danaher Did Not Interfere With Any Contract

To state a claim for tortious interference with a contract, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 485 (S.D.N.Y. 2022).

Here, Plaintiff's Complaint does not identify any specific contract between Plaintiff and a third party that Danaher allegedly interfered with, nor does it allege that Danaher intentionally procured a breach of any such contract. Danaher did not interfere with "Plaintiff's ability to pursue

- 23 -

claims and obtain testimony" (Ex A. ¶102) nor does Plaintiff allege so. Therefore, it is respectfully requested that this Court dismiss this Count against Danaher.

## POINT VI

## PLAINTIFF'S VIOLATION OF THE SHERMAN ACT CLAIM FAILS AS A MATTER OF LAW

### A. Plaintiff's Violation of the Sherman Act Count Expired

Plaintiff's Sherman Act claim is governed by the four-year statute of limitations set forth in 15 U.S.C. § 15b, which begins to accrue "when a defendant commits an act that injures a plaintiff's business." *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 270-71 (S.D.N.Y. 2024).

Here, the alleged "act" that Danaher committed accrued, at the latest, upon execution of the settlement or the filing of the Notice of Withdrawal on October 11, 2017. Plaintiff was therefore required to initiate a Sherman Act violation by October 11, 2021, but did not until April 27, 2026. Accordingly, any Sherman Act violation alleged against Danaher is time-barred.

### B. Plaintiff's Violation of the Sherman Act Count Fails to State A Claim

Plaintiff's Sherman Act claim against Danaher is without merit. 15 U.S.C. §2 "makes it an offense for any person to 'monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States.'" 15 U.S.C. §2. "Thus, §2 forbids both monopolization and attempted monopolization." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 97 (2d Cir. 1998). For a plaintiff to establish a §2 violation, "a plaintiff must produce evidence sufficient to prove the defendant: (1) possessed monopoly power in the relevant market; and (2) willfully acquired or maintained that power." *Id.*

- 24 -

Danaher's involvement in a single settlement negotiation in the Fee Action has no plausible connection to monopolization of the professional liability insurance market as alleged in the Complaint. Plaintiff's antitrust theory is entirely centered on MedPro Group and Attorney Protective's alleged dual-insurer structure and their alleged control over the medical malpractice insurance market. Ex. A ¶¶108-113. If Danaher's routine litigation conduct were sufficient to establish a Sherman Act conspiracy, then virtually every act undertaken by counsel in the course of litigation could be characterized as a violation. Accordingly, this cause of action must be dismissed.

## POINT VII

## PLAINTIFF'S CLAIMS FOR CONVERSION, REPLEVIN, AND INJUNCTIVE RELIEF FAIL AS A MATTER OF LAW

To maintain causes of action for conversion, replevin, and injunctive relief, Plaintiff must allege a possessory right or interest in the property or chattel at issue and that Danaher is in possession or control of that property. *See Kaiser v. USAA Life Ins. Co.*, 818 F. Supp. 3d 607, 619 (S.D.N.Y. 2026) (recognizing that conversion requires a possessory interest in the property and unauthorized dominion over it by the defendant); *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) ("A cause of action in replevin 'must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right.'").

With respect to Plaintiff's request for injunctive relief, a party seeking a preliminary injunction must establish: "(1) the likelihood of irreparable injury in the absence of an order or injunction; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships 'tipping decidedly' in the movant's favor." *Int'l Bus. Machines Corp. v. Johnson*, 629 F. Supp. 2d 321, 328 (S.D.N.Y. June 26, 2009).

- 25 -

Danaher represented Silver Hill, the opposing party, and never possessed Plaintiff's client file. Likewise, the Complaint does not allege that Danaher ever exercised possession, custody, or control over the file. Rather, the file was and, presumably, remains in ZNC's possession. Plaintiff's claims for conversion and replevin fail for this reason alone.

Plaintiff will also be unable to establish entitlement to injunctive relief. The Complaint does not contain any allegations demonstrating irreparable harm, and Plaintiff cannot show a likelihood of success on the merits given that Danaher never possessed or controlled the file at issue. Accordingly, Plaintiff has failed to state a claim for injunctive relief.

For all of the foregoing reasons, to the extent Counts III, IV, and X are asserted against Danaher, they should be dismissed in their entirety.

## POINT VIII

## PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

In order to succeed on an unjust enrichment claim, Plaintiff "must prove, by a preponderance of the evidence, that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Schatzki v. Weiser Cap. Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014). Additionally, a "plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant, and then show that as between the two parties, enrichment of the defendant was unjust." *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, 2015 WL 5671724, at *19 (S.D.N.Y. Sept. 22, 2015).

Contrary to Plaintiff's allegations, Danaher did not receive any benefit at Plaintiff's expense. To the extent Plaintiff contends that Danaher was unjustly enriched by securing a favorable settlement on behalf of Silver Hill, such allegations merely describe ordinary litigation

- 26 -

undertaken in the course of representing a client and do not give rise to a claim for unjust enrichment. Accordingly, Count IX must be dismissed.

## POINT IX

## PLAINTIFF'S EXECUTED OCTOBER 11, 2017 RELEASE BARS ALL OF THE CLAIMS

SDNY courts "interpret a settlement release under traditional contract principles and must dismiss claims that are precluded by the plain language of the release." *Johnson v. City of New York*, 2023 WL 5629232, at *4 (S.D.N.Y. Aug. 31, 2023); *Lloyd v. City of New York*, 2017 WL 2266876, at *4 (S.D.N.Y. May 22, 2017) ("[T]he language of the parties' General Release unambiguously bars [plaintiff] from bringing the claims asserted in this case."); *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("With unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant.").

Plaintiff's claims are barred by the release he executed on October 11, 2017. Ex. E. That agreement released Danaher from any and all claims, known or unknown, arising from the Fee Action and any other actions growing out of the counterclaims' allegations. *Id.* Each of Plaintiff's claims against Danaher arises from the negotiations and underlying action he released. Accordingly, all eleven of Plaintiff's claims are barred.

## CONCLUSION

For the foregoing reasons, Defendant, Danaher Lagnese, P.C., respectfully requests that this Court grant the within motion in its entirety and dismiss all 11 Counts from the Complaint, with prejudice, pursuant to FRCP 12(b)(6), along with such further relief as this Court may deem just and proper.

Dated: July 17, 2026
New York, New York

Respectfully Submitted,
**FURMAN KORNFELD & BRENNAN LLP**

By: _____

Spencer A. Richards, Esq. (SAR7177)
*Attorneys for Defendant*
Danaher Lagnese, P.C.
88 Pine Street, 32nd Floor
New York, NY 10005
T:    (212) 867-4100
F:    (212) 867-4118
Email: srichards@fkblaw.com

- 28 -

## <u>WORD COUNT CERTIFICATION</u>

In compliance with Local Civil Rule 7.1(c) of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and this Court's July 9, 2026 Order, the undersigned hereby certifies that the word count in this memorandum of law (excluding the caption, table of contents, table of authorities, signature block, and any accompanying certificates, but including material contained in footnotes and endnotes), as established using the word-count function of the word-processing system used to prepare it, is **8,132** words and that said memorandum of law is **28** pages.

Dated: July 17, 2026
New York, New York

Respectfully Submitted,
**FURMAN KORNFELD & BRENNAN LLP**

Spencer A. Richards, Esq. (SAR7177)