UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ARI BARUCH TEMAN,

                     Plaintiff,

        - against -

MEDPRO GROUP INC., ATTORNEY PROTECTIVE,
SCOTT PATRICK, LEWIS BRISBOIS BISGAARD &
SMITH LLP, CRISTINA YANNUCCI, SAM COHEN,
ZELDES NEEDLE COOPER LLP, ROBERT S.
COOPER, MAXIMINO MEDINA, JEREMY VIRGIL,
DANAHER LAGNESE, P.C., and SILVER HILL
HOSPITAL, INC.,

                    Defendants.

-------------------------------------------------------------------X

Civil Case No.: 1:26-cv-03517

Hon. Lewis J. Liman, D.J.

## MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LBBS AND ZNC DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Cristina Yannucci, Esq.
Sam A. Cohen, Esq.
*Attorneys for Defendants*
*LEWIS BRISBOIS BISGAARD & SMITH LLP,*
*CRISTINA YANNUCCI, SAM COHEN,*
*ZELDES, NEEDLE & COOPER, P.C.*
*i/s/h/a ZELDES NEEDLER COOPER LLP, ROBERT S.*
*COOPER, MAXIMINO MEDINA, and JEREMY VIRGIL*
140 Broadway, Suite 3100
New York, New York 10005
Phone: (212) 232-1412
Email: cristina.yannucci@lewisbrisbois.com
Phone: (646) 989-9430
Email: sam.cohen@lewisbrisbois.com

i

**TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT**………………………………………………………………...1

**STATEMENT OF PROCEDURAL HISTORY AND FACTS**………………………………...2

    **A. Related Action**………………………………………………………………………2

    **B. The Instant Lawsuit**………………………………………………………………...5

**ARGUMENT**………………………………………………………………………………..6

**POINT I: DISMISSAL PURSUANT TO FRCP 12(b)(6) AND 9(b)**………………………..6

    **A. Standard of Review**…………………………………………………………………6

    **B. First Cause of Action: RICO (18 U.S.C. § 1962(c))**……………………………….7

        **i. Plaintiff Fails to Sufficiently Plead an Association-in-Fact Enterprise**…………..8

        **ii. Plaintiff Fails to Sufficiently Plead a Pattern of Racketeering Activity**…………..10

        **iii. Plaintiff Fails to Sufficiently Allege Related and Continuous Racketeering Activity**……………………………………………………………….14

        **iv. Plaintiff Fails to Sufficiently Allege a RICO Injury**…………………………….15

        **v. Plaintiff's Claims Relative to the Silver Hill Action are Time Barred**……………16

    **C. Second Cause of Action: RICO Conspiracy (18 U.S.C. § 1962(d))**…………………16

    **D. Third Cause of Action: Conversion**………………………………………………17

    **E. Fourth Cause of Action: Replevin**………………………………………………..19

    **F. Fifth Cause of Action: Fraud**……………………………………………………..19

    **G. Sixth Cause of Action: Aiding and Abetting Breach of Fiduciary Duty**……………21

    **H. Seventh Cause of Action: Legal Malpractice**……………………………………23

    **I. Eighth Cause of Action: Tortious Interference**……………………………………28

    **J. Ninth Cause of Action: Unjust Enrichment**………………………………………28

**K. Tenth Cause of Action: Injunctive Relief**

**L. Eleventh Cause of Action: Sherman Act (15 U.S.C. § 2)**

**POINT II: IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED BASED UPON THE FUGITIVE DISENTITLEMENT DOCTRINE**……………………..32

**CONCLUSION**…………………………………………………………………………34

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Adamson v. Bachner*,
　　No. 01 CIV. 10213 (JSM), 2002 WL 31453096 (S.D.N.Y. Oct. 31, 2002)…………….....23

*Albert v. Loksen*,
　　239 F.3d 256 (2d Cir. 2001)………………………………………………………………...28

*Allen v. Chanel, Inc.,* No. 12–6758(RPP),
　　2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013)…………………………………………..7

*Allen v. J.P. Morgan Chase & Co.*,
　　No. 06-CV-8712, 2009 WL 857555 (S.D.N.Y. Mar. 31, 2009)…………………………29

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009)………………………………………………………………………….6

*Azrielli v. Cohen Law Offs.,*
　　21 F.3d 512, 520 (2d Cir. 1994)…………………………………………………………….13

*Azima v. Dechert LLP*,
　　No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024)…………15

*Bell Atl. Corp. v. Twombly,*
　　550 U.S. 544 (2007)………………………………………………………………………….6
.
*Bingham v. Zolt,*
　　66 F.3d 553 (2d Cir.1995)…………………………………………………………………..16

*Black v. Ganieva*,
　　2022 U.S. Dist. LEXIS 116255 *47 (S.D.N.Y 2022)…………………………………………13

*Boneta v. Rolex Watch USA, Inc.*,
　　232 F. Supp. 3d 354 (S.D.N.Y. 2017)……………………………………………………10

*Bordes v. Deveaux*,
　　No. 23 CIV. 7430 (JPC) (JW), 2025 WL 831697 (S.D.N.Y. Mar. 14, 2025)…………….30

*Briarpatch Ltd. L.P. v. Thomas*,
　　265 F. Supp. 2d 219 (S.D.N.Y. 2003)……………………………………………………..26

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
　　69 F. Supp. 3d 342 (S.D.N.Y. 2014)………………………………………………………8

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,

714 F. Supp. 3d 416, 439 (S.D.N.Y. 2024),
*aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025)…………………………...25

*Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*,
No. 08-CV-588 KMK, 2012 WL 1638326 (S.D.N.Y. May 8, 2012)…………………….26

*Krys v. Sugrue (In re Refco Inc.)*,
2011 U.S. Dist. LEXIS 142291 (S.D.N.Y. 2011)………………………………………..28

*Conti v. Doe*,
535 F. Supp. 3d 257 (S.D.N.Y. 2021)…………………………………………………13

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
No. 11 Civ. 7801(PAE), 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)………9, 10, 11, 20

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001)……………………………………………………….7

*DeLuca v. AccessIT Group, Inc.*,
695 F.Supp.2d 54, 59–60 (S.D.N.Y. 2010)……………………………………………..7

*Donlon v. City of New York*,
2026 U.S. Dist. LEXIS 33441 (S.D.N.Y. 2026)………………………………………..9

*Entretelas Americanas S.A. v. Soler*,
2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. 2020)………………………………………11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir.2004)…………………………………………………………9, 13

*Gatt Commc'ns Inc. v. PMC Assocs. L.L.C.*,
711 F.3d 68 (2d Cir.2013)…………………………………………………………..31

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)……………………………………………………….6, 7

*Hassan v. Deutsche Bank A.G.*,
515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007),
*aff'd*, 336 Fed. Appx. 21 (2d Cir. 2009)……………………………………………28

*In re Firestar Diamond, Inc.*,
657 B.R. 730 (Bankr. S.D.N.Y. 2024)…………………………………………………17

*In re Grover*, 667 B.R. 243
(Bankr. S.D.N.Y. 2025)………………………………………………………..12

v

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016)……………………………………………………31

*In re Kingate Mgmt. Ltd. Litig.*,
    2016 U.S. Dist. LEXIS 129882 (S.D.N.Y. 2016)………………………………………..22

*In re Operations NY LLC.*,
    490 B.R. 84 (Bankr. S.D.N.Y. 2013)…………………………………………………..29

*In re Residential Cap., LLC*,
    No. 12-12020 (MG), 2014 WL 4230550 (Bankr. S.D.N.Y. June 6, 2014)………………10

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016)……………………………………………………31

*Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*,
    No. 08-CV-588 KMK, 2012 WL 1638326 (S.D.N.Y. May 8, 2012)…………………….26

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    916 F. Supp. 2d 442 (S.D.N.Y. 2013)……………………………………………………20

*Kirk v. Heppt*,
    423 F. Supp. 2d 147 (S.D.N.Y. 2006)…………………………………………………..7

*Kolbeck v. LIT Am., Inc.*,
    939 F.Supp. 240 (S.D.N.Y.1996)…………………………….................................22

*Lanzaro-Brunstein v. Creative Portal LLC*,
    2026 U.S. Dist. LEXIS 132082 (S.D.N.Y. 2026)………………………………………..11

*Lynn v. McCormick*,
    2017 U.S. Dist. LEXIS 207543 (S.D.N.Y. 2017)…………………………………………9

*MacDermid Printing Solutions LLC v. Cortron Corp.*,
    833 F.3d 172 (2d Cir. 2016)…………………………………………………………...31

*Mahmood v. Rsch. in Motion Ltd.*,
    905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012),
    *aff'd,* 515 F. App'x 891 (Fed. Cir. 2013)…………………………………………12, 19, 20

*Marino v. Grupo Mundial Tenedora, S.A.*,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011)……………………………………………………22

*Med. Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025)…………………………………………………………...15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)……………………………...17

*Meskunas v. Auerbach*,
    No. 17 CV 9129 (VB), 2019 WL 719514 (S.D.N.Y. Feb. 20, 2019)………………….27, 30

*M.J. Woods, Inc. v. Conopco, Inc.*,
    271 F. Supp. 2d 576 (S.D.N.Y. 2003)……………………………………………………….23

