UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

ARI BARUCH TEMAN

Docket No.: 1:26-cv-03517-LJL

Plaintiff,

-against-

MEDPRO GROUP INC.; ATTORNEY PROTECTIVE; SCOTT PATRICK; LEWIS BRISBOIS BISGAARD & SMITH LLP; CRISTINA YANNUCCI; SAM COHEN; ZELDES NEEDLE COOPER LLP; ROBERT S. COOPER; MAXIMINO MEDINA; JEREMY VIRGIL; DANAGER LAGNESE, P.C.; SILVER HILL HOSPITAL, INC.,

Defendants.

---------------------------------------------------------------------X

---

**DEFENDANTS MEDPRO GROUP INC., SOMERSET SERVICES, LLC d/b/a ATTORNEY PROTECTIVE i/s/h/a ATTORNEY PROTECTIVE, and SCOTT PATRICK's MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Max Gershenoff
Amanda B. Drantch
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Attorneys for Defendants
MedPro Group Inc., Somerset Services LLC d/b/a Attorney Protective i/s/h/a Attorney Protective and Scott Patrick

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF ALLEGED FACTS AND FACTS SUBJECT TO JUDICIAL NOTICE ........ 2

ARGUMENT ........ 8

I. The Standards on This Motion ........ 8

II. Plaintiff Fails to State a Claim for Aiding and Abetting Conversion or Aiding and Abetting Breach of Fiduciary Duty ........ 10

III. Teman's Claims Against the MedPro Defendants Also Should be Dismissed Pursuant to the Fugitive Disentitlement Doctrine ........ 19

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anwar v. Fairfield Greenwich Ltd.,
728 F.Supp.2d 372 (S.D.N.Y. 2010)....................14

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................8, 9, 16

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006)....................8, 9, 16

Berdeuax v. OneCoin Ltd.,
561 F.Supp.3d 379 (S.D.N.Y. 2021)....................14

Berman v. Morgan Keegan & Co.,
2011 U.S. Dist. LEXIS 27867 (S.D.N.Y. 2011)....................10, 11

Berman v. Morgan Keegan & Co.,
455 Fed. Appx. 92 (2d Cir. 2011)....................14, 17

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
479 F.Supp.2d 349 (S.D.N.Y. 2007)....................10

Gateguard Inc. v. Goldmont Realty Corp.,
2026 U.S. Dist. LEXIS 98835 (S.D.N.Y. 2026)....................8

Kaufman v. Cohen,
307 A.D.2d 113 (N.Y. 1st Dep't 2003)....................14, 16

Kirschner v. Bennet,
648 F.Supp.2d 525 (S.D.N.Y. 2009)....................10

Lee v. Mondelez Int'l, Inc.,
637 F. Supp. 3d 116 (S.D.N.Y. 2022)(Liman, J.)....................9

Lihua Gan v. Gsuig Real Est. Member LLC,
797 F. Supp. 3d 69 (E.D.N.Y. 2025)....................14, 17

Manus v. Pincione,
2026 U.S. Dist. LEXIS 1127 (S.D.N.Y. 2026)....................17

Meisel v. Grunberg,
651 F.Supp.2d 98 (S.D.N.Y. 2009)....................11, 14, 16

Ortega-Rodriguez v. United States,
507 U.S. 234 (1993)....9

Qian Gao v. Gonzales,
481 F.3d 173 (2d Cir. 2007)....21

Regions Bank v. Wieder & Mastroianni, P.C.,
526 F. Supp. 2d 411 (S.D.N.Y. 2007), aff'd, 268 F. App'x 17 (2d Cir. 2008)....17

Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP,
689 N.E.2d 879 (N.Y. 1997)....4, 12, 13

SPV OSUS, Ltd. v. UBS AG,
882 F.3d 333 (2d Cir. 2018)....10

Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC,
2018 U.S. Dist. LEXIS 54558....11

Teman v. Biale,
2025 U.S. Dist. LEXIS 207542 (S.D.N.Y. 2025)....9

Teman v. Biale, et al.,
S.D.N.Y. Case No. 1:25-cv-05454-MKV....8, 9, 19, 20

Teman v. Zeldes Needle Cooper LLP, et al.,
S.D.N.Y. Case No. 1:24-cv-09830-LJL....2, 13

United States v. Awadalla,
357 F.3d 243 (2d Cir. 2004)....9

United States v. Bescond,
24 F.4th 759 (2d Cir. 2021)....9

United States v. Teman,
465 F. Supp. 3d 277 (S.D.N.Y. 2020)....7, 19

United States v. Zedner,
555 F.3d 68 (2d Cir. 2008)....9

USA v. Teman,
S.D.N.Y. Case No. 1:19-cr-00696-PAE....7, 8, 19

Yen Hwa Huang v. Hong Kong & Shanghai Banking Corp.,
2022 U.S. Dist. LEXIS 163235 (S.D.N.Y. 2022)....11

Zamora v. JPMorgan Chase Bank, N.A.,
2015 U.S. Dist. LEXIS 102740 (S.D.N.Y. 2015)....10

**PRELIMINARY STATEMENT**

Defendants MedPro Group Inc. ("MedPro"), Somerset Services LLC d/b/a Attorney Protective i/s/h/a Attorney Protective ("Attorney Protective"), and Scott Patrick ("Patrick") (collectively the "MedPro Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Ari Baruch Teman's ("Plaintiff" or "Teman") claims against them pursuant to Fed. R. Civ. P. 12(b)(6) and the Court's inherent power.