*Morin v. Trupin*,
    835 F. Supp. 126 (S.D.N.Y. 1993)…………………………………………………………..13

*Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
    420 F.Supp.2d 253 (S.D.N.Y. 2006)………………………………………………………...16

*Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*,
    467 F.3d 283 (2d Cir.2006)…………………………………………………………………31

*Pu v. Russell Publ'g Grp., Ltd.*,
    No. 15-CV-3936 (VSB), 2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016),
    *aff'd*, 683 F. App'x 96 (2d Cir. 2017)……………………………………………………..29

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
    692 F. Supp. 3d 135 (S.D.N.Y. 2023)………………………………………………………28

*Regions Bank v. Wieder & Mastroianni, P.C.,*
    526 F. Supp. 2d 411 (S.D.N.Y. 2007),
    *aff'd*, 268 F. App'x 17 (2d Cir. 2008)……………………………………………………….18

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)…………………………………………………………………….14

*Rhee-Karn v. Lask*,
    797 F. Supp. 3d 343 (S.D.N.Y. 2025)………………………………………………………23

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)………………………………………………………………...20

*Saint-Jean v. Emigrant Mortg. Co.*,
    129 F.4th 124 (2d Cir. 2025),
    *cert. denied*, 146 S. Ct. 1501, 223 L. Ed. 2d 507 (2026)……………………………….23

*Spool v. World Child Int'l Adoption Agency,*
    520 F.3d 178 (2d Cir. 2008)………………………………………………………………10, 13

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,

366 F. Supp. 3d 516 (S.D.N.Y. 2018)………………………………………………………32

*TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*,
127 F. Supp. 3d 202 (S.D.N.Y. 2015)………………………………………………..18, 19

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*,
886 F. Supp. 1134 (S.D.N.Y. 1995)………………………………………………....15, 16

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004)………………………………………7, 8, 17

*United States v. Bardakova*,
145 F.4th 231, 240 (2d Cir. 2025),
*cert. denied sub nom. Bardakova v. United States.*,
146 S. Ct. 1648, 224 L. Ed. 2d 14 (2026)……………………………………………32

*United States v. Bescond*,
24 F.4th 759 (2d Cir. 2021)………………………………………………………..32

*United States v. Turkette,*
452 U.S. 576 (1981)………………………………………………………………8

*United States v. Visa, Inc.*,
788 F. Supp. 3d 585 (S.D.N.Y. 2025)……………………………………………….30

*United States v. Zemlyansky*,
908 F.3d 1 (2d Cir. 2018)………………………………………………………...17

*U.S. v. Pierce*, 224 F.3d 158 (2d Cir. 2000)…………………………………………………11
*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990)………………………………………………………...11

*Wiedis v. Dreambuilder Invs., LLC*,
268 F. Supp. 3d 457 (S.D.N.Y. 2017)………………………………………………20

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018)………………………………………………………..17

*Williams v. Equitable Acceptance Corp.*,
443 F. Supp. 3d 480 (S.D.N.Y. 2020)……………………………………………..7, 11, 13

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
530 F. Supp. 2d 486 (S.D.N.Y. 2007),
*aff'd*, 328 F. App'x 695 (2d Cir. 2009)………………………………………14, 16, 20

*Yodice v. Touro Coll. & Univ. Sys.*,

viii

767 F. Supp. 3d 86 (S.D.N.Y. 2025)…………………………………………………………..29

*Zumpano v. Quinn*,
6 N.Y.3d 666 (2006)…………………………………………………………………...24

**State Cases**

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.,*
689 N.E.2d 879 (N.Y. 1997)……………………………………………………………13, 18

**Federal Statutes**

15 U.S.C. § 2……………………………………………………………………………………30, 32

18 U.S.C. § 1343…………………………………………………………………………………..10, 13

18 U.S.C. § 1951(b)(2)……………………………………………………………………………..11, 13

18 U.S.C. § 1962(c)………………………………………………………………………………...7, 16

18 U.S.C. § 1962(d)…………………………………………………………………………………16, 17

**Federal Rules**

Fed R. Civ. P. 9(b) …………………………………………………………………………1, 6, 11, 20, 34

Fed R. Civ. P. 12(b)(6)……………………………………………………………………………1, 6, 31, 34

**State Rules**

NY CPLR § 214(6)……………………………………………………………………………………23

This Memorandum of Law is respectfully submitted on behalf of Defendants LEWIS BRISBOIS BISGAARD & SMITH LLP ("LBBS"), CRISTINA YANNUCCI ("Yannucci"), SAM COHEN ("Cohen," with LBBS and Yannucci, collectively "LBBS Defendants"), ZELDES, NEEDLE & COOPER, P.C. i/s/h/a ZELDES NEELDE COOPER LLP ("ZNC"), ROBERT S. COOPER ("Cooper"), MAXIMINO MEDINA ("Medina"), and JERMEY VIRIGL ("Virgil," with ZNC, Cooper and Medina, collectively "ZNC Defendants," and with LBBS Defendants, collectively "Law Firm Defendants"), together with the accompanying Declaration of Cristina Yannucci, Esq., dated July 17, 2026 ("Yannucci Decl."), and the exhibits thereto, in support of Law Firm Defendants' motion seeking an Order: (a) dismissing Plaintiff ARI BARUCH TEMAN's ("Plaintiff") Complaint in its entirety against Law Firm Defendants pursuant to Fed R. Civ. P. 12(b)(6) and 9(b) and the prior action pending doctrine; or, in the alternative, (b) dismissing Plaintiff's Complaint pursuant to the fugitive disentitlement doctrine; and (c) granting such other and further relief as this Court deems just and proper.

**PRELIMINARY STATEMENT**

This action reflects Plaintiff's continued disregard for law and order. By this lawsuit, Plaintiff improperly seeks to secure that which he has been unable to obtain through discovery and settlement demands in the pending litigation originally styled *Ari Baruch Teman v. Zeldes Needle Cooper LLP, Jeremy Virgil, Maximino Medina, Richard A. Sarner, Edward R. Scofield, Lori A. DaSilva-Fiano, Sabato "Sam" P. Fiano, Richard D. Zeisler, Marie A. Casper, Robert S. Cooper, Lisa C. Dumond, and Does 1-10*, venued in the United States District Court, Southern District of New York, and bearing Case No. 1:24-cv-09830-LJL ("Related Action").

During a stay of the defendants' discovery obligations in the Related Action, Plaintiff demanded production of the entire client file maintained by his former counsel, ZNC Defendants,

1

for matters outside the underlying litigation at issue. By decision and order dated April 21, 2026, this Court denied Plaintiff's request, holding that "Plaintiff [could not] circumvent the stay on discovery" and limiting discovery in the Related Action to the sole underlying litigation at issue. (Related Action, S.D.N.Y. 1:24-cv-09830-LJL ECF, No. 70). Thereafter, Plaintiff demanded that ZNC Defendants produce the files it maintained as part of its legal representation of Plaintiff outside the scope and confines of litigation discovery. LBBS Defendants, as counsel to ZNC Defendants, requested clarification from Plaintiff as to what files were sought and for payment of reasonable production costs. Rather than resolve the inquiries posed, Plaintiff commenced the instant lawsuit not only against ZNC Defendants and their counsel, LBBS Defendants, but also against ZNC's professional liability insurers, namely, Defendants MEDPRO GROUP INC. ("MedPro"), SOMERSET SERVICES, LLC d/b/a ATTORNEY PROTECTIVE i/s/h/a/ ATTORNEY PROTECTIVE ("Attorney Protective"), and SCOTT PATRICK ("Patrick," with MedPro and Attorney Protective, collectively "Insurer Defendants").

In short, Plaintiff asserts a slew of frivolous and deficiently pled allegations concerning discovery in the Related Action, ZNC's production of its legal file, and ZNC's legal representation of Plaintiff in a litigation alleged to have settled in 2016. In so doing, Plaintiff continues his harassing and burdensome tactic of unilaterally adding persons to various email strings to then argue that their inclusion serves as a basis for naming said persons as defendants in his lawsuits. In this instance, Plaintiff's strategy is evident – by naming ZNC Defendants' attorneys and insurers in the Related Action as defendants in this lawsuit, Plaintiff is attempting to leverage a settlement of the Related Action without having to litigate on the merits. Such tactics should not be countenanced by this Court, particularly in this circumstance wherein Plaintiff has been declared a fugitive, calling into question his intention and ability to meaningfully participate in litigation.

2

For the reasons detailed below, is respectfully submitted that Plaintiff's Complaint be dismissed against Law Firm Defendants with prejudice as time-barred, for failure to state a claim upon which can be granted, and based upon the prior action pending doctrine, or, in the alternative, that Plaintiff's lawsuit be dismissed pursuant to the fugitive disentitlement doctrine.