Teman – whose status as a fugitive from justice is subject to judicial notice – initially asserted a laundry-list of defective and implausible RICO, Sherman Act, and state law claims against the MedPro Defendants, based on vague and conclusory allegations to the effect that: (i) Defendants Zeldes Needle Cooper LLP ("ZNC"), Jeremy Virgil ("Virgil"), Maximino Medina, and Robert Cooper (collectively the "ZNC Defendants") – a law firm and its associated attorneys – represented Teman in a New York state court medical malpractice action, in which they supposedly "suppressed" Teman's claims, "coerced" Teman to accept an undervalued settlement, refused to produce Teman's "client file", and engaged in related misconduct; and (ii) Attorney Protective was ZNC's professional liability insurer, and – together with Patrick, its president, and MedPro, its parent company – somehow, through some unspecified means, participated in the ZNC Defendants' supposed suppression of Teman's claims, coercion of Teman's settlement, and refusal to produce Teman's client file.

Now, after forcing the MedPro Defendants to incur the expense of a motion to dismiss the litany of defective claims in his initial Complaint, Teman has filed an Amended Complaint in which he asserts only two claims against the MedPro Defendants, for aiding and abetting breach of fiduciary duty and aiding and abetting conversion.

As discussed herein, Teman's aiding and abetting claims against the MedPro Defendants are defective and subject to dismissal for multiple, independent reasons, and the dismissal should be

with prejudice considering that Teman clearly is unable – even with this second bite at the apple – to state any viable cause of action against the MedPro Defendants.

What is more, Teman's fugitive status will materially prejudice the MedPro Defendants' ability to defend against his frivolous and vexatious claims, and dismissal of Teman's claims clearly would serve the other purposes of the fugitive disentitlement doctrine. Accordingly, even if Teman's conclusory allegations were sufficient to state any claims against the MedPro Defendants – and they are not – the Court should exercise its discretion to dismiss under the fugitive disentitlement doctrine.

## STATEMENT OF ALLEGED FACTS AND FACTS SUBJECT TO JUDICIAL NOTICE

To the extent that Teman's claims pertain to the MedPro Defendants, his allegations – and related facts that are subject to judicial notice – boil down to the following: Teman retained ZNC to represent him in several matters over the course of 2014-2023, and contends that ZNC and its related attorneys engaged in wrongdoing and misfeasance in connection with the engagements. See ECF 51, ¶¶ 14, 29-61.

Teman alleges that, on multiple occasions beginning in 2022 and 2023, he demanded a copy of his client file from ZNC and its attorneys, but they failed to return his complete client file and thereby breached their fiduciary duties to him and converted his property. See ECF 51, ¶¶ 62, 98-105. On December 19, 2024, Teman sued ZNC and Virgil, among others, in an action entitled Teman v. Zeldes Needle Cooper LLP, et al., S.D.N.Y. Case No. 1:24-cv-09830-LJL, which has been marked as related to the present case (the "Related Action"). In the Related Action, Teman contends – among other things – that ZNC and Virgil committed legal malpractice in connection with one of the cases in which they represented him. See, e.g., Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, at ECF 35.

According to Teman, Attorney Protective administers the professional liability insurance program under which ZNC's professional liability insurance policy was issued, services that

policy, and makes claims handling decisions under the policy. See ECF 51, ¶ 22. Teman further alleges that Patrick is Attorney Protective's President and Chief Executive Officer, and that MedPro is Attorney Protective's corporate parent. Id., ¶¶ 23-24. Teman goes on to allege that Attorney Protective – in its capacity as ZNC's professional liability insurer – appointed Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") to defend ZNC and Virgil in the Related Action. See ECF 51, ¶ 25.

On March 8, 2026, Teman alleges that he sent Patrick a "notice captioned to the Related Action and policy exposure", though the Amended Complaint does not specify the contents of this notice. See ECF 51, ¶ 75. Then, on some unspecified dates on or after March 8, 2026, Teman alleges that he sent Patrick "service copies" of some unspecified "discovery requests". Id.

On April 11, 2026, Teman filed a motion in the Related Action to compel ZNC and Virgil to provide his "complete client file" for all matters in which ZNC and Virgil had represented him. See Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, at ECF 60. Then, on April 16, 2026 – even though Teman's motion to compel production of his client file in the Related Action was still pending before the Court – Teman separately "transmitted a formal written demand" for his "Complete Client File" to "ZNC's counsel of record" (i.e., Lewis Brisbois), to Virgil, and to "former ZNC attorneys", with copies to Attorney Protective and Patrick. See ECF 51, ¶¶ 22, 24, 62, 75.

On April 21, 2026, this Court denied Teman's motion to compel in the Related Action, finding that Teman had made the motion while a stay of discovery was in place in the Related Action. See Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, at ECF 70. As the Court noted in its order denying Teman's motion to compel:

> Plaintiff is correct that a client presumptively has full access, with narrow exceptions, to the entire attorney's file in a represented matter, upon termination of the attorney-client relationship. … However, Plaintiff cannot circumvent the stay of discovery in this matter by requesting the Court's intervention in obtaining his client file. That Plaintiff may be

> entitled to his file as a former client does not mean Plaintiff is entitled to an order from this Court compelling production during a stay in discovery. A client who seeks the client file from an attorney who represented him may, upon denial of such a request, commence a special proceeding seeking to recover the file. … A client is not entitled, in any action in which he may be participating regardless of the relevance of the file, to an order compelling production of the file. … Plaintiff's motion to compel is denied.