## STATEMENT OF PROCEDURAL HISTORY AND FACTS

### A. Related Action

Plaintiff commenced the Related Action on December 19, 2024. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 1). Therein, Plaintiff named not only the firm and the handling partner on the matter, but an additional nine defendant attorneys, and asserted thirteen causes of action concerning ZNC's legal representation of Plaintiff in an action captioned *Ari Teman v. Eric Braverman, M.D., et al*, venued in Supreme Court of the State of New York, County of New York, and bearing Index No. 805410/2014 ("PATH/Braverman Action"). (*Id.*). On December 31, 2025, this Court granted defendants' pre-answer motion in part and dismissed all named defendants and causes of action except for "Plaintiff's legal malpractice claim against ZNC and Virgil." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 32).

On January 18, 2026, Plaintiff filed an Amended Complaint, adding one cause of action sounding in breach of fiduciary duty against all originally named defendants. Like the case at bar, Plaintiff claimed that because the formerly dismissed ZNC attorneys were copied on correspondence concerning a separate litigation styled "*Silver Hill Hospital Inc. v. Teman*" ("Silver Hill Action"), said ZNC attorneys had a fiduciary duty to protect Plaintiff's interests. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 35 at p. 6, 8-9). In lieu of answering, a pre-answer motion to dismiss was filed. (*Id.* at ECF Doc. Nos. 41-43, 44, 48-50).

In the interim, LBBS Defendants produced ZNC's redacted insurance declaration page on

February 16, 2026 and following Plaintiff's request, produced ZNC's redacted insurance policy on February 25, 2026.[1] (Yannucci Decl., Exs. B & C).

On March 31, 2026, the Court granted defendants' pre-answer motion and dismissed Plaintiff's breach of fiduciary duty claim with prejudice, leaving only Plaintiff's legal malpractice cause of action relative to the PATH/Braverman Action against ZNC and Virgil. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 54 at p. 10). On April 1, 2026, Plaintiff moved for leave to file a Second Amended Complaint, seeking to add legal malpractice and breach of fiduciary claims concerning ZNC's representation of Plaintiff in the PATH/Braverman and Silver Hill Actions. (*Id*. at ECF Doc. No. 57). Notably, Plaintiff's proposed amendments include allegations that ZNC failed to "develop discovery," "support expert testimony," and "preserve and maximize Plaintiff's claims" in the Silver Hill Action, and advised Plaintiff to take a "reduced settlement," which he "accepted." (*Id*. at p. 3). Plaintiff does not allege he was coerced into settling the Silver Hill Action. The matter remains *sub judice.* (*Id.* at ECF Doc. Nos. 76-77).

Also on April 1, 2026, this Court issued an Order staying defendants' obligations to respond to discovery. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 55). In response, Plaintiff requested that ZNC produce his client files outside of litigation discovery. (*Id.* at ECF Doc. No. 60). On April 21, 2026, this Court issued an Order holding that "[d]efendants [were] not required to produce documents or information related to actions beyond the [PATH/Braverman] Action" and denied Plaintiff's motion to "compel [the] [d]efendants to produce Plaintiff's client file," holding that "Plaintiff [could not] circumvent the stay on discovery." (*Id.* at ECF Doc. No. 70 at p. 4). Six days later, Plaintiff filed the instant lawsuit and moved to disqualify LBBS Defendants as counsel in the Related Action. (*Id.* at ECF Doc. No. 74). This motion was

---

[1] Fed. R. Civ. P. 26(a)(A)(iv) and (C) provides that defendants must disclose applicable insurance agreements within 14 days after the Fed. R. Civ. P. 26(f) Conference, which occurred in the Related Action on March 10, 2026.

summarily denied on April 29, 2026. (*Id.* at ECF Doc. No. 75).

## B. The Instant Lawsuit

On April 27, 2026, Plaintiff commenced the instant lawsuit by filing a Complaint. (Yannucci Decl., Ex. A). Therein, Plaintiff asserts eleven causes of action sounding in (1) RICO; (2) RICO – Conspiracy; (3) wire fraud; (4) conversion; (4) replevin; (5) fraud; (6) aiding and abetting breach of fiduciary duty; (7) legal malpractice; (8) tortious interference; (9) unjust enrichment; (10) injunctive relief; and (11) Sherman Act Violations (*Id.* at pp. 8-19). Among other requests, Plaintiff seeks damages in the same amount as the Related Action, to wit – "[c]ompensatory damages […] exceed[ing] $24,000,000." (*Compare id.* at § VII *with* (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 35 at Section V., ¶ 29, p. 7).

Prior to Law Firm Defendants' deadline to respond to the Complaint, Plaintiff filed motions to disqualify LBBS Defendants as counsel and to compel ZNC Defendants to produce Plaintiff's client files. (ECF Doc. Nos. 15, 16, 21-22, 25-31). By June 9, 2026 Order, this Court denied Plaintiff's disqualification motion as "frivolous" and denied Plaintiff's motions to compel immediate production of ZNC's client files, advising that same would be addressed in the Related Action. (ECF Doc. No. 34). In the Related Action, the Court issued: (1) a June 9, 2026 Order directing Plaintiff to identify "the client files he seeks by June 15, 2026" and Law Firm Defendants to "respond by June 22, 2026 indicating the cost for production"; and (2) a July 1, 2026 Order denying Plaintiff's request to compel Law Firm Defendants to provide "written explanations regarding the 'timing, sources, custodians, and scope of the collection'" and validated ZNC's agreement to produce files maintained for "the PATH/Braverman and Silver Hill litigations." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. Nos. 106 & 114).

In accordance with this Court's Orders, on May 29, 2029, Defendants ZNC and Virgil

produced over 64,000 pages of documents responsive to Plaintiff's demands in the Related Action from the files ZNC maintained in the ordinary course of business as part of its legal representation of Plaintiff in the PATH/Braverman Action. Furthermore, in accordance with this Court's directive and party agreements, on July 8, 2026, ZNC separately produced the files it maintained in the ordinary course of business as part of its legal representation of Plaintiff in the PATH/Braverman and Silver Hill Actions, totaling over 93,000 pages of documents. (Yannucci Decl. Ex. D).

## ARGUMENT
**POINT I:       DISMISSAL PURSUANT TO FRCP 12(b)(6) AND 9(b)**

**POINT I:       DISMISSAL PURSUANT TO FRCP 12(b)(6) AND 9(b)**

### A.  Standard of Review

Dismissal of a complaint is warranted for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp., supra,* 550 U.S. at 555-56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft, supra,* 556 U.S. at 678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp., supra,* 550 U.S. at 555.

In determining whether a complaint states a plausible claim for relief, the Court may take judicial notice of documents filed in another court "to establish the factual allegations set forth in the pleadings; (2) documents […] incorporated by reference [in the pleadings]; (3) matters of

6

which judicial notice may be taken; and (4) documents upon which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the Complaint the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006). To incorporate a document by reference, "a complaint must make a clear, definite, and substantial reference to the document." *Allen v. Chanel, Inc.,* No. 12–6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013). For a document to be considered "integral," a plaintiff must have: "(1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Group, Inc.,* 695 F.Supp.2d 54, 59–60 (S.D.N.Y. 2010).

## B. First Cause of Action: RICO (18 U.S.C. § 1962(c))

18 U.S.C. § 1962(c) provides, in pertinent part, that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[2] Stating a RICO claim under 18 U.S.C. § 1962(c) requires: "[a] plaintif[f] [to] allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly ... participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 488 (S.D.N.Y. 2020) (internal citations omitted). A plaintiff also "must adequately plead" each element "as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)."

---

[2] "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *United States Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (internal citations omitted). "Because the mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Kirk v. Heppt*, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006).

### i.    *Plaintiff Fails to Sufficiently Plead an Association-in-Fact Enterprise*

Plaintiff alleges that "beginning […] in or about 2016," an "association-in-fact" "enterprise" was formed by ZNC Defendants, LBBS Defendants, and Insurer Defendants to "minimize malpractice liability exposure and financial payouts by suppressing claims, coercing settlements, and controlling access to client information," and with such Defendants "function[ing] as a continuing unit." (Yannucci Decl., Ex. A at § IV, ¶¶ 37-45; § V, ¶¶ 46-48, 62). Plaintiff alleges all "Defendants knowingly agreed to participate in the conduct of the enterprise's affairs" and "knew the essential nature of the scheme and agreed to facilitate it." (*Id*. at § V, ¶¶ 69-70).

"An 'association-in-fact' enterprise must have at least three structural features: 1) a purpose, 2) relationships among those associated with the enterprise, and 3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359–60 (S.D.N.Y. 2014). The enterprise must also be "an entity separate and apart from […] the pattern of racketeering." *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 446–47 (S.D.N.Y. 2004) (quoting *United States v. Turkette,* 452 U.S. 576, 583 (1981)). To determine whether a pleading sufficiently alleges "the existence of an association-in-fact RICO enterprise, Courts analyze the hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit" and "[a] plaintiff's conclusory naming a string of entities does not adequately allege an enterprise" *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (internal citations omitted) (dismissing a RICO claim "provid[ing] no concrete information on the group's organization or hierarchy," or "[d]efendants function[ing] as a unit.").

Here, Plaintiff fails to adequately plead any associate-in-fact RICO enterprise. First, he fails to plead any association-in-fact enterprise distinct from the persons and activities comprising

8

the enterprise affairs. *See Lynn v. McCormick*, 2017 U.S. Dist. LEXIS 207543 at \*12-\*14 (S.D.N.Y. 2017) (plaintiff failed to sufficiently plead a RICO enterprise because allegations that" [d]efendants came together for the purpose of engaging in the fraudulent activity that form[ed] the basis of the asserted pattern of racketeering activity" rendered the enterprise and the pattern "one and the same")(internal quotations and citation omitted).