See id. (Internal quotations/citations omitted).

Then, on April 23, 2026, Teman alleges that Cristina Yannucci ("Yannucci") – a Lewis Brisbois attorney who is counsel for the ZNC Defendants in the Related Action – sent him an e-mail in which she asked him to identify the client files he was seeking, and told him that "[i]n response, ZNC will assess the cost of such production and provide you with an estimate and thereafter an invoice for same, payment of which will be required in accordance with Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP, 689 N.E.2d 879, 881 (N.Y. 1997) ('unless a law firm has already been paid for assemblage and delivery of documents to the client, performing that function is properly chargeable to the client under customary fee schedules of the firm, or pursuant to the terms of any governing retainer agreement')." See ECF 51, ¶ 64. Teman notes that Yannucci copied Patrick, Attorney Protective, and "MedPro's chief executive and compliance functions" on her e-mail, and alleges that this is somehow "evidence" that the MedPro Defendants were "part of the decision-making structure" with respect to the production of his client file. See id., ¶¶ 64-65.

In this context, though Teman himself alleges that Yannucci's April 23, 2026 e-mail "is now in the record of this action as an exhibit to defense counsel's own declaration" at ECF 49-5, (see ECF 51, ¶ 64), Teman coyly omits to mention that Yannucci's April 23, 2026 e-mail was a "reply all" response to a previous April 22, 2026 e-mail that Teman himself sent to Patrick, Attorney Protective, and MedPro, in which Teman copied Yannucci and made various threats regarding his client file. See ECF 49-5, pp. 3-4. In other words, Teman copied Yannucci on an

April 22, 2026 e-mail he unilaterally sent to the MedPro Defendants in which he made threats regarding the production of his client file, and then – because Yannucci copied the MedPro Defendants on her April 23, 2026 "reply all" response – contends that the MedPro Defendants were somehow involved in the ZNC Defendants' decision-making regarding the production of his client file.[1]

Teman further alleges that – on April 28-29, 2026 – he sent Patrick a litigation hold notice regarding the present action. See id., ¶ 75.

On May 6, 2026, Teman contends that he sent "communications addressed to Patrick, to MedPro's chief executive at his MedPro address, and to MedPro's legal compliance function", though Teman does not specify the content of these "communications". Id. Teman goes on to allege that – between April and June 2026 – he sent e-mails to Patrick and MedPro personnel stating that ZNC was required to provide him with his client file, that Lewis Brisbois – counsel for ZNC in the Related Action – was "delaying and conditioning its return", and demanding that Attorney Protective and MedPro "stop funding the work directed at continued retention of the file". See id., ¶ 76.

Teman alleges that he did not receive any responses to the aforementioned communications that he sent to the MedPro Defendants over the course of March-June 2026. See ECF 51, ¶ 77. Teman goes on to contend that – beginning in late May 2026 – the MedPro Defendants placed a block on his e-mails, in an effort to prevent Teman from communicating directly with them, moving forward. See ECF 51, ¶ 78. Though Teman goes on at some length in a strained attempt

[1] The Court may consider Teman's April 22, 2026 e-mail to the MedPro Defendants in connection with this motion to dismiss because it is incorporated by reference in Teman's Amended Complaint and is integral to his Amended Complaint. For example: (i) in his Amended Complaint, Teman explicitly references Yannucci's April 23, 2026 response to his April 22, 2026 e-mail, and cites to the filing in this case that contains both his April 22, 2026 e-mail and Yannucci's April 23, 2026 response (see ECF 51, ¶ 64, citing ECF 49-5); and (ii) Teman also alleges in his Amended Complaint that he sent an April 22, 2026 e-mail to Patrick providing "notice[] of ongoing exposure and opportunity to resolve" (see ECF 51, ¶ 75).

to depict this as somehow improper, the Court may take notice of the fact that – by this point – Teman had already filed the present action against the MedPro Defendants, and the MedPro Defendants were represented by counsel. See ECF 1, 5-6. In this context, it is hardly inappropriate for defendants in a civil case to decline to receive direct communications from a plaintiff, when – as in this case – they are represented by counsel.

Teman also contends that the MedPro Defendants had "substantial practical control over" the ZNC Defendants' defense in the Related Action, because they had the right to select the ZNC Defendants' counsel in the Related Action, and financed the ZNC Defendants' defense of the Related Action. See ECF 51, ¶¶ 79-80. Based on these allegations, Teman proceeds to contend – in conclusory fashion – that a supposed "reasonable inference" can be made that the MedPro Defendants "knowingly enabled, authorized, or ratified the continuing deprivation" of his client file. See id., ¶ 81. At bottom, Teman contends that the MedPro Defendants somehow "could have required" the ZNC Defendants to return his client file – evidently by refusing to finance the continued defense of Teman's claims against the ZNC Defendants in the Related Action, and by terminating the ZNC Defendants' defense counsel in the Related Action – but declined to do so in an attempt to thwart Teman's malpractice claims against the ZNC Defendants, and thereby avoid Attorney Protective's exposure to Teman's claims in its capacity as ZNC's professional liability insurer. See id., ¶¶ 81-84, 135.