Second, Plaintiff fails to plead any facts tending to show any hierarchy, organization, or coordination relative to the alleged goals of the enterprise or alleged racketeering activities. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 174 (2d Cir.2004) (plaintiff failed to adequately plead information regarding the "hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which the Court "could fairly conclude that its 'members functioned as a unit."); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,* No. 11 Civ. 7801(PAE), 2012 WL 1231775, at \*6 (S.D.N.Y. Apr. 12, 2012). ("The Amended Complaint's failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal.").

Third, Plaintiff's proffer of "insurer oversight and funding, coordinate litigation strategy, and shared communications" is too vague and conclusory to sufficiently plead the existence of a RICO enterprise. *See Donlon v. City of New York*, 2026 U.S. Dist. LEXIS 33441 at \*22-24 (S.D.N.Y. 2026) (allegations that an enterprise was formed to "consolidate political power [and] obstruct justice" were "conclusory" and merely "summarize[d] some of the alleged predicate acts" were insufficient to plead a common purpose sufficient to demonstrate the existence of an association-in-fact enterprise).[3] Accordingly, Plaintiff's claim fails.

---

[3] Plaintiff asserts that the alleged enterprise formation and racketeering activities started in 2016, yet there is no allegation in the Complaint (nor can there be) that LBBS Defendants were involved in the Silver Hill Litigation. (Yannucci Decl., Ex. A).

9

### ii.    *Plaintiff Fails to Sufficiently Plead a Pattern of Racketeering Activity*

Plaintiff alleges Law Firm Defendants "participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, including multiple acts of wire fraud in violation of 18 U.S.C. § 1343." (Yannucci Decl., Ex. A at § V, ¶ 50). Plaintiff alleges this began "with coercive settlement conduct in or about 2016" and "contin[uing] through Defendants' recent refusals to produce the file." (*Id.* at § V, ¶¶ 62-65). As for the specific acts of wire fraud, Plaintiff identifies: (1) a February 16, 2026 email where Yannucci "represent[ed] that a declaration page constituted the complete insurance policy"; (2) an April 23, 2026 email where Yannucci "stat[ed] that Plaintiff was required to identify specific documents and pay fees to obtain his own client file"; and (3) unspecified ZNC communications from "May 2022, May 2024, and thereafter." (*Id.* at § V, ¶ 54). Plaintiff also raises a conclusory allegation that "Defendants['] condition[ing] [of] access to Plaintiff's own property," namely, ZNC's client file, "on payment of money and compliance with unlawful demands" constitutes "[e]xtortionate [c]onduct." (*Id*. at § V, ¶ 60).

A pattern of racketing activity requires the commission of "at least two predicate acts of racketeering activity that are related and continuous." *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017). "To survive a motion to dismiss, this pattern must be adequately alleged in the complaint." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008). "The Plaintiff must show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (internal quotations and citations omitted). "Even in a *civil* RICO case, a plaintiff must allege criminal activity." *In re Residential Cap., LLC*, No. 12-12020 (MG), 2014 WL 4230550, at *8 (Bankr. S.D.N.Y. June 6, 2014).

"The elements of wire fraud under 18 U.S.C. § 1343 are (1) a scheme to defraud (2) to get

10

money or property, (3) furthered by the use of interstate wires." *U.S. v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000). Where "the predicate acts on which a RICO claim is based sound in fraud, those acts must be pleaded in conformity with Rule 9(b)'s heightened pleading standard." *Continental Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, at *4 (S.D.N.Y. Apr. 12, 2012). "In order to comply with Rule 9(b), plaintiffs must: (1) specify the [fraudulent] statements […], (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 488 (S.D.N.Y. 2020) (internal citations omitted); *Lanzaro-Brunstein v. Creative Portal LLC*, 2026 U.S. Dist. LEXIS 132082 at *6-*9 (S.D.N.Y. 2026) ("Where multiple defendants are accused of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. … The requirements of Rule 9(b) are not satisfied by a complaint in which defendants are clumped together in vague allegations.") (internal citations omitted). A plaintiff must also allege a factual basis for a "strong inference" of fraudulent intent beyond specious and conclusory allegations. *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). 18 U.S.C. § 1951(b)(2) defines "extortion" as "obtaining the property from another, without his [or her] consent, included by wrongful use of actual or threatened force, violence, or fear, or under color of official right." "[W]rongful use of actual or threatened force, violence, or fear, or under color of official right" can constitute RICO predicate extortion. *Entretelas Americanas S.A. v. Soler*, 2020 U.S. Dist. LEXIS 20692 at *26-*28 (S.D.N.Y. 2020) (internal citations omitted).

First, Plaintiff alleges ZNC Defendants coerced Plaintiff "into executing a settlement for approximately $80,000.00" in the Silver Hill Action when he was "physically and mentally compromised." (Yannucci Decl., Ex. A at § IV, ¶¶ 14 and 19). Relative to this allegation, Plaintiff does not allege any fraudulent statements were made, explain how any statements were fraudulent,

11

identify the speaker, or when and where any fraudulent statements were made. Plaintiff also fails to allege that any Law Firm Defendants committed a crime, sought to defraud Plaintiff for money or property, utilized interstate wires, or coordinated the alleged actions with Insurer Defendants.

Second, Plaintiff alleges the February 16, 2026 email omitted "material [insurance] policy terms" and mislead "Plaintiff as to the scope of available coverage." (Yannucci Decl., Ex. A at § V, ¶ 54). However, the pleading is devoid of any facts tending to show that Yannucci committed a crime, sought to defraud Plaintiff for money or property, or coordinated efforts with ZNC Defendants or Insurer Defendants to minimize the value of Plaintiff's claims. Furthermore, Plaintiff was provided the policy in compliance with governing Federal Rules. (Yannucci Decl., Ex. B). Finally, Plaintiff's claim in the Related Action that ZNC's insurance disclosure was deficient was rejected by this Court warranting summary dismissal of the assertion here. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc Nos. 38-40).[4]

Third, Plaintiff alleges the April 23, 2026 email concerning ZNC's client file production was "made to delay and obstruct Plaintiff's recovery of his property." (Yannucci Decl., Ex. A at § V, ¶ 54). For context, by April 22, 2026 email, Plaintiff stated, with reference to ZNC's client file production and a "settlement proposal," that it "th[e] matter was not resolved by [April 23, 2026], he would" be "amending the complaint" and "initiating additional actions in state and federal court." (Yannucci Decl., Ex. E). The next day, Yannucci responded by requesting identification of "the [files] [plaintiff] [requested] as well as instructions for the production" so that ZNC

---

[4] Collateral estoppel, or issue preclusion, "limits a party's ability to argue that the same issue decided in one action should be decided differently in another. *Mahmood v. Rsch. in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012), *aff'd,* 515 F. App'x 891 (Fed. Cir. 2013) "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude prelitigation of the issue in a suit on a different cause of action involving a party to the first case." *In re Grover*, 667 B.R. 243, 253 (Bankr. S.D.N.Y. 2025). "There are two requirements for the application of collateral estoppel: (1) '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id*. (internal citations omitted). Since both conditions have been met, Plaintiff's claims relative to the insurance disclosure in the Related Action should be dismissed.

Defendants could "assess the costs [….] and provide [Plaintiff] with an estimate" to pay production costs." (*Id.*).

Notably, this Court held in its June 9, 2026 Order that "assemblage and delivery of documents to [a former legal] client […] is properly chargeable to the client." (ECF Doc. No. 34). Furthermore, the Court in the Related Action directed Plaintiff to indicate which "client files he [sought] by June 15, 2026" and LBBS Defendants to "respond by June 22, 2025 indicating the cost for production of documents." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 106). Accordingly, since Yannucci's April 23, 2026 email was proper and in accordance with governing law (s*ee Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.,* 689 N.E.2d 879 (N.Y. 1997)) and was confirmed by this Court's subsequent directives to Plaintiff (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 106), such statements cannot constitute wire fraud, extortion, or racketeering activity. 18 U.S.C. §§ 1343 and 1951(b)(2) Law Firm Defendants produced the client files at issue on July 8, 2026 in adherence with Court directives (Yannucci Decl., Ex. D), rendering most if not all of Plaintiff's requests moot.[5]

Fourth, Plaintiff's vague allusions to unspecified "communications [allegedly] transmitted by [ZNC Defendants]" in "May 2022, May 2024, and thereafter" are deficiently plead and should be disregarded, as Plaintiff fails to identify the speakers, when and where the statements were made, or why the statements were fraudulent. Plaintiff also fails to allege any criminal activity or

---

[5] In addition to the aforementioned, "[p]roviding legal advice and legal services generally does not constitute participation in the operation or management of an enterprise sufficient to ground an allegation of a violation of § 1962(c)." *Morin v. Trupin,* 835 F. Supp. 126, 135 (S.D.N.Y. 1993). Where an attorney "acted as no more than" counsel and a complaint fails to allege that the attorney "engaged in illegal conduct outside its representational capacity" and "participated in the management or direction of a RICO enterprise," dismissal is warranted. *Azrielli v. Cohen Law Offs.,* 21 F.3d 512, 520 (2d Cir. 1994). *See Black v. Ganieva*, 2022 U.S. Dist. LEXIS 116255 *47 (S.D.N.Y 2022). Because Yannucci's February 16, 2026 and April 23, 2026 emails were "material and pertinent to the issue[s] to be resolved in the [Related Action]" as party of litigation discovery her "statements […] are absolutely privileged" pursuant to the "litigation privilege" doctrine." *Conti v. Doe*, 535 F. Supp. 3d 257, 280 (S.D.N.Y. 2021).