At the same time, however, Teman concedes that – on July 8, 2026 – ZNC produced "a portion of" Plaintiff's client file, although he maintains that the production was "materially incomplete." See ECF 51, ¶¶ 85-86. Teman further alleges that ZNC made a supplemental production on or about July 17, 2026, although Plaintiff still maintains that the production was deficient for a multitude of reasons. Id., ¶¶ 91-92. Teman does not allege any facts to suggest that

the MedPro Defendants had possession of his client file, owed Teman an independent duty to produce any portion of his client file, had any role in instructing ZNC to withhold any portion of his client file, had any role in instructive ZNC to condition its production on payment, or that Teman directed any formal discovery demands or subpoenas to the MedPro Defendants to produce his client file (which in any case they do not in fact possess).

Based on these allegations, Teman asserts claims against the MedPro Defendants for aiding and abetting ZNC and Virgil's supposed breaches of fiduciary duty, and aiding and abetting the supposed conversion of his client file. See ECF 51, ¶¶ 132-139.[2]

In this context, the Court may take judicial notice of the fact that Teman is a convicted felon and fugitive from justice. In January 2020, Teman was convicted in this court of two counts of wire fraud and two counts of bank fraud. See USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 92. Teman's convictions stemmed from a scheme in which he created hundreds of thousands of dollars worth of unauthorized checks drawn on the bank accounts of several former customers of his home security company, with whom he was feuding, and then deposited the checks into accounts under his control. See United States v. Teman, 465 F. Supp. 3d 277, 284-291 (S.D.N.Y. 2020)(recounting these events).

Thereafter, Teman was sentenced, among other things, to serve a prison term of one year and a day, followed by three years of supervised release. USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 253. While on supervised release, Teman was authorized to travel to Israel for a limited period but failed to return to the United States by June 1, 2025, as directed by the court. See id., at ECF 578, and Docket Sheet, passim. As a result, Teman has been a fugitive since June 1, 2025. See id., at ECF 567, 569, 575, 578, and Docket Sheet, passim.

[2] Though Teman asserts his aiding and abetting breach of fiduciary duty and aiding and abetting conversion claims in a single count of his Amended Complaint, they appear to be two separate causes of action.

The Court also may take notice of Teman's history of frivolous and vexatious conduct in court proceedings. Strictly by way of example, Teman: (i) filed papers on the public docket in his criminal case in which he insinuated that the presiding judge gave a sexually-transmitted disease to a child (see USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 585); (ii) made numerous other pro se filings in his criminal case that were found by the court to be frivolous and/or vexatious (id., at ECF 312, 488, 514, 581, 586, 588); (iii) filed a pro se lawsuit against – among others – the presiding judge and prosecutors in his criminal case, containing a litany of scandalous, conclusory, and implausible allegations, which the court stayed under the fugitive disentitlement doctrine (see Teman v. Biale, et al., S.D.N.Y. Case No. 1:25-cv-05454-MKV, at ECF 1, 20, 25); (iv) filed a pro se motion in another civil case in this District which the court found to be frivolous and to contain false representations (see Gateguard Inc. v. Goldmont Realty Corp., 2026 U.S. Dist. LEXIS 98835 at *1-*3 (S.D.N.Y. 2026)); and (v) filed a motion to disqualify Yannucci as counsel in the present case, which this Court denied as frivolous (see ECF 34, p. 4).[3]

## ARGUMENT

### I. The Standards on This Motion

As this Court has noted:

> To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006)). "A claim has facial plausibility when the plaintiff pleads factual

[3] Indeed, it appears that Teman filed this action as a vexatious attempt to open up a "second front" as to discovery disputes regarding his "client file" in the Related Action. As discussed above, on April 21, 2026 this Court denied Teman's motion to compel in the Related Action, finding that Teman had made the motion while a stay of discovery was in place. See id., at ECF 70. Then, on April 27, 2026 – less than a week after the Court denied Teman's motion to compel in the Related Action – Teman commenced the present case, in which the centerpiece of his claims is that Defendants, including the ZNC Defendants and Lewis Brisbois, their counsel in the Related Action, have unlawfully withheld production of his "client file". This, despite the fact that: (i) Yannucci responded to Teman's April 22, 2026 demand for his client file on April 23, 2026, and indicated that ZNC would produce his client file if he identified the particular materials he was seeking and paid the costs of production (see ECF 51, ¶ 64:); and (ii) since that time ZNC has produced what appears to be at least a substantial portion (and perhaps all) Teman's client file, albeit not to Teman's subjective satisfaction (id., ¶¶ 91-92).

> content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "does not impose a probability requirement at the pleading stage" but rather "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Twombly, 550 U.S. at 556. That is, a complaint need not allege "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

Lee v. Mondelez Int'l, Inc., 637 F. Supp. 3d 116, 122-123 (S.D.N.Y. 2022)(Liman, J.).