13

efforts to obtain money or property through use of interstate wire. (Yannucci Decl., Ex. A at p. 9).

### iii.    *Plaintiff Fails to Sufficiently Allege Related and Continuous Racketeering Activity*

Plaintiff alleges "Defendants' conduct demonstrates both close-ended and open-ended continuity." (Yannucci Decl., Ex. A at § V, ¶¶ 62-66). However, Plaintiff fails to plead facts sufficient to show how the alleged 2016 settlement coercion and litigation communications in the Related Action were continuous, coordinated, and related to an ongoing fraudulent scheme to minimize aggregate insurance payments.

The Second Circuit has held that "[a] closed-ended pattern of racketeering activity involves predicate acts" that "should generally extend over at least two years" (*Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017)) and considers "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes." *First Cap. Asset Manag., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). "A pattern of racketeering can alternatively be established with open-ended continuity when the alleged scheme by its nature projects into the future with a threat of repetition." *Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 492–93 (S.D.N.Y. 2020) (internal quotations and citations omitted). Such a threat is "generally presumed when the enterprise's business is primarily or inherently unlawful.*" Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). "The continuity requirement also imposes on a RICO plaintiff the obligation of alleging more than a scheme with a "single, narrow purpose" that is "directed towar[d] a single victim." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 509 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (internal quotations and citations omitted).

The conduct alleged by Plaintiff does not constitute either close-ended or open-ended continuity. First, Plaintiff does not plead facts tending to show that the alleged enterprise's business

14

is primarily/inherently unlawful, threatens repetitions, involved separate schemes, or involved, was directed to, or impacted multiple victims. Second, beyond alluding to unspecified 2024 and 2025 communications by ZNC Defendants, Plaintiff only identifies the alleged 2016 settlement coercion, which did not involve or concern LBBS Defendants, and the two 2026 emails sent by Yannucci within 66 days of each other as part of litigation in the Related Action. These distinct and separate acts do not constitute racketeering activity, let alone a pattern of coordinated racketeering activity. It is apparent Plaintiff is merely attempting to identify distinct, unrelated events in an attempt to convince this Court that the alleged and supposed 'racketeering activities' involved all Law Firm Defendants over a span of numerous years. Yet, the Complaint is devoid of facts to support these summary theories of related and continuous racketeering activity.

### iv.    *Plaintiff Fails to Sufficiently Allege a RICO Injury*

Plaintiff claims he incurred "injury to his business and property, including loss of the value of his legal claims, deprivation of his client file, and costs incurred in attempting to recove[r]" same. (Yannucci Decl., Ex. A at § V, ¶ 67). To maintain to a civil RICO claim, a plaintiff must allege injury to "business or property" with "some direct relation between the injury asserted and the injurious conduct alleged" with mere "foreseeability" being insufficient at the pleading stage. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (internal citations omitted).

Here, Plaintiff's claimed injury to his business and property are vague and conclusory, and Plaintiff fails to plead facts tending to show what "value of his legal claims" was lost as a result of the alleged racketeering activity. Notably, Plaintiff's client file has been produced (Yannucci Decl., Ex. D) and "legal fees […] incurred in *offensive* litigation" are generally "not RICO injuries." *Azima v. Dechert LLP*, No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106, at *36 (S.D.N.Y. Sept. 26, 2024). Moreover, "a RICO plaintiff may not recover for speculative losses or where the amount

15

of damages is unprovable." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995).

> **v.      *Plaintiff's Claims Relative to the Silver Hill Action are Time Barred***

"RICO claims are subject to a four-year statute of limitations." *World Wrestling Ent., Inc., supra,* 530 F. Supp. 2d at 524. It is well established that a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury" and "a plaintiff who is continuously injured by an underlying RICO violation may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.,* 420 F.Supp.2d 253, 265 (S.D.N.Y. 2006) (citing *Bingham v. Zolt,* 66 F.3d 553, 560 (2d Cir.1995)). Because Plaintiff alleges he was coerced into settling the Silver Hill Action in 2016, and Plaintiff commenced this lawsuit in 2026, Plaintiff's RICO allegations relative to the reduced value of this settlement are time-barred.

For the above reasons, Plaintiff's first cause of action sounding in RICO (18 U.S.C. § 1962(c)) must be dismissed in its entirety with prejudice.

## C. Second Cause of Action: RICO Conspiracy (18 U.S.C. § 1962(d))

Plaintiff alleges "Defendants knowingly agreed to participate in the conduct of the enterprise's affairs through the pattern of racketeering activity described [in his First Cause of Action]" and that "[e]ach Defendant knew the essential nature of the scheme and agreed to facilitate it." (Yannucci Decl., Ex. A at § V, ¶¶ 69-70).

"Conspiracy to violate RICO constitutes its own offense" and requires proof '(a) of an agreement to join a racketeering scheme, (b) of the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated, and (c) that the scheme involved, or by

agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." *In re Firestar Diamond, Inc.*, 657 B.R. 730, 747 (Bankr. S.D.N.Y. 2024) (quoting *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018)). A plaintiff must allege that "each defendant by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise" and "[c]onclusory allegations that all of the defendants conspired among themselves to further the scheme to defraud and knowingly and willingly participated in the conspiracy are insufficient." *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453–54 (S.D.N.Y. 2004) (internal citations omitted).

Plaintiff's second cause of action sounding in RICO conspiracy (18 U.S.C. § 1962(d)) must be dismissed in its entirety with prejudice because: (1) Plaintiff asserts only conclusory allegations and fails to articulate any words or actions employed by Law Firm Defendants to enter into the alleged conspiracy (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* No. 91 Civ. 2923, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) ("[N]umerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim.") (quotations citations omitted)); and, (2) Plaintiff fails to adequately plead his underlying RICO clause of action (*Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018) (finding that a RICO conspiracy claims failed when the alleged "conspiracy involved an agreement to commit the same substantive RICO violations [already] deemed insufficiently pled [by the Court].")).

**D. Third Cause of Action: Conversion**

Plaintiff alleges Law Firm Defendants are liable for conversion because they "exercised unauthorized dominion over [ZNC's client] file" and "condition[d] its release on unlawful demands," preventing Plaintiff from "filing a fulsome Second Amended Complaint" and "adequately answering discovery in [the Related Action]." (Yannucci Decl., Ex. A at § V, ¶¶ 74-

17

77). To sufficiently plead a conversion claim, a plaintiff must allege "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." *Regions Bank v. Wieder & Mastroianni, P.C.,* 526 F. Supp. 2d 411, 413 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008). "[W]here possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand." *TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 209–10 (S.D.N.Y. 2015) (internal citations omitted).

While Plaintiff fails to specify the file at issue, it is presumed Plaintiff is referring to the files ZNC maintained as part of its legal representation of him in the PATH/Braverman and Silver Hill Actions. ZNC Defendants lawfully possessed such files as Plaintiff's legal counsel. The Court in the Related Action acknowledged that under governing "New York law," namely, *"Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.,* 689 N.E.2d 879 (N.Y. 1997) […] assemblage and delivery of documents to the client […] is properly chargeable to the client." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 34, p. 4). In the Related Action, the Court issued Orders in June and July 2026 directing Plaintiff to identify "the client files he seeks," instructing defendants to identify "the cost for production," denying Plaintiff's request for ZNC to provide written explanations regarding the 'timing, sources, custodians, and scope of the collection'" and validated ZNC's agreement to produce the files it maintained for representing Plaintiff in "the PATH/Braverman and Silver Hill litigations." (*Id.* at ECF Doc. Nos. 106 & 114).

Because Law Firm Defendants already produced the client files ZNC maintained for Plaintiff in the ordinary course of business as part of its representation of Plaintiff in the PATH/Braverman and Silver Hill Actions pursuant to Court direction, Plaintiff's conversion claim fails. (Yannucci Decl., Ex. D). Furthermore, Plaintiff is collaterally estopped from relitigating the

18

sufficiency of Law Firm Defendants' preliminary communications, limitations, and agreements concerning their production of ZNC's legal files. *See, Mahmood v. Rsch. in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012), *aff'd,* 515 F. App'x 891 (Fed. Cir. 2013). Plaintiff's conversion claim should be dismissed with prejudice, as Law Firm Defendants did not improperly interfere with Plaintiff's property rights, Law Firm Defendants produced ZNC's client files in adherence with Court direction, Plaintiff has incurred no damages during the transfer of his client file, and Plaintiff's ability to litigate the Related Action has not been impacted.