What is more, and "[a]s the Supreme Court and the Second Circuit have explained, a 'fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim.'" Teman v. Biale, 2025 U.S. Dist. LEXIS 207542 at *2 (S.D.N.Y. 2025), quoting United States v. Zedner, 555 F.3d 68, 76 (2d Cir. 2008) and Ortega-Rodriguez v. United States, 507 U.S. 234, 246 (1993). In this context, federal courts have the discretion to dismiss civil actions with prejudice under the fugitive disentitlement doctrine, or stay the actions, where there is a sufficient nexus between the plaintiff's absence from custody and the civil case. See, e.g., Biale, supra; United States v. Awadalla, 357 F.3d 243, 249, fn. 5 (2d Cir. 2004).

"To exercise its discretion under the fugitive disentitlement doctrine, the Court must apply a two-step test." Biale, supra, citing United States v. Bescond, 24 F.4th 759, 771 (2d Cir. 2021). The first step is the determination that "the litigant is a fugitive." Id. The second step requires the Court to determine whether disentitlement "would serve the doctrine's objectives" Id. In this respect, "the Court must consider whether disentitlement would serve the purposes of: 1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." Id. (internal quotations/citations omitted).

Against the backdrop of these standards, and as discussed more fully below, Plaintiffs' aiding and abetting claims against the MedPro Defendants lack merit. In light of Teman's inability – even with a second bite at the apple – to plead any viable claims against the MedPro Defendants, and the certain prejudice that the MedPro Defendants will face in this action as the result of Teman's fugitive status, Teman's claims should be dismissed with prejudice.

## II. Plaintiff Fails to State a Claim for Aiding and Abetting Conversion or Aiding and Abetting Breach of Fiduciary Duty

To state a claim for aiding and abetting conversion or aiding and abetting breach of fiduciary duty, a plaintiff must allege: (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. See, e.g., Berman v. Morgan Keegan & Co., 2011 U.S. Dist. LEXIS 27867 at *1 (S.D.N.Y. 2011); see also Zamora v. JPMorgan Chase Bank, N.A., 2015 U.S. Dist. LEXIS 102740 at *6 (S.D.N.Y. 2015); SPV OSUS, Ltd. v. UBS AG, 882 F.3d 333, 345 (2d Cir. 2018)(noting that the elements of a claim for aiding and abetting conversion and a claim for aiding and abetting breach of fiduciary duty are substantially similar).

Further, "to survive a motion to dismiss, the [plaintiff] must allege facts giving rise to a strong inference of defendant's actual knowledge of the underlying harm, or the conscious avoidance of the same." Kirschner v. Bennet, 648 F.Supp.2d 525 (S.D.N.Y. 2009). "Conscious avoidance … occurs when it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it to be able to deny knowledge." Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F.Supp.2d 349 (S.D.N.Y. 2007).

Here, however, Teman has not adequately alleged that the MedPro Defendants either had actual knowledge of any conversion or breaches of fiduciary duty, or provided substantial assistance to any conversion or breaches of fiduciary duty.

First, in order to state a claim against the MedPro Defendants for aiding and abetting conversion or breach of fiduciary duty, Teman would have to muster some plausible facts to demonstrate that the MedPro Defendants actually knew that ZNC's conduct constituted unlawful conversion or breach – not merely that Teman asserted that it did. See, e.g., Yen Hwa Huang v. Hong Kong & Shanghai Banking Corp., 2022 U.S. Dist. LEXIS 163235 at *13 (S.D.N.Y. 2022)("In order to plausibly allege actual knowledge, a plaintiff must allege facts indicating that the alleged aider and abettor had direct and clear knowledge of the wrongdoing – mere notice or unreasonable awareness is not enough. … Although such knowledge may be averred generally at the motion to dismiss stage, … it must be supported by allegations of specific facts that give rise to a strong inference of actual knowledge of the underlying tort.")(Internal quotations/citations omitted); Berman, supra; Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC, 2018 U.S. Dist. LEXIS 54558 at * 30-*32 ("In New York, the knowledge requirement cannot be satisfied by alleging constructive knowledge."); Meisel v. Grunberg, 651 F.Supp.2d 98, 115 (S.D.N.Y. 2009)("To participate knowingly means to have actual knowledge, as opposed to merely constructive knowledge. . . and a plaintiff may not merely rely on conclusory or sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty.")(internal quotations/citations omitted).

Here, however, Teman pleads no facts to plausibly suggest – much less demonstrate – that the MedPro Defendants had actual knowledge of any conversion or breach of fiduciary duty. Teman's allegations that the MedPro Defendants received or were copied on Teman's demands

for his client file are insufficient to plead the MedPro Defendants' actual knowledge. At most, they establish that Teman told the MedPro Defendants on April 22, 2026 that he believed ZNC was obligated to provide him with his client file, that Yannucci responded on April 23, 2026 by asking Teman to identify the specific materials he sought and by noting that Teman would be responsible to pay the cost of production pursuant to the Sage Realty decision, and that ZNC subsequently produced Teman's file, albeit not to Teman's subjective satisfaction.

In this context, a defendant's awareness that two parties dispute entitlement to property, the manner in which the property should be conveyed, or conditions on the conveyance of the properrty does not establish the defendant's knowledge that one party is wrongfully exercising dominion over the property and thereby committing the tort of conversion, or that one party is in breach of its fiduciary duties.