### E.   Fourth Cause of Action: Replevin

Plaintiff alleges that "he is entitled to immediate possession of his client file." (Yannucci Decl., Ex. A at § V, ¶ 80). "[R]eplevin is a remedy employed to recover specific, identifiable item[s] of personal property" and a plaintiff "must establish that the that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." *TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) (internal citations omitted). This cause of action should be dismissed with prejudice because Plaintiff fails to identify the file he seeks and Law Firm Defendants already produced the files ZNC maintained in the ordinary course of business as part of its legal representation of Plaintiff in the PATH/Braverman and Silver Hill Actions in adherence with Court direction. (Yannucci Decl., Exs. D and E; Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. Nos. 106 & 114).

### F.   Fifth Cause of Action: Fraud

Plaintiff alleges that: (1) "Defendants, including Yannucci and Cohen, made specific statements that the declaration page constituted the policy, [and] Plaintiff must identify documents and pay for his file"; (2) such "statements were false when made and known to be false"; (3) that "Plaintiff detrimentally relied on these misrepresentations by attempting to resolve the file

19

production through good-faith meet-and-confers and administrative follow-up rather than the immediate judicial intervention"; and (3) that as a result, Plaintiff incurred "loss of billable work time, and the forced expenditure of labor to draft a Motion to Compel for materials [Law Firm] Defendants had already agreed to provide." (Yannucci Decl., Ex. A at § V, ¶¶ 85-87).

To state a cause of action sounding in fraud, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 916 F. Supp. 2d 442, 447 (S.D.N.Y. 2013) (internal citations omitted). A plaintiff must also allege "proximate causation," meaning "the injury is the nature and probable consequence of the defrauder's misrepresentation." *Id.* (internal quotations and citations omitted). To comply with the pleading requirements of Fed. R. Civ. P. 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). "While 'intent, knowledge, and other conditions of mind may be averred generally,' a plaintiff must allege sufficient facts to create a 'strong inference" of scienter.'" *Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 464–65 (S.D.N.Y. 2017) (internal quotations omitted).

To the extent Plaintiff refers to Yannucci's February 16, 2026 and April 23, 2026 emails, discussed *infra*, Plaintiff's claim fails. First, because such statements were only made by Yannucci, this cause of action should be dismissed against all other Law Firm Defendants. Next, as demonstrated above, the allegedly fraudulent statements were not deemed to be misrepresentations or improper, with such matters being brought before by this Court through motion practice in this

and Related Action. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc Nos. 38-40, 106; ECF Doc. No. 34). *See Mahmood, supra,* 905 F. Supp. 2d at 502.[6]

Moreover, Plaintiff's reliance assertion fails as a matter of law since Plaintiff: (1) expressly disputed Yannucci's representations; (2) moved to compel production of additional insurance policies in the Related Action on February 26, 2026 (10 days after Yannucci's February 16, 2026 email); (3) moved to compel production of ZNC's client files on April 11, 2026 and filed letters requesting similar relief on April 16, 2017 in the Related Action (12 and 7 days prior to Yannucci's April 23, 2026 email); and, (4) commenced the instant action on April 27, 2026 (four days after Yannucci's April 23, 2026 email). (Yannucci Decl. Exs. A, B, C, D, and E; Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. Nos. 38, 60 & 68-69).

Finally, Plaintiff fails to plead any resultant injury, since he: (1) filed the motions to compel in the Related Action in opposition, and not in reliance of, Yannucci's statements; and (2) claims only "the loss of billable work time" (Yannucci Decl., Ex. A at § V., § 87) through engaging in litigation activities, which is not recoverable for fraud claims. *World Wrestling Ent., Inc., supra,* 530 F. Supp. 2d at 519 (internal citations omitted) (New York only permits "plaintiffs in common law fraud actions to recover only for actual pecuniary losses (out-of-pocket losses and consequential damages) and not for future profits" as such losses are "inherently speculative and uncertain"). As such, Plaintiff's fraud claim must be dismissed in its entirety with prejudice.

## G.  Sixth Cause of Action: Aiding and Abetting Breach of Fiduciary Duty

Plaintiff alleges that "ZNC owed Plaintiff fiduciary duties" and "Lewis Brisbois knowingly induced and substantially assisted breaches of those duties." (Yannucci Decl., Ex A at § V., § 88-

---

[6] Furthermore, because both Yannucci statements were "material and pertinent to the issue[s] to be resolved in the [Related Action]" her "statements […] are absolutely privileged" pursuant to the "litigation privilege" doctrine." *Conti, supra,* 535 F. Supp. 3d at 280.

89). "Under New York law, a claim of aiding and abetting breach of fiduciary duty has three elements: (1) existence of a breach of fiduciary obligations, of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damages as a result of the breach." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011). A pleading must allege "actual knowledge" and "substantial assistance" in the breach." *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 245, 247 (S.D.N.Y.1996).

First, this claim should be dismissed against ZNC Defendants with prejudice because Plaintiff does not direct the claims against ZNC Defendants. (Yannucci Decl., Ex. A, ¶¶ 88-91).

Second, this claim should be dismissed in its entirety because Plaintiff fails to assert any independent breach of fiduciary duty claim, and "a claim for aiding and abetting breach of fiduciary duty is dependent upon the underlying breach of fiduciary duty." *Marino, supra,* 810 F. Supp. 2d at 613; *see Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 245 (S.D.N.Y.1996) (underlying breach is critical to aiding and abetting claim because secondary liability is necessarily based on the primary violation).

Third, Plaintiff's allegations are vague and conclusory, and Plaintiff makes no attempt to articulate: (1) the nature of the fiduciary duty "ZNC owed Plaintiff"; (2) what breach of fiduciary duty occurred; (3) any knowledge or substantial assistance on the part of LBBS Defendants; or (3) any resultant damages. (Yannucci Decl., Ex. A § V., §§ 89-80). *See In re Kingate Mgmt. Ltd. Litig.*, 2016 U.S. Dist. LEXIS 129882 at *152-*153 (S.D.N.Y. 2016)(dismissing aiding and abetting breach of fiduciary duty claims where plaintiffs "alleged only conclusory allegations [defendants] knowingly assisted in those breaches, [and] have provided no specific allegations as to how they assisted or induced them, or whether they acted dishonestly in doing so."). As such, Plaintiff's aiding and abetting claim should be dismissed with prejudice.

22

### H.  Seventh Cause of Action: Legal Malpractice

The elements of legal malpractice are: "(1) the existence of an attorney-client relationship; (2) negligence on the part of the attorney or some other conduct in breach of that relationship; (3) that the attorney's conduct was the proximate cause of injury to the plaintiff; and, (4) but for the alleged malpractice the plaintiff would have been successful in the underlying action." *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 583 (S.D.N.Y. 2003).

As a preliminary matter, Plaintiff's legal malpractice claim as pertains to the Silver Hill Action is time-barred and should be dismissed. Plaintiff alleges that: (1) "[i]n or about 2016, Virgil and Medina exerted extreme and improper pressure" and "coerced [him] into executing a settlement for approximately $80,000"; (2) failed to report a "Dr. Gelman" for sexual abuse, which allegedly undermined Plaintiff's settlement posture; (3) "fail[ed] to pursue viable claims," presumably referring to "sexual misconduct"; (4) "act[ed] under conflicts"; and (5) failed to consolidate the Silver Hill and Braverman Actions "into a single federal action in the SNDY to avoid local conflicts and maximize efficiency" (Yannucci Decl., Ex A at § IV., ¶¶ 14-19; § V., pp. 13-15).

"Under New York law, the statute of limitations for a legal malpractice claim is three years from the date of accrual," namely, "when an actionable injury from the malpractice occurs.*" Rhee-Karn v. Lask*, 797 F. Supp. 3d 343, 355 (S.D.N.Y. 2025). *See* NY CPLR § 214(6). The "claim accrues" even when "the aggrieved party is […] ignorant of the wrong or injury." *Adamson v. Bachner*, No. 01 CIV. 10213 (JSM), 2002 WL 31453096, at *1 (S.D.N.Y. Oct. 31, 2002). Because Plaintiff alleges the Silver Hill Action was resolved by settlement in 2016, and the instant lawsuit was filed on April 27, 2026, Plaintiff's legal malpractice claim relative to the Silver Hill Action is

23

time-barred pursuant to the governing three-year statute of limitations.

To try to avoid this bar to his claim, Plaintiff alleges that "Defendants' conduct is subject to equitable tolling due to concealment." (Yannucci Decl., Ex A at § V., ¶ 98). Citing *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006), Plaintiff claims that he "did not discover the full extent of Defendants' conduct until 2024-2026" with the conduct being concealed through "misrepresentations regarding insurance coverage," "withholding the client file," and "misleading statements by counsel." (*Id*. at § IV., ¶¶ 24-35). However, neither these assertions nor the holding in *Zumpano* salvage Plaintiff's claim. Pleading equitable tolling through fraudulent concealment requires facts showing: "(1) the defendant concealed the existence of the cause of action from the plaintiff" by showing "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing"; "(2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) the plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 1501, 223 L. Ed. 2d 507 (2026).