Indeed, Teman's Amended Complaint itself describes a dispute with ZNC concerning the scope and manner of production of the client file. It alleges that ZNC's counsel-imposed identification and payment conditions, excluded categories of documents, and ultimately made partial productions. See, e.g., ECF 51, ¶¶ 64, 70, 135-136. Those allegations establish a dispute concerning the legal obligations governing production. They do not establish – or even plausibly suggest – that the MedPro Defendants actually knew that ZNC's position was tortious.

Teman tries to plead around this defect in his claim by pointing to the Court's April 21, 2026 order in the Related Action, in which the Court "confirmed" that he had a presumptive right to the production of his client file. See ECF 51, ¶¶ 54-55, 134-135. In fact, the pertinent language in the Court's April 21, 2026 order in the Related Action was that "a client presumptively has full access, with narrow exceptions, to the entire attorney's file in a represented matter, upon termination of the attorney-client relationship." See Related Action, S.D.N.Y. Case No. 1:24-cv-

09830-LJL, at ECF 70. In this context, Teman overlooks the fact that a "presumptive" right subject to "narrow exceptions" is not an unqualified right. Strictly by way of example, the Court cited Sage Realty in its April 21, 2026 order, which stands not only for the proposition that a client has a "presumptive" right to his client file subject to "conditions", but also specifies that "[a]s a general proposition, unless a law firm has already been paid for assemblage and delivery of documents to the client, performing that function is properly chargeable to the client under customary fee schedules of the firm, or pursuant to the terms of any governing retainer agreement."

In short, the MedPro Defendants' supposed knowledge that a client has a "presumptive" right to obtain his file, subject to exceptions, and indeed subject to payment of costs, is not sufficient to plead that the MedPro Defendants knew that Teman had any unqualified right to the production of his client file, that ZNC's failure or refusal to turn over the file constituted conversion or breach of fiduciary duty, or that any dispute concerning the scope, format, timing, or completeness of any such production constituted conversion or breach of fiduciary duty. That distinction is particularly important because Teman's allegations concern not simply an outright refusal to turn over the client file, but disputes concerning categories of documents, native files, custodians, repositories, identification requirements, vendor costs, and partial productions. See ECF 51, ¶¶ 69-74, 135-136.

Teman also tries to plead around this defect by alleging that the MedPro Defendants are specialists in lawyers' professional liability and therefore could not plausibly disclaim knowledge of an attorney's obligation to return a former client's file. See ECF 51, ¶ 135. However, while a defendant's professional sophistication may support an inference that it understood a legal rule, it does not establish actual knowledge that a particular insured (in this case, ZNC) violated that rule or that the violation constituted conversion or breach of fiduciary duty. Otherwise, every

professional liability insurer that receives notice of a claim against an attorney would necessarily have actual knowledge that the attorney committed the alleged tort. That is precisely the kind of inference New York's actual knowledge requirement does not permit. See Berdeuax v. OneCoin Ltd.,, 561 F.Supp.3d 379, 412 (S.D.N.Y. 2021)("Allegations that the defendant should have known of the conduct are insufficient to raise an inference of actual knowledge")(internal quotations omitted)(citing Anwar v. Fairfield Greenwich Ltd., 728 F.Supp.2d 372, 442 (S.D.N.Y. 2010)).

In this respect, the Court need not decide on this motion to dismiss whether ZNC ultimately violated its obligations to turn over Teman's entire client file. The point is narrower: Teman does not plead facts permitting the reasonable inference that the MedPro actually knew that ZNC's conduct constituted the torts of conversion or breach of fiduciary duty.

Second, Teman does not plead any facts to demonstrate that the MedPro Defendants provided substantial assistance to ZNC's supposed conversion or breach of fiduciary duty. In this context, "substantial assistance" exists "where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing act when required to do so enables the [tort] to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." Berman v. Morgan Keegan & Co., 455 Fed. Appx. 92, 96 (2d Cir. 2011)(internal quotations/citation omitted); see also Lihua Gan v. Gsuig Real Est. Member LLC, 797 F. Supp. 3d 69, 94 (E.D.N.Y. 2025)(same). Moreover, in the context of a claim for aiding and abetting, "[i]naction constitutes substantial assistance only where the alleged aider and abettor owes a fiduciary duty directly to the Plaintiff." Meisel, supra; see also Kaufman v. Cohen, 307 A.D.2d 113, 126 (N.Y. 1st Dep't 2003)("[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.")

In the present case, however, Teman's Amended Complaint is devoid of any plausible allegations of substantial assistance. At most, Teman alleges that – after the MedPro Defendants had notice of ZNC's purported "conversion" of his client file and breaches of fiduciary duty – they continued to retain Lewis Brisbois to defend ZNC in the Related Action, continued financing ZNC's defense of the Related Action, and in the context of the Related Action reviewed and paid expenses associated with the post-notice response to Teman's file demand. See ECF 51, ¶¶ 79-82. These allegations describe an insurer's administration of a defense, but do not establish that the MedPro Defendants provided substantial assistance to any torts. Nowhere, for example, does Teman allege any facts to plausibly suggest that the MedPro Defendants instructed ZNC to retain Teman's client file, instructed Lewis Brisbois to impose the challenged conditions on the production of Teman's file, directed Lewis Brisbois to exclude particular categories of documents from the production of Teman's file, or otherwise decided that Teman should not receive the file in the specific manner in which Teman demanded it. Instead, Teman alleges that the MedPro Defendants continued to retain Lewis Brisbois and to finance ZNC's defense of the Related Action, and "[u]pon information and belief," continued to review, approve, and pay expenses attributable to post-notice file-response work. See ECF 51, ¶ 135.