Here, Plaintiff fails to plead facts tending to show fraudulent concealment to toll the three-year statute of limitations. LBBS Defendants' February 2026 disclosure of insurance coverage in the Related Action (for legal malpractice allegations solely concerning the PATH/Braverman Action), LBBS Defendants' subsequent communications relative to Plaintiff's April 2026 request for ZNC's client files, and other unspecified statements, have no bearing on Plaintiff's awareness of the facts and circumstances surrounding ZNC's facilitation of the 2016 settlement in the Silver Hill Action. (Yannucci Decl., Exs. B & D). Furthermore, there are no facts tending to show that Law Firm Defendants took any action after the 2016 settlement to render Plaintiff "incapable of protecting his legal rights." *See Zumpano v. Quinn*, 6 N.Y.3d 666, 676–77 (N.Y. 2006).

24

In addition to the statute of limitations defense, Plaintiff's legal malpractice claims fails as a matter of law. First, while this claim is broadly alleged against all Law Firm Defendants, Plaintiff does not (because he cannot) allege any attorney-client relationship with LBBS Defendants and, accordingly, his legal malpractice cause of action should be dismissed against LBBS Defendants. Likewise, Plaintiff's legal malpractice claim against Cooper should be dismissed, as no facts are alleged of his involvement and, instead, Plaintiff only alleges that "Cooper is a partner at ZNC [and] involved in the firm's operations." (Yannucci Decl., Ex. A at § II., §§ 10). Such claims are insufficient to plead duty or provide any basis upon which to pierce the corporate veil. "[A] plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 439 (S.D.N.Y. 2024), *aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025).

Furthermore, Plaintiff's legal malpractice claim as to the remaining Law Firm Defendants relative to the Silver Hill Action should be dismissed as Plaintiff fails to plead facts tending to show: (1) he would have been able to obtain a higher settlement, successfully pursue unspecified viable claims, or otherwise obtain a better legal result but for ZNC's alleged negligence; and, (2) Plaintiff's legal posture would have been improved if the Silver Hill Action and other unspecified "cases" were merged or federalized due to conflicted "judges and counsel" in light of their "professional and membership organizations" and involvement with ZNC Defendants.[7] (Yannucci

---

[7] The Court in the Related Action dismissed Plaintiff's breach of fiduciary duty cause of action with prejudice, holding that Plaintiff failed to "identify what interests [the defendants] had in Silver Hill Hospital or Path Medical or how [they] benefited those entities at Plaintiff's expense." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL ECF Doc. No. 54 at p. 10).

Dec., Ex. A at § IV., ¶¶ 24-35).

Moreover, Plaintiff instant allegations should be summarily rejected and dismissed, as they are contradicted by his April 1, 2026 proposed Second Amended Complaint in the Related Action, by which he admits he "accepted" a "reduced settlement" in the Silver Hill Action, and there is not allegation of doing so based upon coercion. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 57)**.** "There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, No. 08-CV-588 KMK, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08–CV–0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true.") (alterations and internal quotation marks omitted).

As pertains to the PATH/Braverman Action, Plaintiff alleges that ZNC: (1) failed "to properly serve and issue claims against [defendants] Dr. Reddy, Dara Braverman, and 'Total Health Nutrients,' which caused the loss of viable claims and delayed [his] recovery; and (2) failed to consolidate the matter with the Silver Hill Action." (Yannucci Decl., Ex. A). Initially, because Plaintiff has already placed the PATH/Braverman Action at issue in the Related Action, such claims should be dismissed under the "prior action pending doctrine" which "prevents proceeding in federal court with a second lawsuit which is duplicative of an earlier pending lawsuit over the same subject matter." *Briarpatch Ltd. L.P. v. Thomas*, 265 F. Supp. 2d 219, 225 (S.D.N.Y. 2003).

Moreover, such claims should be dismissed as deficiently pled, as Plaintiff fails to articulate what claims were lost in the PATH/Braverman Action, what recovery was delayed, or how

26

consolidation would have resulted in a better legal result in the PATH/Braverman Action.

Plaintiff also asserts that his legal malpractice cause of action "covers multiple incidents, in multiple years, in multiple jurisdictions" and indicates that the departures alleged in his instant Complaint constitute "non-exhaustive categories." (Yannucci Decl., Ex A at § V., ¶ 97). Such claims should be dismissed as Plaintiff fails to specify any related attorney-client relationship, departure allegations, or damages. As memorialized by the May 4, 2015 retainer agreement, as well the dockets from *United States of America v. Ari Teman*, U.S.D.C., S.D.N.Y., 1:19-cr-00696-PAE and *Dr. Sandip Buch v. Ari Teman*, New York County Supreme Court, Index No. 157336/2018, ZNC was retained solely for the Path/Braverman and Silver Hill Actions, and did not have any attorney-client relationship with Plaintiff for any other legal proceedings referenced in the Complaint. (Yannucci Decl., Ex. A, F, G, & H).

Plaintiff also alleges that ZNC departed from the standard of care by "refusing to provide the entirety of Plaintiff's client files across multiple matters." (Yannucci Decl., Ex A at § V., ¶ 98). Plaintiff's legal malpractice claim relative to production of Plaintiff's client files should be dismissed with prejudice, as such clams are not only conclusory and deficiently pled, but ZNC, through LBBS Defendants, produced the files it maintained in the ordinary course of business as part of its representation of Plaintiff in the PATH/Braverman and Silver Hill Actions on July 8, 2026, pursuant to Court directives. (Yannucci Decl., Ex D). Plaintiff also fails to articulate any damages or adverse legal consequences that derived from any failure to obtain his client files, other than what has already been discussed and addressed, *infra*. Moreover, this allegation duplicative, as it is "premised on the same facts and seek[s]s identical relief" s his conversation and replevin claims, and "[d]uplicative claims are subject to dismissal." *Meskunas v. Auerbach*, No. 17 CV 9129 (VB), 2019 WL 719514, at *4 (S.D.N.Y. Feb. 20, 2019).

27

### I.  Eighth Cause of Action: Tortious Interference

Plaintiff claims that all "Defendants interfered with Plaintiff's ability to pursue claims and obtain testimony." (Yannucci Decl., Ex A § V., ¶ 102). While New York Court's recognize "tortious interference with contract" and "business relations" claims, there is no independently recognized cause of action sounding in "tortious interference." *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 149 (S.D.N.Y. 2023).

To assert a claim for tortious interference with contract, a plaintiff must plead: (i) the existence of a valid contract with a third party; (ii) the defendant's knowledge of that contract; (iii) the defendant's intentional and improper procurement of a breach of that contract; and (iv) the breach resulted in damages to the plaintiff. *See, e.g., Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001). A plaintiff "must allege each of these elements in a non-conclusory fashion." *Krys v. Sugrue (In re Refco Inc.)*, 2011 U.S. Dist. LEXIS 142291 at *84 (S.D.N.Y. 2011).

To plead a cause of action for tortious interference with prospective business relations, a plaintiff must allege: (i) business relations with a third party; (ii) the defendant's interference with those business relations; (iii) the defendants' use of wrongful means or acting with the sole purpose of harming the plaintiff; and (iv) injury to the business relationship. *See Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007), *aff'd*, 336 Fed. Appx. 21 (2d Cir. 2009).

Plaintiff fails to plead the requisite elements necessary to maintain a cause of action sounding in either tortious interference with a contract or business relationship, and he makes no attempt to specify who performed the alleged interference and when, or to articulate what claims or testimony could not be pursued, warranting dismissal of this cause of action.

### J.  Ninth Cause of Action: Unjust Enrichment

Plaintiff alleges that "Defendants were enriched at Plaintiff's expense through fees and

avoided liability." (Yannucci Decl., Ex A at § V., ¶ 104).

"To recover under a theory of unjust enrichment under New York law, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain." *Yodice v. Touro Coll. & Univ. Sys.*, 767 F. Supp. 3d 86, 94 (S.D.N.Y. 2025). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another'" and the "claim will not be supported if the connection between the parties is too attenuated*." In re Operations NY LLC.*, 490 B.R. 84, 99 (Bankr. S.D.N.Y. 2013). This claim must be dismissed as Plaintiff fails to specify which of the Law Firm Defendants were enriched by what fees or what liability was avoided.

Initially, because Plaintiff does not allege a sufficient relationship, transfer of fees, or other benefits received by LBBS Defendants at the expense of Plaintiff, this cause of action should be summarily dismissed as against LBBS Defendants. Next, the alleged avoidance of civil liability generally, without claiming that Law Firm Defendants received any tangible benefit, is not sufficient to maintain an unjust enrichment claim. Moreover, although Plaintiff alleges that ZNC Defendants received fees as part of its legal representation of Plaintiff, ZNC was entitled to same through Plaintiff's execution of the May 4, 2015 written retained agreement, which warrants dismissal of this claim. (Yannucci Dec., Ex F). "Courts have held that unjust enrichment [causes of action are] not available where there is a valid contract between the parties covering the same subject matter." *Allen v. J.P. Morgan Chase & Co.*, No. 06-CV-8712, 2009 WL 857555, at *15 (S.D.N.Y. Mar. 31, 2009); *Pu v. Russell Publ'g Grp., Ltd.*, No. 15-CV-3936 (VSB), 2016 WL 9021990, at *11 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x 96 (2d Cir. 2017) (dismissing unjust enrichment against  law firm, as there was "a valid […] Retainer Agreement" setting "compensation through a contingency arrangement.").