That is insufficient. Teman asks the Court to infer the critical act of assistance from the mere continuation of an existing attorney-client engagement. But an inference that an insurer knew that lawyers were working on a disputed matter for an insured does not establish an inference that the insurer directed or authorized the lawyers or the insured to commit conversion or breaches of fiduciary duty. Although Teman repeatedly alleges, "upon information and belief", that the MedPro Defendants reviewed and approved the relevant legal work aimed at frustrating Teman's attempts to recover his client file (see ECF 51, ¶¶ 80, 135), he identifies no concrete event

demonstrating any such approval, and the fact that an insurer selected and paid counsel does not establish that it reviewed and approved every act undertaken by counsel. Nor does the fact that counsel continued working establish that the insurer knew the precise content of counsel's communications or authorized counsel's particular positions concerning the file. Teman's theory amounts to conclusory speculation that the MedPro Defendants selected ZNC's counsel and paid for ZNC's defense in the Related Action, and therefore must have authorized the allegedly tortious work. This is a type of inferential leap that Twombly and Iqbal prohibit. Were it otherwise, then every insurer that continued to defend an insured after receiving notice of alleged misconduct could be sued for "aiding and abetting" that alleged misconduct.

Teman's aiding and abetting breach of fiduciary duty claim also fails to the extent that he attempts to predicate liability on the MedPro Defendants' failure to intervene. For example, Teman contends that the MedPro Defendants somehow could have required ZNC to return the client file, but instead took no action. See ECF 51, ¶¶ 81, 135. However, Teman does not allege any facts to suggest that any of the MedPro Defendants owed him any fiduciary duties themselves, and – as noted above – mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff. See Meisel, supra; Kaufman, supra.

The practical consequences of Teman's theory reinforce why his allegations are insufficient to state aiding and abetting claims against the MedPro Defendants. Under Teman's theory, a professional liability insurer could become an aider and abettor of an insured attorney's alleged tort whenever: (i) the insurer receives notice of the plaintiff's claim; (ii) the insurer appoints defense counsel; (iii) the insurer continues paying that counsel; and (iv) the insured does not immediately capitulate to the plaintiff's subjective satisfaction. That cannot be the rule. An insurer's contractual obligation to defend an insured does not ordinarily make the insurer a

participant in every tort alleged against the insured. The insurer's defense of the insured is analytically distinct from the insured's underlying conduct. Teman attempts to plead around the issue by alleging that the Lewis Brisbois lawyers were engaged in "file-response" work. See ECF 51, ¶¶ 65, 80, 135. But the Court should examine Teman's factual allegations rather than his labels and conclusions. The alleged conduct still consisted of lawyers communicating with Teman about the file while simultaneously representing ZNC in litigation. Teman does not identify a specific insurer-directed act that transformed that representation into substantial assistance of any conversion or breach of fiduciary duty. If knowledge plus continued defense funding were enough to state a claim for aiding and abetting, the substantial assistance element would effectively disappear.

What is more, and relatedly, Teman fails to plead any facts to plausibly demonstrate that any acts by the MedPro Defendants "proximately caused the harm on which the primary liability is predicated". See Berman, supra, 455 Fed. Appx. at 96; Lihua Gan, supra; see also Manus v. Pincione, 2026 U.S. Dist. LEXIS 1127 at *16-*17 (S.D.N.Y. 2026)("[A]ider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct. … Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation … .")(Internal quotations/citations omitted).

To the contrary, and as Teman himself alleges, the tort of conversion is complete upon refusal to return the pertinent property. See ECF 51, ¶ 100; see also Restatement (Second) of Torts, § 237 ("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion"); Regions Bank v. Wieder & Mastroianni, P.C., 526 F. Supp. 2d 411,

414 (S.D.N.Y. 2007), aff'd, 268 F. App'x 17 (2d Cir. 2008)("[w]hen a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made.") Here, however, Teman alleges that the MedPro Defendants' supposed conduct occurred in 2026, several years after he had already demanded, in 2022-2023, that ZNC provide the complete client file and ZNC had refused to provide it. See ECF 51, ¶¶ 62-63, 98-105; 132-139. The alleged conversion therefore preceded the alleged substantial assistance.

Along similar lines, Teman alleges numerous historical breaches of fiduciary duty by ZNC and its attorneys, including alleged misconduct dating back to 2017 and 2022-2023. See ECF 51, ¶¶ 104-105. However, the MedPro Defendants are not alleged to have been involved in those events, and – indeed – Teman's allegations concerning the MedPro Defendants do not begin until 2026. Teman cannot plausibly allege that the MedPro Defendants caused the damages resulting from alleged fiduciary breaches that occurred years before they were notified of the dispute, and he has not identified any affirmative conduct by any MedPro Defendant that caused the continued withholding of his client file. The absence of causation independently requires dismissal.[4]

Teman again attempts to plead around this problem by labeling the conversion and breaches of fiduciary duty as "continuing" with respect to those categories of materials in the client file that ZNC continued to withhold. See ECF 51, ¶¶ 101, 109. However, Teman's label does not supply the missing causal connection, because it does not establish that the MedPro Defendants

[4] Teman's allegation that "[w]hether Patrick personally made, approved, or supervised the particular file-return decisions is a fact peculiarly within Defendants' knowledge" underscores the substantial assistance and causation defects in his claims. See ECF 51, ¶ 138. As the Court may note, Teman does not allege any facts to demonstrate Patrick, or any of the MedPro Defendants, actually made or approved those decisions, and instead asks the Court to infer that the MedPro Defendants made decisions regarding his client file based on their receipt of communications, and the continuation of events afterward.

were the proximate cause of the underlying conversion. At most, it establishes that the MedPro Defendants became involved after ZNC had already committed the underlying torts.