29

### K. Tenth Cause of Action: Injunctive Relief

Plaintiff seeks "immediate production of his client file" (Yannucci Decl., Ex A at § V., ¶ 107). Initially, this cause of action should be dismissed with prejudice because a "request for injunctive relief is not a separate cause of action" but rather the remedy sought for the legal wrongs alleged in" substantive causes of action. *Bordes v. Deveaux*, No. 23 CIV. 7430 (JPC) (JW), 2025 WL 831697, at *2 (S.D.N.Y. Mar. 14, 2025). Next, this cause of action should be dismissed as duplicative of his replevin claim because it is "premised on the same facts and seek[s]s identical relief" s his conversation and replevin claims, and "[d]uplicative claims are subject to dismissal." *Meskunas v. Auerbach*, No. 17 CV 9129 (VB), 2019 WL 719514, at *4 (S.D.N.Y. Feb. 20, 2019). Lastly, the requested relief should be dismissed as moot, as ZNC has already produced the file maintained in the regular course of business for its legal representation of Plaintiff in the PATH/Braverman and silver Hill Actions. (Yannucci Decl., Ex. D).

### L. Eleventh Cause of Action: Sherman Act (15 U.S.C. § 2)

To plead monopolization and attempted monopolization, respectively, a plaintiff must allege "the defendant: (1) possessed monopoly power in the relevant market; and (2) willfully acquired or maintained that power," and "(1) engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 603 (S.D.N.Y. 2025).

Despite alleging that that all Defendants engaged in "anticompetitive conduct" resulting in "coercive settlement practices" and "deprivation of the full value of Plaintiff's legal claims," such claims only concern Insurer Defendants' alleged "market power" relative to "its provision of insurance coverage." (Yannucci Decl., Ex A at § V., ¶ 110-113, 117). As such, this cause of action should be dismissed with prejudice against Law Firm Defendants because Plaintiff does not allege

30

that said Defendants: (1) are professional liability insurers or possess related market power[8];  (2) possess, attempted to obtain, or have a dangerous probability of achieving monopoly power; or (3) engaged in willful, predatory, or anticompetitive conduct relative to the insurance market.

In addition, this claim should be dismissed with prejudice as against Law Firm Defendants because Plaintiff lacks "antitrust standing," which is "a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the court] must dismiss it as a matter of law." *Gatt Commc'ns Inc. v. PMC Assocs. L.L.C.*, 711 F.3d 68, 75 (2d Cir.2013) (internal quotations omitted); *see Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 290–95 (2d Cir.2006) (dismissing a complaint under Rule 12(b)(6) for lack of antitrust standing). "A court must answer three separate questions to determine if plaintiffs have antitrust standing: have plaintiffs alleged injury in fact; have they alleged antitrust injury, and are they efficient enforcers of the antitrust laws?" *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 357 (S.D.N.Y. 2016)."

Here, Plaintiff lacks antitrust standing because he fails to allege facts tending to show: (1) he "suffered an antitrust injury," as the alleged anticompetitive insurer practices are too far removed from claims that Plaintiff was coerced to settle civil litigation in 2016; and (2) Plaintiff is not an "efficient enforcer" of antitrust laws, as Plaintiff does not allege to be a purchaser or supplier of professional liability insurance, and his claimed injury is only speculatively and indirectly related competitive insurer practices. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 220 (S.D.N.Y. 2019); *see MacDermid Printing Solutions LLC v. Cortron Corp.*, 833 F.3d 172, 187 (2d Cir. 2016) ("a plaintiff must show more than its own business suffered; it must ultimately show that the challenged action harmed consumers.").

---

[8] "A firm possesses market power when it has the ability to raise price by restricting output." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 377 (S.D.N.Y. 2016).

31

Lastly, "[t]he statute of limitations for antitrust claims is four years from the date of accrual," which is tolled from each injury "regardless of the plaintiff's knowledge of the alleged illegality." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 525 (S.D.N.Y. 2018). Because Plaintiff's vague and unspecified damages seemingly concern the alleged lost value of the purportedly coerced 2016 settlement in the Silver Hill Action, and the Complaint was filed on April 27, 2026, Plaintiff's instant claims are therefore time-barred.

As such, Plaintiff's 15 U.S.C. § 2 Sherman Act claims must be dismissed with prejudice.

**POINT II:    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED BASED UPON THE FUGITIVE DISENTITLEMENT DOCTRINE**

If this Court declines to dismiss Plaintiff's Complaint or any particular cause of action against Law Firm Defendants based upon the above-detailed grounds, it is respectfully requested the Complaint be dismissed pursuant to the fugitive disentitlement doctrine.

When a "defendant chooses to become a fugitive from justice rather than submit to a federal court's jurisdiction, the court has the inherent power to disentitle the defendant from 'call[ing] upon the resources of the [c]ourt.' *United States v. Bardakova*, 145 F.4th 231, 240 (2d Cir. 2025), *cert. denied sub nom. Bardakova v. United States.*, 146 S. Ct. 1648, 224 L. Ed. 2d 14 (2026) (internal citations omitted). "A district court must complete a two-step analysis to determine whether a defendant is a fugitive who may be disentitled from relief in federal court": (1) "the court must decide whether the defendant is, in fact, a fugitive"; and (2) if disentitling the fugitive "would serve the [fugitive disentitlement] doctrine's objectives." *United States v. Bardakova*, *supra,* 145 F.4th at 240. Such objectives include: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *United States v. Bescond*,

32

24 F.4th 759, 767, 771 (2d Cir. 2021).

The first step of this analysis is satisfied. By July 7, 2025 Order, the Court in *United States of America v. Ari Teman*, United States District Court, Southern District of New York, Case No. 1:19-cr-00696, declared Plaintiff "a fugitive under Second Circuit Case law" for his failure to abide by Court imposed travel restrictions and conditions following his release from prison after being convicted by a jury of bank and wire fraud. (Yannucci Decl., Ex. H).

Regarding the second step of this analysis, Plaintiff admits in his Complaint that he "[c]urrently [resides] in Tel Aviv, Israel." (Yannucci Decl., Ex. A at p. 21). Moreover, the Court in *United States of America v. Ari Teman*, by way of its April 3, 2026 Order, denied Plaintiff's motion to vacate his conviction, grant a new trial, and eliminate his fugitive status as "frivolous and vexatious" and determined that the "fugitive disentitlement doctrine" applied in denying Plaintiff's application. (*Id*.).

Here, this Court should utilize its inherent power to dismiss Plaintiff's Complaint pursuant to the fugitive disentitlement doctrine, as: (1) it will be difficult to enforce any Court Orders in this proceeding that may be rendered against Plaintiff; (2) Plaintiff should be penalized and parties should be disincentivized against pursuing frivolous, burdensome, and harassing civil litigation while flooding the criminal legal process as an overseas fugitive; and (3) if Plaintiff remains a fugitive and refuses to return to the United States, Law Firm Defendants will undoubtedly incur prejudice in its ability to prepare defenses, as Law Firm Defendants will be unable compel Plaintiff to appear in New York for deposition, trial, or an independent medical examination in this action.

As such, dismissal pursuant to the fugitive disentitlement doctrine is appropriate.

33

## **CONCLUSION**

Law Firm Defendants respectfully request that this Court issue an Order: (a) dismissing Plaintiff ARI BARUCH TEMAN's ("Plaintiff") Complaint in its entirety against Law Firm Defendants pursuant to Fed R. Civ. P. 12(b)(6) and 9(b) and the prior action pending doctrine; or, in the alternative, (b) dismissing Plaintiff's Complaint pursuant to the fugitive disentitlement doctrine; and (c) granting such other and further relief as this Court deems just and proper.

/s/ Cristina Yannucci, Esq.
_____
CRISTINA YANNUCCI, ESQ.

34

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1 of the Local Rules of the Southern Districts of New York, Hon. Lewis J. Liman, D,J.'s Individual Practice Rule 2.I. for Civil Cases, and this Court's July 9, 2026 Order (ECF Doc. No. 41), that the foregoing

**MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LBBS AND ZNC DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

was prepared on a computer using Microsoft Office 365.

A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman.

Point size: 12 (10 for footnotes)

Line spacing: Double.

Page Count: That the total page count is less than 35 pages, exclusive of the caption, table of contents, table of authorities, signature black, and required certificates.

Dated: New York, New York
        July 17, 2026

/s/ Cristina Yannucci, Esq.

CRISTINA YANNUCCI, ESQ.

35

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 17, 2026, copies of the following documents:

**(1) NOTICE OF MOTOIN; (2) DECLARATION OF CRISTINA YANNUCCI, ESQ. SUBMITTED IN SUPPORT OF LBBS AND ZNC DEFENDANTS' MOTION TO DISMISS THE COMPLAINT; AND (3) MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LBBS AND ZNC DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

were served upon all parties and counsel of record via ECF.


Dated: New York, New York
       July 17, 2026


/s/ Cristina Yannucci, Esq.
_____
CRISTINA YANNUCCI, ESQ.

36