Moreover, Plaintiff himself concedes that ZNC produced approximately 5,390 files on July 8, 2026 and made a supplemental production thereafter. Id. ¶¶ 85-93. That sequence is consistent with a continuing dispute over production, not with an insurer-directed scheme to exercise dominion over Teman's property or to facilitate breaches of fiduciary duty. Whatever dispute remains concerning the completeness of that production, Teman does not allege facts establishing that any specific deficiency was caused by any act of any MedPro Defendant. His allegation that the MedPro Defendants "prolonged" the deprivation is therefore conclusory and insufficient to state an aiding and abetting claim.

## III. Teman's Claims Against the MedPro Defendants Also Should be Dismissed Pursuant to the Fugitive Disentitlement Doctrine

In addition, the Court should exercise its discretion to dismiss Plaintiff's claims pursuant to the fugitive disentitlement doctrine. As discussed above, there is no doubt that Teman is a convicted fraudster and fugitive from justice. See, e.g., USA v. Teman, S.D.N.Y. Case No. 1:19-cr-00696-PAE, at ECF 92; United States v. Teman, 465 F. Supp. 3d 277, 284-291 (S.D.N.Y. 2020); see also Biale, supra at *2-*3 (finding that "Teman is a fugitive because he has absconded from supervision, refused to return by the court-ordered deadline, and apparently remains outside of the United States"). The first step of the fugitive disentitlement test is satisfied here.

As discussed above, the second step of the fugitive disentitlement test requires the Court to "determine whether disentitlement would serve the doctrine's objectives." Biale, supra (internal quotations/citation omitted). Here, disentitlement would serve the doctrine's objectives.

First, it would "assur[e] the enforceability of any decision that may be rendered against the fugitive". Biale, supra. For instance, in Biale, the Court found that application of the doctrine as to

Teman was appropriate because – were it otherwise – there could be "no assurance that Teman will comply with its instructions while he remains outside of the United States in defiance of court orders". Here, too, the Court can have no assurance that Teman will comply with any discovery orders, fee awards, sanctions orders, or contempt orders that the Court may issue in this case, and his fugitive status will make it difficult, and perhaps impossible, for the Court to enforce any such orders as this case proceeds. This consideration is particularly relevant in light of Teman's recent history as a frivolous and vexatious litigant.

Second, application of the fugitive disentitlement doctrine would impose an appropriate penalty on Teman for flouting the judicial process in his criminal case. Biale, supra. Teman should not be permitted to flee from justice in one federal case, and proceed as a civil plaintiff in others.

Third, and relatedly, application of the doctrine would discourage flights from justice, by making clear to potential fugitives that fugitive status could preclude their ability to commence and prosecute civil lawsuits. Conversely, failure to apply the doctrine would send a terrible message to prospective fugitives, and potentially incentivize flights from justice, by signaling that a fugitive could at the same time flout the court system and exploit the court system.

Fourth – and most significantly – the MedPro Defendants face considerable prejudice if Teman is entitled to proceed with this litigation and lob defective and conclusory claims at them from his fugitive perch overseas. For instance, the MedPro Defendants will be unable to take Teman's deposition in person, will likely encounter other difficulties in obtaining discovery from him, and the Court's ability to enforce its rulings via sanctions, fee awards, and contempt orders will be impeded. See Biale, supra (finding application of the fugitive disentitlement doctrine appropriate as to Teman where – much as in the present case – "Teman's fugitive status may prejudice the defendants in this action if, for example, they need to depose Teman, or otherwise

take discovery from him, in order to defend themselves against his serious accusations"); Qian Gao v. Gonzales, 481 F.3d 173, 177 (2d Cir. 2007) (applying the doctrine to case "is the posture of 'heads I win, tails you'll never find me.'").

Accordingly, the Court should exercise its discretion to dismiss Teman's claims pursuant to the fugitive disentitlement doctrine.

**CONCLUSION**

For the reasons set forth herein, Teman's claims against the MedPro Defendants should be dismissed.

Dated: Uniondale, New York
August 17, 2026

RIVKIN RADLER LLP

By: /s/ Max Gershenoff
Max Gershenoff
Amanda B. Drantch
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
*Counsel for Defendants MedPro Group Inc., Somerset Services LLC d/b/a Attorney Protective i/s/h/a Attorney Protective and Scott Patrick*

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1, I hereby certify that the MedPro Defendants' Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint complies with the pertinent word count limitations, inasmuch as it contains 6,997 words, excluding the caption, table of contents, table of authorities, signature block, and required certificates.

Dated: Uniondale, New York
August 17, 2026

RIVKIN RADLER LLP

By: /s/ Max Gershenoff
Max Gershenoff
Amanda B. Drantch

4921-4710-3173, v. 1