UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
ARI BARUCH TEMAN,

Plaintiff,

- against -

MEDPRO GROUP INC.; SOMERSET SERVICES LLC d/b/a ATTORNEY PROTECTIVE; SCOTT PATRICK; ZELDES NEEDLE & COOPER, P.C.; JEREMY VIRGIL; MAXIMINO MEDINA, JR.; ROBERT S. COOPER; JASON T. PRUEHER; THE FLOOD LAW FIRM, LLC; LEWIS BRISBOIS BISGAARD & SMITH LLP; CRISTINA YANNUCCI; SAMUEL COHEN; DANAHER LAGNESE, P.C.; and SILVER HILL HOSPITAL, INC.,

Defendants.
---------------------------------------------------------------------X

Civil Case No.: 1:26-cv-03517

Hon. Lewis J. Liman, D.J.

**MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LAW FIRM DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

Cristina Yannucci, Esq.
Sam A. Cohen, Esq.
*Attorneys for Defendants*
*LEWIS BRISBOIS BISGAARD & SMITH LLP, CRISTINA YANNUCCI, SAM COHEN, i/s/h/a SAMUEL COHEN, ZELDES, NEEDLE & COOPER, P.C., JEREMY VIRGIL, ROBERT S. COOPER, and MAXIMINO MEDINA, JR.*
140 Broadway, Suite 3100
New York, New York 10005
Phone: (212) 232-1412
Email: cristina.yannucci@lewisbrisbois.com
Phone: (646) 989-9430
Email: sam.cohen@lewisbrisbois.com

**TABLE OF CONTENTS**


**Page**

**PRELIMINARY STATEMENT**……………………………………………………………...1

**STATEMENT OF PROCEDURAL HISTORY AND FACTS**……………………………...3

**A. Related Action**…………………………………………………………………………2

**B. The Instant Lawsuit**…………………………………………………………………...4

**ARGUMENT**……………………………………………………………………………….6

**POINT I: DISMISSAL PURSUANT TO FRCP 12(b)(6) AND 9(b)**…………………………..6

**A. STANDARD OF REVIEW**……...……………………………………………………6

**B. COUNTS I AND II – REPLEVIN AND CONVERSION AGAINST ZNC AND VIRGIL**……………………………………………………………7

**C. COUNT III – BREACH OF FIDUCIARY DUTY AGAINST ZNC DEFENDANTS**………………………………………………………14

**i. Dismissal Based Upon Statute of Limitations**……………………………………14

**ii. Dismissal Based Upon the Doctrine of Prior Action Pending**……………………17

**iii. Dismissal Based Upon Failure to Sufficiently Plead**……………………………...17

**D. COUNT IV – FRAUD AND FRAUDULENT CONCEALMENT AGAINST ZNC, VIRGIL AND MEDINA**…………………………………………20

**i. Dismissal Based Upon Statute of Limitations**……………………………………21

**ii. Dismissal Based upon the Doctrines of Res Judicata/Collateral Estoppel**……….22

**iii. Dismissal Based Upon Failure to Sufficiently Plead**……………………………...23

**E. COUNT VIII – AIDING AND ABETTING CONVERSION AND BREACH OF FIDUCIARY DUTY AGAINST LBBS DEFENDANTS**……………..26

**F. COUNTS IX AND X – RACKETEERING AND RACKETEERING CONSPIRACY AGAINST ZNC AND VIRGIL**………………..28

**G. COUNT XI – EQUITABLE ACCOUNTING AGAINST ZNC AND VIRGIL**……31

**POINT II: IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED BASED UPON THE FUGITIVE DISENTITLEMENT DOCTRINE**............................33

**CONCLUSION**.........................................................................................34

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....................23

*Allen v. Chanel, Inc.,* No. 12–6758(RPP),
2013 WL 2413068 (S.D.N.Y. June 4, 2013)....................7

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
820 F. Supp. 2d 510 (S.D.N.Y. 2011)....................26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................6

*Azima v. Dechert LLP*,
No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024)....................30

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................6

*Boneta v. Rolex Watch USA, Inc.*,
232 F. Supp. 3d 354 (S.D.N.Y. 2017)....................29

*Briarpatch Ltd. L.P. v. Thomas*,
265 F. Supp. 2d 219 (S.D.N.Y. 2003)....................17

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342, 359–60 (S.D.N.Y. 2014)....................28

*DeLuca v. AccessIT Group, Inc.,*
695 F.Supp.2d 54 (S.D.N.Y. 2010)....................10

*Global Network Commc'ns, Inc. v. City of New York,*
458 F.3d 150 (2d Cir. 2006)....................7

*In re Aramid Ent. Fund Ltd.*,
664 B.R. 9 (Bankr. S.D.N.Y. 2024)....................23

*In re Grover*, 667 B.R. 243
(Bankr. S.D.N.Y. 2025)....................15, 16

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
916 F. Supp. 2d 442 (S.D.N.Y. 2013)....................20

*Kolbeck v. LIT Am., Inc.,*
939 F.Supp. 240 (S.D.N.Y.1996)……………………………………………………26, 27

*Kregos v. Associated Press,*
3 F.3d 656 (2d Cir.1993) …………………………………………………………...25

*Lynn v. McCormick*,
2017 U.S. Dist. LEXIS 207543 (S.D.N.Y. 2017)……………………………………..28

*Maharaj v. BankAmerica Corp.,*
128 F.3d 94 (2d Cir. 1997)……………………………………………………........15

*Marino v. Grupo Mundial Tenedora, S.A.*,
810 F. Supp. 2d 601 (S.D.N.Y. 2011)………………………………………………..26, 27

*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025)…………………………………………………………………...30

*Melito v. Am. Eagle Outfitters, Inc.*,
2016 U.S. Dist. LEXIS 153912 (S.D.N.Y. 2016)……………………………………13

*Meisel v. Grunberg,*
651 F.Supp.2d 98 (S.D.N.Y. 2009)…………………………………………………..14, 17

*M.J. Woods, Inc. v. Conopco, Inc.*,
271 F. Supp. 2d 576 (S.D.N.Y. 2003)………………………………………………....8

*Noble v. Mt. Olivet Church, Inc.*,
2021 WL 930626, at *4 (S.D.N.Y. Mar. 10, 2021)…………………………………..17

*Pasternak v. Dow Kim*,
961 F. Supp. 2d 593 (S.D.N.Y. 2013)………………………………………………..25

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592, 603–04 (2d Cir. 2024)………………………………………………21

*Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*,
748 F. Supp. 3d 234 (S.D.N.Y. 2024)………………………………………………..20

*Regions Bank v. Wieder & Mastroianni, P.C.,*
526 F. Supp. 2d 411 (S.D.N.Y. 2007),
*aff'd*, 268 F. App'x 17 (2d Cir. 2008)…………………………………………………7

*Reich v. Lopez*,
858 F.3d 55 (2d Cir. 2017)…………………………………………………………...29, 30

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)…………………………………………………………...20

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*,
109 F. Supp. 3d 587, 598 (S.D.N.Y. 2015)………………………………………………18

*Sledge v. Kooi,*
564 F.3d 105 (2d Cir. 2009)……………………………………………………………6

*Soley v. Wasserman*,
639 F. App'x 670 (2d Cir. 2016)………………………………………………………32

*TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*,
127 F. Supp. 3d 202 (S.D.N.Y. 2015)…………………………………………………..7

*Teman v. Zeldes Needle Cooper LLP*,
No. 24-CV-09830 (LJL), 2025 WL 3778680 (S.D.N.Y. Dec. 31, 2025)…………......1, 17

*Tracy v. Freshwater*,
623 F.3d 90 (2d Cir. 2010)……………………………………………….................6

*United States v. Bescond*,
24 F.4th 759, 767 (2d Cir. 2021)………………………………………………………33

*Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*,
819 F. Supp. 2d 230 (S.D.N.Y. 2011)…………………………………………………14

*Wagley v. JP Morgan Chase Bank, N.A.*
*as trustee of Mary Penney Wagley Irrevocable Tr.*,
No. 18 CIV. 8668 (PGG), 2020 WL 5768688 (S.D.N.Y. Sept. 26, 2020)…………14, 15

*Wee Saidin v. N.Y.C. Dep't of Educ.*,
498 F. Supp. 2d 683 (S.D.N.Y. 2007)…………………………………………………..6

*Wen v. New York City Reg'l Ctr.*,
LLC, 695 F. Supp. 3d 517, 536–37 (S.D.N.Y. 2023),
*aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024)……………………..20, 21

*Wiedis v. Dreambuilder Invs., LLC*,
268 F. Supp. 3d 457 (S.D.N.Y. 2017)…………………………………………………20

*Williams v. Affinion Grp., LLC,*
889 F.3d 116, 126 (2d Cir. 2018)……………………………………………………...31

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
530 F. Supp. 2d 486, 509 (S.D.N.Y. 2007),
*aff'd*, 328 F. App'x 695 (2d Cir. 2009)……………………………………………………30

*Whitney v. Citibank, N.A.*,
782 F.2d 1106 (2d Cir.1986)…………………………………………………………..14

**State Cases**

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*,
689 N.E.2d 879 (N.Y. 1997)…………………………………………………………..11

*Unitel Telecard Distrib. Corp. v. Nunez,*
90 A.D.3d 568, 569, 936 N.Y.S.2d 17 (N.Y.App.Div. 1st Dep't 2011)…………………..32

**Federal Statutes**

18 U.S.C. § 1962(c)………………………………………………………………………….6

18 U.S.C. § 1962(d)………………………………………………………………………….6

**Federal Rules**

Fed R. Civ. P. 9(b) ………………………………………………………...1, 6, 20, 31, 23, 34

Fed R. Civ. P. 12(b)(6)……………………………………………………………...1, 6, 34

**State Rules**

NY CPLR § 214(4)…………………………………………………………………………15

NY CPLR § 213(8)…………………………………………………………………………15

**Legal Ethics and Professional Responsibility Opinion**

Association of the Bar of the City of New York,
Committee on Professional and Judicial Ethics, Formal Op. 2008-1 (2008)…………..11, 12

This Memorandum of Law is respectfully submitted on behalf of Defendants LEWIS BRISBOIS BISGAARD & SMITH LLP ("LBBS"), CRISTINA YANNUCCI ("Yannucci"), SAM COHEN i/s/h/a SAMUEL COHEN ("Cohen," with LBBS and Yannucci, collectively "LBBS Defendants"), ZELDES, NEEDLE & COOPER, P.C. ("ZNC"), JERMEY VIRGIL ("Virgil"), MAXIMINO MEDINA, JR. ("Medina"), and ROBERT S. COOPER ("Cooper," with ZNC, Cooper and Medina, collectively "ZNC Defendants," and with LBBS Defendants, collectively "Law Firm Defendants"), together with the accompanying Declaration of Cristina Yannucci, Esq., dated August 20, 2026 ("Yannucci Decl."), and the exhibits thereto, in support of Law Firm Defendants' motion seeking an Order: (a) dismissing Plaintiff ARI BARUCH TEMAN's First Amended Complaint in its entirety against Law Firm Defendants pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and the doctrine of prior action pending; or, in the alternative, (b) dismissing Plaintiff's Complaint pursuant to the fugitive disentitlement doctrine; and (c) granting such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

This action is the second of two civil litigations commenced by Plaintiff involving claims against his former counsel, ZNC Defendants. Plaintiff commenced the first action in 2024, originally styled *Ari Baruch Teman v. Zeldes Needle Cooper LLP, Jeremy Virgil, Maximino Medina, Richard A. Sarner, Edward R. Scofield, Lori A. DaSilva-Fiano, Sabato "Sam" P. Fiano, Richard D. Zeisler, Marie A. Casper, Robert S. Cooper, Lisa C. Dumond, and Does 1-10*, United States District Court, Southern District of New York, Case No. 1:24-cv-09830-LJL ("Related Action"). Motion practice and discovery is ongoing but the sole remaining claim sounds in legal malpractice against Defendants ZNC and Virgil, the remaining defendants in the Related Action.

This second action reflects Plaintiff's continued disregard for the legal process. In the

Related Action, Plaintiff moved to compel production of the legal file maintained by ZNC for its representation of Plaintiff in matters *other than the sole litigation placed at issue in that action*. By April 21, 2026 Order, this Court limited discovery in the Related Action to the sole litigation underlying Plaintiff's legal malpractice claim in the Related Action. (Related Action, S.D.N.Y. 1:24-cv-09830-LJL ECF, No. 70). Thereafter, in response to Plaintiff's demand that ZNC produce the legal file maintained for its representation of Plaintiff in matters *other than the sole litigation at issue*, and in accordance with this Court's directives, LBBS Defendants (as counsel to ZNC and Virgil) requested clarification from Plaintiff as to scope of his request and for payment of production costs. Rather than respecting the process and resolving the inquires posed, Plaintiff commenced this second lawsuit naming not only ZNC Defendants, but their counsel in the Related Action (LBBS Defendants), and ZNC's professional liability insurers, namely, Defendants MEDPRO GROUP INC. ("MedPro"), SOMERSET SERVICES, LLC d/b/a ATTORNEY PROTECTIVE i/s/h/a/ ATTORNEY PROTECTIVE ("Attorney Protective"), and SCOTT PATRICK ("Patrick," with MedPro and Attorney Protective, collectively "Insurer Defendants").

It is respectfully submitted that nothing contained in the 76-page First Amended Complaint overcomes the myriad legal grounds for dismissal at this pre-answer stage. Instead, the amendments reflect Plaintiff's continued improper and previously denied challenges and complaints to ZNC's file productions, now ensnaring ZNC Defendants' legal counsel and professional liability insurers in this legal morass. Plaintiff's evolving claims by amendment in attempts to avoid dismissal should not be countenanced, particularly when his intention and ability to meaningfully participate in litigation is in question due to his fugitive status, which itself provides a separate ground for dismissal.

For the reasons detailed below, is respectfully submitted that Plaintiff's First Amended

Complaint be dismissed against all Law Firm Defendants in its entirety with prejudice.

## STATEMENT OF PROCEDURAL HISTORY AND FACTS

### A. Related Action

Plaintiff commenced the Related Action on December 19, 2024. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 1). Plaintiff named not only the law firm and the partner who handled the lawsuit serving as the basis for his claims, but an additional nine attorneys, and asserted thirteen causes of action concerning ZNC's legal representation of Plaintiff in an action styled *Ari Teman v. Eric Braverman, M.D., et al*, Supreme Court of the State of New York, County of New York, Index No. 805410/2014 ("PATH/Braverman Action"). (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 1). On December 31, 2025, this Court granted Defendants' pre-answer motion in part and dismissed all Defendants and causes of action except for "Plaintiff's legal malpractice claim against ZNC and Virgil." (*Id.,* ECF Doc. No. 32).

On January 18, 2026, Plaintiff filed an Amended Complaint, adding one cause of action sounding in breach of fiduciary duty against all originally named Defendants. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 35). Plaintiff alleged the ZNC attorneys had a fiduciary duty to protect Plaintiff's interests in the PATH/Braverman Action because they were copied on a correspondence concerning a separate litigation styled "*Silver Hill Hospital Inc. v. Teman*" ("Silver Hill Action"), and because they allegedly failed to disclose a conflict of interest arising from ZNC's purported preexisting professional and financial relationship with Silver Hill Hospital. (*Id.*, pp. 6-9). In lieu of answering, a pre-answer motion to dismiss was filed. (*Id.*, ECF Doc. Nos. 41-43, 44, 48-50). On March 31, 2026, this Court granted the motion and dismissed Plaintiff's breach of fiduciary duty claim with prejudice, leaving only Plaintiff's legal malpractice claim against ZNC and Virgil. (*Id.,* ECF Doc. No. 54, p. 10). On April 1, 2026, Plaintiff moved for

leave to file a Second Amended Complaint including legal malpractice and breach of fiduciary claims concerning ZNC's litigation of the PATH/Braverman and Silver Hill Actions. (*Id.,* ECF Doc. No. 57). The motion was opposed and remains *sub judice.* (*Id.,* ECF Doc. Nos. 76-77).

Also on April 1, 2026, this Court issued an Order staying Defendants' obligations to respond to discovery. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 55). In response, Plaintiff requested that ZNC produce his files for matters outside of the sole litigation at issue. (*Id.,* ECF Doc. No. 60). On April 21, 2026, this Court issued an Order holding that "[d]efendants [were] not required to produce documents or information related to actions beyond the [PATH/Braverman] Action" and denied Plaintiff's motion to "compel [the] [d]efendants to produce Plaintiff's client file," holding that "Plaintiff [could not] circumvent the stay on discovery." (*Id.,* ECF Doc. No. 70, p. 4). Six days later, Plaintiff commenced this lawsuit and moved to disqualify LBBS Defendants as counsel based in part on the new lawsuit. (*Id.,* ECF Doc. No. 74). This motion was summarily denied on April 29, 2026. (*Id.,* ECF Doc. No. 75).

**B. The Instant Lawsuit**

Plaintiff commenced the instant lawsuit on April 27, 2026, and asserted 11 causes of action: (1) RICO; (2) RICO Conspiracy; (3) wire fraud; (4) conversion; (4) replevin; (5) fraud; (6) aiding and abetting breach of fiduciary duty; (7) legal malpractice; (8) tortious interference; (9) unjust enrichment; (10) injunctive relief; and (11) Sherman Act Violations. (ECF Doc. No 1, pp. 8-19).

Prior to Law Firm Defendants' deadline to respond to the Complaint, Plaintiff once again moved to disqualify LBBS Defendants as counsel and to compel production of ZNC's client files. (ECF Doc. Nos. 15, 16, 21-22, 25-31). By June 9, 2026 Order, this Court denied Plaintiff's disqualification motion as "frivolous" and denied Plaintiff's motion to compel production of ZNC's client files by indicating the dispute would be addressed in the Related Action. (ECF Doc.

No. 34). In the Related Action, the Court issued: (1) a June 9, 2026 Order directing Plaintiff to identify "the client files he seeks by June 15, 2026" and the defendants to "respond by June 22, 2026 indicating the cost for production"; and (2) a July 1, 2026 Order denying Plaintiff's request to compel Law Firm Defendants to provide "written explanations regarding the 'timing, sources, custodians, and scope of the collection'" and validated ZNC's acknowledged agreement to produce files maintained for "the PATH/Braverman and Silver Hill litigations." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. Nos. 106 & 114).

In accordance with this Court's Orders, on May 29, 2029, Defendants ZNC and Virgil produced over 64,000 pages of documents responsive to Plaintiff's discovery demands in the Related Action; and, in accordance with this Court's directives and subsequent agreements with Plaintiff, on July 8, 2026, ZNC separately produced the files it maintained in the ordinary course of business as part of its legal representation of Plaintiff in the PATH/Braverman and Silver Hill Actions, totaling over 93,000 pages of documents. (Yannucci Decl. Ex. B). Thereafter, in a good faith effort to resolve purported disputes, ZNC conducted an expanded search and on July 17, 20026, produced additional emails, attachments, and outlook calendar notifications, which resulted in ZNC's discovery production in the Related Action totaling over 71,000 pages and ZNC's client file production totaling over 105,000 pages. (Yannucci Decl. Ex. C)

Finally, Law Firm Defendants timely filed a pre-answer motion to dismiss the original Complaint on July 17, 2026. (ECF Doc. Nos. 48-50). The following business day, on July 20, 2026, Plaintiff filed a 76-page First Amended Complaint. (Yannucci Decl., Ex A). By July 24, 2026 Order, this Court extended Law Firm Defendants' time to answer, move, or otherwise respond to the Complaint to August 20, 2026. (ECF Doc. No. 57). As such, the instant motion is timely.

By the First Amended Complaint, Plaintiff withdrew "claims previously asserted under

Section 2 of the Sherman Action," "tortious interference, unjust enrichment," "legal malpractice," and "injunctive relief." (Yannucci Decl., Ex. A, pp. 1-2). Now, Plaintiff asserts the following claims against Law Firm Defendants: (1) as against ZNC and Virgil only, causes of action sounding in replevin, conversion, racketeering, (18 U.S.C. § 1962(c)), racketeering conspiracy (18 U.S.C. § 1962(d)), and equitable accounting (*id*., pp. 44-47, 67-74); (2) as against ZNC Defendants, one cause of action sounding in breach of fiduciary duty (*id*., pp. 47-51); (3) as against ZNC, Virgil and Medina, one cause of action sounding in fraud/fraudulent concealment (*id*., pp. 51-55); and, (4) as against LBBS Defendants, one cause of action sounding in aiding and abetting conversion and breach of fiduciary duty. (*Id*., pp. 64-67).

## ARGUMENT

### POINT I: <u>DISMISSAL PURSUANT TO FRCP 12(b)(6) AND 9(b)</u>

### A. STANDARD OF REVIEW

Dismissal of a complaint is warranted for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp., supra,* 550 U.S. at 555-56.[1]

[1] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft, supra,* 556 U.S. at 678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp., supra,* 550 U.S. at 555. P*ro se* plaintiffs are not relieved of the requirement that they plead sufficient facts so that their claims are facially plausible. *See Wee Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[*P*]*ro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure."). As in this case, *pro se* plaintiffs are afforded lesser solicitude when they have ample legal experience. *See Sledge v. Kooi,* 564 F.3d 105, 109–110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigants may be charged with knowledge of particular legal requirements and afforded less leeway in litigation); *Tracy v. Freshwater*, 623 F.3d 90, 92–93 (2d Cir. 2010) (noting that a limited withdrawal of solicitude may have been

In determining whether a complaint states a plausible claim for relief, the Court may take judicial notice of documents filed in another court "to establish the factual allegations set forth in the pleadings; (2) documents […] incorporated by reference [in the pleadings]; (3) matters of which judicial notice may be taken; and (4) documents upon which the complaint 'relies heavily' and which are, thus, rendered 'integral' to the Complaint the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006).[2]

**B. COUNTS I AND II – REPLEVIN AND CONVERSION AGAINST ZNC AND VIRGIL**

"[R]eplevin is a remedy employed to recover specific, identifiable item[s] of personal property" and a plaintiff "must establish that the that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." *TAP Manutencao e* E*ngenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.,* 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) (internal citations omitted). To sufficiently plead a conversion claim, a plaintiff must allege "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." *Regions Bank v. Wieder & Mastroianni, P.C.,* 526 . Supp. 2d 411, 413 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008). "[W]here possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand." *TAP Manutencao e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.,* 127 F. Supp. 3d 202, 209–10 (S.D.N.Y. 2015) (internal citations omitted).

Plaintiff's causes of action sounding in replevin and conversion are based, *inter alia,* upon Plaintiff's claim that ZNC's client file production is deficient. Plaintiff seeks the production of

---

warranted where a *pro se* plaintiff had "participated in at least ten previous federal and state actions").

[2] "[A] complaint must make a clear, definite, and substantial reference to the document" for it to be incorporated. *Allen v. Chanel, Inc.,* No. 12–6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

additional records and written representations regarding ZNC's client file production, and requests unspecified monetary damages. (Yannucci Decl., Ex. A, ¶¶ 97-101) For the reasons detailed below, both causes of action must be dismissed with prejudice as against ZNC and Virgil.

First, Plaintiff concedes that this lawsuit concerns "the Silver Hill and Braverman representations." (Yannucci Decl., Ex. A, ¶¶ 7, 14). Despite this concession, Plaintiff attempts to support his replevin and conversion causes of action by proffering that "ZNC represented and advised Plaintiff in multiple matters, including the Braverman/PATH actions (New York and Connecticut) and the Silver Hill action" and then asserting that "[t]he scope of a client file is defined by the conduct and substance of the representation – the matters on which the attorneys in fact advised and acted – not by the captions of the cases ultimately filed, and not by the four corners of the retainer agreement." (*Id.*, ¶¶ 14 and 31). This effort fails as a matter of law.

"The simple act of an attorney giving advice to an individual does not automatically create an attorney-client relationship" and "factors that may be considered in determining the existence of an attorney-client relationship" include "whether a fee arrangement was entered into or a fee paid," "whether a written contract or retainer agreement exists," and "whether the attorney actually represented the individual in an aspect of the matter." *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 585 (S.D.N.Y. 2003). Since there are no facts in the First Amended Complaint tending to show that there was any attorney-client relationship as to matters other than Braverman/Path and Silver Hill, there is no basis upon which Plaintiff's replevin and conversion claims survive relative to "omitted" purported files for these non-existent relationships.

Second, Plaintiff's allegation that ZNC's original client file production was "materially incomplete" and that the "supplement production […] remains incomplete" (Yannucci Decl., Ex. A, ¶ 6) is belied by the productions themselves. Plaintiff characterizes the allegedly missing

documents as "known client communications that Plaintiff himself holds" from "2021-2023" which concern the alleged "[c]oncealed [d]efault in the Braverman Action (2022-2023)." (*Id.,* ¶¶ 6, 56, 86). However, the purported "omitted" documents as described by Plaintiff are identified herein and have been produced as follows:

- The email to which Prueher responded to on September 22, 2017 was contained within the very email identified by Plaintiff, namely "ZNC097891" (Yannucci Decl., Ex. A, ¶ 86(b)), and was produced on July 17, 2026. (Yannucci Decl., Ex. D).
- A June 15, 2022 email from Virgil containing a "substantive analysis of consolidating the Braverman and Buch cases" (Yannucci Decl., Ex. A, ¶ 57) was produced on July 17, 2026 and is Bates stamped ZN094711. (Yannucci Decl., Ex. E).
- Emails from Virgil dated November 5 (sent by Virgil on November 4 at 11:09 P.M. EST) and November 9, 2022 regarding a pending "motion" concerning whether the "case [could] proceed forward despite the bankruptcy/insolvency filings of one of the insurance carriers" (Yannucci Decl. Ex. A, ¶ 57) were produced on July 17, 2026 and are Bates stamped ZNC094710. (Yannucci Decl., Ex. E).
- Virgil's email response to a May 6, 2023 email Plaintiff authored (Yannucci Decl., Ex. A, ¶ 59), as well as the May 6, 2023 email itself, were produced on July 17, 2026 and are Bates stamped ZNC094709. (Yannucci Decl., Ex.E).
- A May 10, 2023 email responding to Plaintiff's inquiries concerning a "May 9, 2023 disclosure email" (Yannucci Decl., Ex. A, ¶¶ 59-60), as well as the email to which it responded, were produced on July 17, 2026 and are Bates stamped ZN094708-ZNC094709. (Yannucci Dec., Ex. E).
- Emails dated May 10-15, 2023, whereby Plaintiff advised he would be seeking

"malpractice counsel," Virgil transmitted filings from the PATH/Braverman Action, and Virgil inquired as to whether Plaintiff was "terminating the representation" (Yannucci Decl., Ex. A, p. 60) were produced on July 17, 2026 and are Bates stamped ZNC094707-ZN94708. (Yannucci Decl., Ex. E).

Plaintiff also alleges "the September-October 2017 settlement drafting sequence as described in Part V.B. appears in the production as documents without the counsel-to-counsel transmittal correspondence that necessarily accompanied their negotiation and exchange." (Yannucci Dec., Ex. A, ¶ 86(g)). However, section V.B. of the Amended Complaint does not identify any such missing transmittal correspondence. (*Id*., ¶¶ 34-48).[3] Because Plaintiff does not allege facts tending to show the existence of missing transmittal communications, such claims should be dismissed as speculative, conclusory, and deficiently plead.

Plaintiff cannot maintain either a conversion or replevin claim on the basis that ZNC failed to produce his file when the documents he identifies as exemplative of what is missing were, in fact, contained in ZNC's client file productions and are admittingly in his possession. Because Plaintiff relied upon these documents in framing his complaint, the documents may be considered in connection with the instant motion. *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 59–60 (S.D.N.Y. 2010) (for a document to be "integral," a plaintiff must have: "(1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint'").

In this same vein, Plaintiff's claims of alleged failures to respond to his requests for his file in the underlying actions are likewise belied by the very document production he now challenges.

---

[3] Contrary to Plaintiff's claims, transmittal emails between counsel to the Silver Hill Action were in fact produced. As an example, an October 11, 2017 email from Virgil to Danaher, whereby Virgil wrote "[a]attached is the latest version of the release" and attached a document titled "Teman Settlement Document FINAL 10.11.17.dox," was produced on July 17, 2026 and Bates stamped ZN105276. (Yannucci Decl., Ex. F).

For instance, Plaintiff claims that he first requested ZNC's client file by a "November 4, 2022" email to Virgil to "seek updated discovery" in the PATH/Braverman Action. (Yannucci Decl., Ex. A, ¶¶ 62 & 99). The email has been produced and reveals that, instead, Plaintiff requested only that Virgil seek updated discovery from the defendants in the Underlying Action, not that Plaintiff be provided with a copy of ZNC's file. (Yannucci Decl., Ex. E at ZN094711).

Likewise, whereas Plaintiff contends he requested ZNC's file on June 21, August 21, and August 24, 2023 (Yannucci Decl., Ex. A, ¶ 62), the communications reveal otherwise: the June 21, 2023 email reflects that Plaintiff only requested "the names [o]f two partners at your firm who can remain copied on all correspondence and supervise this case" while threatening to "sue for legal malpractice (Yannucci Decl., Ex G at ZNC094918); the August 21 email reflects Plaintiff's request for the status of the PATH/Braverman appeal and "copies of what was filed" (*Id.*); and the August 24 email reflects Plaintiff threatening that if he was not provided "copies of the recently filed documents," he would "retai[n] a legal malpractice attorney and su[e]." (*Id.*). That same day, Virgil confirmed that Plaintiff had "all the paperwork that has been filed." (*Id.*). Once again, these emails do not reflect any prior request made by Plaintiff for a copy of ZNC's entire client file.

It is beyond cavil that while an attorney must furnish an "entire file on [a] represented matter" including "'work product' leading to the creation of [certain] end product documents," certain categories of documents, including "documents containing a firm attorney's general or other assessment of the client, or tentative preliminary impressions of the legal or factual issues presented in the representation, recorded primarily for the purpose of giving internal direction to facilitate performance of the legal services entailed in that representation" need not be produced, as "[s]uch documents presumably are unlikely to be of any significant usefulness to the client." *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP,* 91 N.Y.2d 30, 36 (1997)). (Related

Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 34, p. 4) In Opinion 2008-1, the Association of the Bar of the City of New York Committee on Professional and Judicial Ethics ("NY City Ethics Comm.") provides an attorney is not obligated to maintain *every* "document that bears any relationship, no matter how attenuated, to a representation," such as "every handwritten note of every conversation related to a representation," and "draft memoranda or internal e-mails that do not address substantive issues" of the representation. Thus, Plaintiff has not pled facts tending to show that he has been deprived of using or accessing any documents or communications for which ZNC Defendants had an obligation to maintain and furnish.

Furthermore, while Plaintiff alleges that ZNC's client file production is deficient because it is missing metadata (Yannucci Decl., Ex. A, ¶ 86(b)-(c)), by June 23, 2026 letter, Plaintiff "accept[ed] ZNC's proposed production specifications" to produce the client file "on a rolling basis through a secure, password-protected share folder" both "in PDF format" and "in native format […], with the exception of documents that require[d] redaction on the basis of attorney-client privilege." (Yannucci Decl., Exs. H and I). ZNC's client file was produced in accordance with this agreement, and all available metadata has been delivered. (Yannucci Decl., Exs. B and C). Plaintiff does not identify missing metadata needed to protect his legal rights.

Third, Plaintiff cannot maintain a replevin or conversion claim against ZNC and Virgil for failing to produce records outside their custody or control. In particular, Plaintiff alleges that ZNC's client file "contains no collection from Flood's systems or Prueher's *subsequent* repositories." (Yannucci Decl., Ex. A, ¶ 86(e) & (g)). Since neither Defendant Flood's repository nor Defendant Prueher's "subsequent" repository are under the custody and control of ZNC or Virgil, these claims should be dismissed as against ZNC and Virgil.

Fourth, to the extent the replevin and conversion claims rest upon Plaintiff's allegation that

ZNC Defendants did not produce written "representation identifying the custodians or repositories searched, whether the personal accounts used in the representation were collected, or whether the production was complete" (Yannucci Decl., Ex. A, ¶ 86(f)), this claim is barred by the law of the case. The law of the case doctrine commands that when a Court has ruled on an issue, that decision should generally be subsequently adhered to by that court "unless cogent and compelling reasons militate otherwise." *See Melito v. Am. Eagle Outfitters, Inc.*, 2016 U.S. Dist. LEXIS 153912, *5 & 8-11 (S.D.N.Y. 2016) (internal quotations omitted).

By June 6, 2026 Order, this Court held that "discovery is stayed […], except with respect to any discovery issues related to the client file" which would be resolved in the Related Action. (ECF Doc. No. 34, pp. 4-5). In its July 1, 2026 Order in the Related Action, this Court denied "Plaintiff's request that Defendants be compelled to provide written explanations regarding the timing, sources, custodians, and scope of the collection of documents produced" as part of ZNC's client file. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 114). Here, there has been no change in circumstances warranting a modification of this ruling and, as such, the first and second causes of action should be dismissed as against ZNC and Virgil with prejudice.

Finally, Plaintiff failed to set forth any facts tending to show he has suffered any purported damages. Plaintiff has not articulated how any alleged missing communications and/or documents would advance or protect Plaintiff's interests. Plaintiff also fails allege that he has incurred any damages as a proximate result of any records being missing from ZNC's files. For example, as pertains to his conversion claim, Plaintiff alleges that he "has been damaged in concrete respects incurred before and apart from this action, including: the loss of possession, use, and control of identified records for the periods of deprivation alleged; out-of-pocket data-processing and storage costs occasioned by the form and volume of the eventual 21.7-gigabye production; the pre-suit

costs of reconstructing from Plaintiff's own archives the correspondence omitted from the production […]; and work necessarily repeated because the underlying records were withheld." (Yannucci Decl., Ex. A, ¶ 101). However, none of these conclusory allegations set forth sufficient facts tending to show concrete damages, particularly since Plaintiff cannot recover costs associated with storing the very documents he requested or the labor he employed in pursuing civil litigation. The well established "American Rule" provides that "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 241 (S.D.N.Y. 2011).

Accordingly, Plaintiff's causes of action sounding in replevin and conversion must be dismissed with prejudice, as Plaintiff fails to specify identifiable and known pieces of property that are being withheld, Plaintiff fails to identify how ZNC or Virgil failed to adhere to their professional obligations relative to the production of the legal files, and Plaintiff fails to identify any ascertainable, proximate, or recoverable damages associated with these causes of action.

**C. COUNT III – BREACH OF FIDUCIARY DUTY AGAINST ZNC DEFENDANTS**

Under New York law, "the elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." *Meisel v. Grunberg,* 651 F.Supp.2d 98, 114 (S.D.N.Y. 2009) (citing *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir.1986)). Plaintiff's cause of action should be dismissed for the following reasons.

***i. Dismissal Based upon Statute of Limitataions***

When a plaintiff "seeks monetary relief" in a breach of fiduciary duty claim, "the applicable statute of limitations is three years." *Wagley v. JP Morgan Chase Bank, N.A. as trustee of Mary*

*Penney Wagley Irrevocable Tr.*, No. 18 CIV. 8668 (PGG), 2020 WL 5768688, at *7 (S.D.N.Y. Sept. 26, 2020). *See* N.Y. C.P.L.R. § 214(4). Here, Plaintiff's requested relief solely involves monetary damages, and Plaintiff acknowledges that the Silver Hill Action resolved by settlement agreement executed on October 11 2017. (Yannucci Decl., Ex. A, ¶¶ 7 & 111). Because the instant action was commenced on April 27, 2026, over 8 years and 6 months after the Silver Hill Action was settled, all claims relating to the Silver Hill Action are time-barred and should be dismissed with prejudice.

***ii. Dismissal Based Upon the Doctrines of Res Judicata/Collateral Estoppel***

Plaintiff alleges ZNC Defendants "breached the duty of undivided loyalty by maintaining, without disclosure or waiver […] the firm's healthcare transactional interests in institutions related to and affiliated with Silver Hill – and by subordinating Plaintiff's interests to that conflict." (Yannucci Decl., Ex A, ¶ 104). Plaintiff claims "ZNC maintained, marketed, and sought to grow a healthcare transactional practice […] within the same Connecticut healthcare community in which Silver Hill […] holds substantial standing." (*Id.* ¶ 49). Plaintiff speculates that "a firm prosecuting claims against Silver Hill could not simultaneously expect to develop transactional relationships within Silver Hill's institutional network, and ZNC's own interests therefore stood in tension with the vigorous prosecution of Plaintiff's claims. (*Id.*). This claim must be dismissed pursuant to the doctrines of *res judicata*/collateral estoppel.

Under New York law, *res judicata* precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" and "bars all matters that were, or could have been litigated in the prior action." *In re Grover*, 667 B.R. 243, 253 (Bankr. S.D.N.Y. 2025); *see also Maharaj v. BankAmerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997). "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude prelitigation of the issue in a suit

on a different cause of action involving a party to the first case." *In re Grover, supra*, 667 B.R. at 253. "There are two requirements for the application of collateral estoppel: (1) '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id.* (internal citations omitted).

In the Related Action, Plaintiff asserted one breach of fiduciary duty cause of action against ZNC Defendants alleging they "breached their fiduciary duty to act in Plaintiff's best interests by prioritizing personal and financial conflicts over their client's case." (Related Action, S.D.N.Y. 1:24-cv-09830-LJL, ECF Doc. No. 1, ¶ 31). Like his instant claims, Plaintiff alleged that "ZNC's improper personal and financial relationships and/or conflicts with […] Silver Hill Hospital in New Cannan, CT […] and their respective counsel" served as motivation to "sabotage [Plaintiff's] case." (*Id.*, ¶¶ 5, 21 & 49). By December 31, 2025 Order in the Related Action, this Court dismissed this breach of fiduciary duty claim "without prejudice" and found that Plaintiff failed to identify what interests ZNC "had in Silver Hill Hospital" or how ZNC "benefitted those entities at Plaintiff's expense." (*Id.,* ECF Doc. No. 32, p. 16).

On January 18, 2026, Plaintiff filed a First Amended Complaint in the Related Action containing an amended breach of fiduciary duty claim alleging ZNC Defendants "failed to disclose conflicts of interest and failed to obtain Plaintiff's informed consent to continue the representation." (*Id,* ECF Doc. No. 35, pp 5-7). By March 31, 2026 Order issued in the Related Action, this Court dismissed Plaintiff's "claim for breach of fiduciary duty […] with prejudice" for Plaintiff's "failure to state a claim for relief." (*Id*., ECF Doc. No. 54 at pp. 6-11). Plaintiff had the opportunity to litigate the merits of his claim in the Related Action and the Order dismissing same remains undisturbed. Plaintiff should not be permitted to circumvent this Court's prior

holdings or legal procedure by improperly repleading dismissed claims in a new lawsuit.

***iii. Dismissal Based Upon the Doctrine of Prior Action Pending***

As pertains to the PATH/Braverman Action, Plaintiff alleges that "[i]n 2022 and 2023, ZNC and Virgil breached [their fiduciary duties] by concealing the 90-day notice, the unopposed dismissal motion, and the dismissal." (Yannucci Decl., Ex. A, ¶ 106). By the Related Action, Plaintiff has already placed the PATH/Braverman Action at issue, including claims concerning the alleged 90-day notice and dismissal motion. As such, Plaintiff's instant breach claim here must be dismissed under the "prior action pending doctrine" which "prevents proceeding in federal court with a second lawsuit which is duplicative of an earlier pending lawsuit over the same subject matter." *Briarpatch Ltd. L.P. v. Thomas*, 265 F. Supp. 2d 219, 225 (S.D.N.Y. 2003).

***iv. Dismissal Based Upon Failure to Sufficiently Plead***

Even if Plaintiff's breach of fiduciary duty cause of action did not face dismissal as barred by the statute of limitations, or the doctrines of res judicata/collateral estoppel and prior pending action, dismissal is warranted based due to the insufficiency of Plaintiff's pleading.

As a preliminary matter, although Plaintiff avers this claim "does not plead, and does not depend upon, any claims that [ZNC] Defendants negligently prepared or prosecuted any matter" (Yannucci Decl., Ex A, ¶ 102), this does not relieve him of the requirement to plead facts tending to show he suffered damages as a result of the alleged breach. *See Meisel, supra,* 651 F.Supp.2d at 114. Relative to a breach of fiduciary duty claim, "[i]n the attorney-client context, a plaintiff must show that the attorney's breach was at least 'a substantial factor' in causing the resulting damages." *Teman v. Zeldes Needle Cooper LLP*, No. 24-CV-09830 (LJL), 2025 WL 3778680, at *6 (S.D.N.Y. Dec. 31, 2025) (quoting *Noble v. Mt. Olivet Church, Inc.*, 2021 WL 930626, at *4 (S.D.N.Y. Mar. 10, 2021)). Here, Plaintiff fails to sufficiently plead any of the requisite elements.

First, Plaintiff fails to sufficiently allege breach. By example, Plaintiff claims that ZNC Defendants placed Silver Hill Hospital's interests over his own because Dr. Levin was "unwilling to testify against Silver Hill because of his own patient-referral relationship with that institution – a financial tie to Silver Hill." (Yannucci Decl., Ex A, ¶ 50). Yet, it is not alleged that said expert was affiliated with ZNC or that his willingness to testify on Plaintiff's behalf pertained to any purported relationship between ZNC and Silver Hill Hospital. The First Amended Complaint is wholly devoid of any facts tending to show that ZNC had any direct financial interest or business relationship with Silver Hill Hospital or benefited Silver Hill Hospital at Plaintiff's expense. (*Id., passim*). "In considering conflict of interest claims, the Second Circuit has disregarded bald assertions of conflict, and has instead required a showing that the fiduciary personally benefitted from the disputed action." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 598 (S.D.N.Y. 2015) (internal corrections, quotations, and citations omitted).[4]

Second, nothing in the First Amended Complaint tends to show that Plaintiff would have secured a better result absent the alleged breaches. For example, Plaintiff alleges that "[d]uring the Silver Hill litigation, [he] obtained, and furnished to his attorneys, evidence that Silver Hill and his counsel procured default judgments against Silver Hill's former patients through service at addresses known to be bad," which took the form of an "audio recording […] of a Connecticut state marshal." (Yannucci Decl., Ex. A, ¶ 51). Plaintiff claims "[t]his evidence was of extraordinary value" and "carried professional-discipline exposure" but that ZNC Defendants "did not investigate" or "deploy it." (*Id.*, ¶ 52). Plaintiff concludes that had Silver Hill been presented with

[4] Plaintiff also alleges that "[f]rom 2022 through the present, ZNC and Virgil breached the duty to return the file: by years of non-delivery." (Yannucci Decl., Ex. A, ¶ 107). Initially, because Plaintiff does not assert this claim against Medina or Cooper, the breach claim should be dismissed as against these defendants. Furthermore, as detailed above in Point I(B), *supra*, the referenced communications identified by Plaintiff reveal that Plaintiff did not request ZNC's client file in 2022 or 2023, or at any time prior to 2026. (Yannucci Decl., Ex E).

evidence that it intentionally served patients at incorrect addresses to procure a default judgment in unrelated litigations, it would have "materially affected the posture and settlement value of Plaintiff's claims." (*Id.*). Yet, nowhere in the First Amended Complaint are facts tending to show that the settlement figure would have changed based upon the aforementioned.

Third, even if these pleadings were deemed sufficient, Plaintiff's claim is belied by his own actions, which Plaintiff himself documented and is contained within ZNC's file. Plaintiff personally provided the aforementioned-audio recording to Silver Hill Hospital, its attorneys, and the FBI prior to the final settlement.[5] On October 8, 2017, three days before the settlement agreement was executed, Plaintiff emailed Silver Hill Hospital, its attorneys, and staff a copy of the aforementioned audio recording and demanded a settlement in the amount of $44,000,000.00 and $6,000,000.00 against Silver Hill Hospital and Danager, respectively. (Yannucci Decl., Ex. L). That same day, Plaintiff emailed counsel for Silver Hill Hospital to advise that the recording would be forwarded to the press. (Yannucci Decl., Ex. M). Later that day, Plaintiff emailed ZNC to advise that he forwarded the audio recording to the FBI. (Yannucci Decl., Ex. M). Thus, Plaintiff has not, because he cannot, sufficiently plead proximate causation, as the subject actions relative to the above audio recording identified as the basis for the breach claim in the First Amended Complaint are revealed to have been employed by Plaintiff himself without any changed result. (*Id.*).[6]

Accordingly, having failed to plead the requisite elements, Plaintiff's breach of fiduciary

---

[5] As part of its July 17, 2026 motion to dismiss, Danaher filed the Silver Hill Action Settlement Agreement which Plaintiff executed on October 11, 2017. (ECF Doc. No. 46-5).

[6] Reflecting another instance in which Plaintiff's assertion is not only insufficiently pled but also belied by the documents is Plaintiff's assertion that ZNC Defendants breached their fiduciary duty by "presenting for execution" a draft settlement agreement "whose drafts contained a no report term Plaintiff had rejected in writing" on "April 4, 2017" and "confidentiality clause." (Yannucci Decl., Ex. A, ¶¶ 43 and 105). By a May 4, 2017 email, produced on July 17, 2026 as ZN099495, Plaintiff wrote to Virgil, agreeing to "[c]onfidentiality as to the terms of our settlement." (Yannucci Decl., Ex J). Again, by October 10, 2017 email, produced on July 17, 2027 as ZN097602, Plaintiff authorized the settlement agreement containing a confidentiality provision. (Yannucci Decl., Ex. K).

duty cause of action should be dismissed with prejudice.

### D. COUNT IV – FRAUD AND FRAUDULENT CONCEALMENT AGAINST ZNC, VIRGIL AND MEDINA

To state a cause of action sounding in fraud, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 916 F. Supp. 2d 442, 447 (S.D.N.Y. 2013) (internal citations omitted). A plaintiff must also allege "proximate causation," meaning "the injury is the nature and probable consequence of the defrauder's misrepresentation." *Id.* (internal quotations and citations omitted).[7] Where "the fraud is based on an omission and "the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 251–52 (S.D.N.Y. 2024).

"New York's statute of limitations" requires fraud claims to be commenced "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." *Wen v. New York City Reg'l Ctr.*, LLC, 695 F. Supp. 3d 517, 536–37 (S.D.N.Y. 2023), *aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024) (quoting "N.Y.C.P.L.R.

[7] The heightened pleading requirements of Fed. R. Civ. P. 9(b) mandates a plaintiff in asserting a fraud claim to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citation omitted). "While 'intent, knowledge, and other conditions of mind may be averred generally,' a plaintiff must allege sufficient facts to create a 'strong inference" of scienter.'" *Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 464–65 (S.D.N.Y. 2017) (internal quotations omitted).

213(8)). "[A] cause of action to recover damages for fraud cannot accrue until every element of the claim, including injury, can truthfully be alleged." *Wen v. New York City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 537 (S.D.N.Y. 2023), *aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024) (internal quotations, citations, and alterations omitted).

While there is no independent cause of action sounding in fraudulent concealment, Plaintiff alleges that "[t]his claim is timely under New York law – within two years of actual discovery" because he did not discover the alleged acts of fraud until his review of ZNC's client file production in July 2026. (Yannucci Decl., Ex. A, ¶ 120). To plead fraudulent concealment for purposes of tolling accrual of the statute of limitations, a plaintiff must allege: "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603–04 (2d Cir. 2024). A plaintiff must also "plead the fraudulent concealment with particularity, in accordance with Federal Rule of Civil Procedure 9(b)." *Id*.

***i. Dismissal Based upon Statute of Limitations***

Plaintiff alleges "Defendants" concealed "that his lead trial counsel had left the firm," "that Prueher was continuing to work on the case from Flood without engagement," and "that the firm's trial preparation lacked […] readiness" before the Silver Hill Action was settled. (Yannucci Decl., Ex. A, ¶ 114). Plaintiff concedes that all of these events occurred prior to him "execut[ing] the October 11, 2017 settlement" agreement. (*Id*., ¶ 115). As for the claimed damages associated with the Silver Hill Action, Plaintiff alleges that "in justifiable reliance on his fiduciaries and in ignorance of the concealed facts […] he executed the October 11, 2017 settlement" and seeks "the $15,000 contingency fee retained by ZNC from the fraudulently procured release." (*Id*., ¶ 121).

Plaintiff's fraud claim is time-barred by the applicable six-year statute of limitations. Plaintiff settled the Silver Hill Action on October 11, 2017 (Yannucci Decl., Ex. A ¶ 121) but did not commence this lawsuit until April 27, 2026. (ECF Doc. No. 1). As such, all actions giving rise to the fraud claim preceding October 11, 2023 are time-barred. Plaintiff concedes that all alleged fraudulent acts concerning the Silver Hill Action preceded the October 11, 2017 settlement. (Yannucci Decl., Ex. A, ¶ 115). Because Plaintiff did commence this lawsuit until April 27, 2026, over eight and a half years later, his claim is therefore time barred.

Plaintiff argues that the two-year discovery rule should apply because he could not have discovered his fraud claims until ZNC produced its client file in 2026. (Yannucci Decl., Ex. A, ¶ 120). However, this assertion is directly undermined by Plaintiff's own pleadings. First, Plaintiff admits that he first discovered Prueher left ZNC on October 6, 2017, not in 2026. (Yannucci Decl., Ex. A, ¶¶ 39 & 114). Second, Plaintiff's claim that he was fraudulently induced into settling the Silver Hill Action because he was unaware that ZNC lacked preparedness for trial is undermined by Plaintiff's admission that the expert he retained refused to participate in the Silver Hill Action, as same was discussed in a proceeding email dated August 18, 2017 between Plaintiff, Prueher and Virgil at the time it occurred. (Yannucci Decl., Ex N). Third, Plaintiff acknowledges that he was personally provided with the continuance and withdrawal motions before the October 11, 2017 settlement. (Yannucci Decl., Ex. A, ¶ 114). Because Plaintiff was aware of all pertinent facts underlying his fraud claims prior to the October 11, 2017 settlement of the Silver Hill Action, the two-year discovery rule is inapplicable, and claims are therefore time-barred.

***ii. Dismissal Based upon the Doctrines of Res Judicata/Collateral Estoppel***

This claim is precluded by the doctrines of *res judicata*/collateral estoppel and prior action pending. In sum, Plaintiff alleges that because Virgil sent him emails concerning the

PATH/Braverman Action but did not disclose the status of an alleged dismissal motion that was pending, he was induced into not taking remedial action. (Yannucci Decl., Ex. A, ¶ 117). In the Related Action, Plaintiff asserted the same causes of action sounding in fraud and constructive fraud, alleging that ZNC and its attorneys "knowingly made false representations" to him, "including assurances that the case was being handled properly." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No.1, ¶¶ 26-27, 42-43).

By December 31, 2025 Order issued in the Related Action, this Court dismissed such claims "with prejudice" for being duplicative and deficiently plead. (*Id*., ECF Doc. No 32, pp. 19-20). This Order remains undisturbed and the time to appeal said Order has long elapsed. Because Plaintiff had a full and fair opportunity to litigate this issue, the instant fraud and fraudulent concealment claim should be precluded pursuant to the doctrines of *res judicata*/collateral estoppel. Plaintiff should not be permitted to circumvent federal procedure and this Court's prior rulings simply by repleading and expanding upon his dismissed fraud claim. Separately, because Plaintiff placed the PATH/Braverman Action at issue in the Related Action, this cause of action should be dismissed pursuant to the prior action pending doctrine.

***iii. Dismissal Based Upon Failure to Sufficiently Plead***

As a preliminary matter, to the extent Plaintiff's fraud claims are broadly asserted against "Defendants," such allegations should be dismissed for failure to plead with particularity as required by Fed. R. Civ. P. 9(b). "Particularity is required so that each defendant is aware of the circumstances surrounding the fraud" and "[s]weeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." *In re Aramid Ent. Fund Ltd.*, 664 B.R. 9, 63 (Bankr. S.D.N.Y. 2024) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579–80 (2d Cir. 2005)). This alone justifies dismissal of

Plaintiff's fraud and fraudulent concealment claims.

Additionally, Plaintiff's fraud claims relative to the Silver Hill Action are deficiently plead. While Plaintiff alleges that he was fraudulently induced into executing the October 11, 2017 settlement agreement because he was not advised that Prueher left the firm and that the matter lacked trial preparedness, and because he was provided with continuance and withdrawal motions before the settlement (Yannucci. Decl., Ex. A, ¶ 114), Plaintiff fails to specify the speaker, location, manner, and associated intent for any allegedly fraudulent statements. Also, while Plaintiff makes reference to continuance and withdrawal motions, Plaintiff does not allege that same contained any fraudulent statements. As to the alleged omissions, Plaintiff fails to identify who was responsible for the allegedly required disclosures, the context of the omissions, the manner in which Plaintiff was misled, or which defendant, if any, obtained any benefit at Plaintiff's detriment.

Moreover, Plaintiff fails to set forth facts tending to show how any alleged misstatements, fraudulent statements, or fraudulent omissions proximately caused any incurred damages. The First Amended Complaint is devoid of facts articulating how his claimed injury, namely, agreeing to a monetary settlement, was proximately caused by the alleged omissions. Indeed, Plaintiff was aware that Prueher left the firm, that a trial expert was required, and that he received continuance and withdrawal motions, prior to executing the settlement agreement on October 11, 2017. As such, Plaintiff fails to plead facts tending to show that he relied upon any fraudulent statements to his detriment, or that any omission, namely, the notion that ZNC was allegedly unprepared for trial, had any reasonable bearing on his voluntary election to settle the Silver Hill Action.

Finally, Plaintiff fails to allege any injury. "In New York, damages in fraud cases are limited by the "out-of-pocket rule," which provides that plaintiffs in fraud cases may only recover damages "for what they lost because of the fraud, not ... for what they might have gained.... Under the out-

of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013) (internal citations omitted). *See Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993) ("New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses."). Plaintiff expressly confirms he does not seek "the hypothetical value of any better litigation outcome" in the Silver Hill litigation as damages for his fraud claims. (Yannucci Decl., Ex. A, ¶ 115). Plaintiff alleges that in reliance upon the alleged fraudulent statements and/or omissions, he was induced into settling the Silver Hill Action for a monetary award, a settlement he now seeks to invalidate. A monetary award does not constitute a pecuniary loss.

As pertains to the PATH/Braverman Action, Plaintiff's pleading fares no better. As for the allegedly fraudulent statements, Plaintiff identifies email communications authored by Virgil spanning June 15, 2022 through May 12, 2023. (Yannucci Decl., Ex. A, ¶ 116; Ex. E). First, because the emails were authored by Virgil, these claims should be dismissed as against Medina. Second, although Plaintiff alleges that "each" email contains an unspecified "half-truth or omission," Plaintiff fails to allege, with particularly, what statements, if any, were fraudulent or why. Plaintiff also fails to specify what information, if any, was fraudulently omitted from said emails, or who would have been responsible for disclosure. Third, Plaintiff fails to allege that such statements and/or omissions were made to induce Plaintiff's reliance to the benefit of any defendant. Fourth, Plaintiff fails to allege proximate causation or resultant damages. Although Plaintiff alleges that his reliance upon such statements "deprived [him] of a then-available step" to avoid dismissal, he does not seek "the value of the Braverman action or damages for its impairment." (*Id.*, ¶¶ 117 & 121). Instead, Plaintiff seeks "the out-of-pocket costs of the delayed discovery and recover of his property" as sought in his instant conversion (*Id.*, ¶ 121). As shown

above, the American Rule bars Plaintiff's recover the costs he incurred in litigating this lawsuit.

For the reasons detailed above, Plaintiff's fraud and fraudulent concealment claims must be dismissed with prejudice.

### E. COUNT VIII – AIDING AND ABETTING CONVERSION AND BREACH OF FIDUCIARY DUTY AGAINST LBBS DEFENDANTS

"[A] claim of aiding and abetting breach of fiduciary duty has three elements: (1) existence of a breach of fiduciary obligations, of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damages as a result of the breach." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011). "A claim for aiding and abetting conversion requires proof of (1) the existence of a primary violation, (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer." *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 535 (S.D.N.Y. 2011). A pleading must allege "actual knowledge" and "substantial assistance" in the breach." *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 245, 247 (S.D.N.Y.1996).

Plaintiff levies an aiding and abetting conversion and breach of fiduciary duty claim against LBBS Defendants based solely on their representation of ZNC and Virgil in the Related Action. (Yannucci Decl., Ex. A). Plaintiff alleges LBBS Defendants "provided substantial assistance to the conversion and fiduciary breach" claims, with "actual knowledge" by "authoring and transmitting" written communications indicating that Plaintiff had "to identify" and remit "payment" for ZNC's client file and stating that "ZNC represented Plaintiff in only two litigations." (Yannucci Decl., Ex. A, ¶¶ 141-142). This cause of action should be dismissed with prejudice for several reasons.

First, because Plaintiff's primary conversion and breach of fiduciary duty claims fail (*see*

Pts. I(B) and I(C), *supra*), Plaintiff's aiding and abetting conversion and breach of fiduciary duty claims should be dismissed as a matter of law. Aiding and abetting claims are "dependent upon" the underlying claims being adequately plead. *Marino, supra,* 810 F. Supp. 2d at 613; *see Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 245 (S.D.N.Y.1996).

Second, there is no claim (nor can there be) that LBBS Defendants were involved in the underlying PATH/Braverman or Silver Hill Actions and, as such, Plaintiff does not (because he cannot) allege that LBBS Defendants aided or abetted any alleged conversion or breach of fiduciary duty related to the PATH/Braverman or Silver Hill Actions.

Third, and most significantly, each and every challenge by Plaintiff to LBBS Defendants' conduct pertains to actions taken in accordance with the law and the Orders of this Court. While Plaintiff complains of LBBS Defendants' request for payment of the production of the ZNC file, this request reflects the status of the law, and as also reflected by this Court's June 9, 2026 Order: "[A]ssemblage and delivery of documents to [a former legal] client […] is properly chargeable to the client." (ECF Doc. No. 34). In fact, by its June 15, 2026 Order in the Related Action, this Court set a deadline for LBBS Defendants to indicate "the cost for production of documents," which was adhered to. (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. No. 106).

Similarly, while Plaintiff avers that requesting clarification of what files Plaintiff sought constitutes aiding and abetting, this request reflects precisely that which the Court directed of Plaintiff, to wit – to identify "the client files he seeks by June 15, 2026." (Related Action, S.D.N.Y. Case No. 1:24-cv-09830-LJL, ECF Doc. Nos. 106).

Based upon the aforementioned reasons, Plaintiff's aiding and abetting cause of action against LBBS Defendants must be dismissed with prejudice.

## F. COUNTS IX AND X – RACKETEERING AND RACKETEERING CONSPIRACY AGAINST ZNC AND VIRGIL

In short, Plaintiff's RICO causes of action plead little more than conclusory statements listing RICO and RICO conspiracy elements, warranting dismissal as a matter of law.

Plaintiff alleges that there existed an "an association-in-fact enterprise" that "function[ed] as a continuing unit" and whose "common purpose exceeded the conduct of any one member's ordinary affairs: to conceal form Plaintiff his attorneys' defaults and the documentary record demonstrating them, and to withhold Plaintiff's client file containing that record." (Yannucci Decl., Ex. A, ¶ 149). Plaintiff alleges that the enterprise functioned "no later than June 2022 through the present" and "engaged in and affected interstate commence" and that no other individual was "a member of the [e]nterprise or […] committed or agreed to any act of racketeering." (*Id.*).

Plaintiff alleges that in furtherance of the scheme, "Virgil transmitted, by interstate wire" emails dated November 5 and 9, 2022, May 9 and 11-12 of 2023 which provided Plaintiff with updates and filings from the PATH/Braverman Action. (*Id.*, ¶ 152; Yannucci Dec. Ex. E). Plaintiff also relies upon 2026 communications exchanged in this and the Related Action concerning transmittal of ZNC's client file, classifying them as "predicate acts" (despite not alleging that LBBS Defendants were party to the racketeering enterprise). (*Id.*, ¶ 155). As for damages, Plaintiff alleges he was deprived of "possession, use, and control" of ZNC's client file, and costs associated with storing and processing the client file. (*Id.*, ¶ 156).

"An 'association-in-fact' enterprise must have at least three structural features: 1) a purpose, 2) relationships among those associated with the enterprise, and 3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359–60 (S.D.N.Y. 2014). Allegations that "[d]efendants came together for the purpose of engaging in the fraudulent activity that form[ed] the basis of the asserted

pattern of racketeering activity" renders the allege enterprise and the pattern "one and the same," which is insufficient as a matter of law. *See Lynn v. McCormick*, 2017 U.S. Dist. LEXIS 207543 at *12-*14 (S.D.N.Y. 2017) (internal quotations and citation omitted).

First, Plaintiff fails to adequately plead an association-in-fact RICO enterprise distinct from the persons and activities comprising the enterprise affairs. Moreover, beyond asserting vague and self-serving conclusions, Plaintiff only alleges that Virgil and ZNC, an attorney and the law firm that employs him, committed wire fraud for the purpose of withholding Plaintiff's records to conceal an alleged default in the PATH/Braveman Action. (Yannucci Decl., Ex. A, ¶¶ 149-155). Such summary assertions fail as a matter of law to plead an "association-in-fact" enterprise. Nevertheless, Plaintiff's allegations are belied by his allegations that the PATH/Braverman Action was not dismissed until "April 12-14, 2023" and that "Virgil first disclose[d] the dismissal" on "May 9-12, 2023." (*Id*., p. 13). Plaintiff cannot maintain that a RICO enterprise allegedly formed for the purpose of concealing a default in the PATH/Braverman Action was not only formed prior to the alleged default, and exhibited an intended longevity for years after Virgil's voluntarily disclosed the default to Plaintiff. In addition, the communications identified by Plaintiff do not indicate any request or refusal to produce ZNC's client files. (Yannucci Dec. Ex. E).

Second, Plaintiff fails to allege a pattern of racketing activity. A pattern of racketing activity requires the commission of "at least two predicate acts of racketeering activity that are related and continuous." *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017). "The elements of wire fraud under 18 U.S.C. § 1343 are (1) a scheme to defraud (2) to get money or property, (3) furthered by the use of interstate wires." *U.S. v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000). As demonstrated above, the identified communications serving as the basis of this claim do not contain any client file request on the part of Plaintiff, nor do they include any scheme to defraud

Plaintiff of his money or property. (Yannucci Dec. Ex. E). As such, no wire fraud has been pled.

Third, Plaintiff fails to allege related and continuous racketeering activity, which requires allegations that the predicate acts "generally extend over at least two years. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). "The continuity requirement also imposes on a RICO plaintiff the obligation of alleging more than a scheme with a "single, narrow purpose" that is "directed towar[d] a single victim." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 509 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (internal quotations and citations omitted). Here, Plaintiff alleges a single narrow purpose, namely, concealing the default in the PATH/Braverman Action. As shown above, Plaintiff alleges that Virgil voluntarily disclosed the default less than one month after its occurrence, and Plaintiff fails to identify any communications in which ZNC's client file was requested or refused to be produced. Accordingly, Plaintiff fails to plead facts tending to show any continuous racketing activity extending over two years.

Finally, Plaintiff fails to allege a RICO injury, which requires injury to "business or property" with "some direct relation between the injury asserted and the injurious conduct alleged" with mere "foreseeability" being insufficient at the pleading stage. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (internal citations omitted). Initially, the loss of a prospective legal claim is insufficient and "legal fees […] incurred in *offensive* litigation" are generally "not RICO injuries." *Azima v. Dechert LLP*, No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106, at *36 (S.D.N.Y. Sept. 26, 2024). As shown above, Plaintiff does not plead facts tending to show he requested his ZNC's client file prior to 2026, and said file was produced by Law Firm Defendants in adherence with this Court's directives. Although Plaintiff seeks to recovery litigation costs associated with storing and reviewing the records he personally requested, same is precluded pursuant to the American Rule, and does not constitute injury to business or property.

Because Plaintiff's RICO claim fails, his RICO conspiracy claim also fails. *See Williams v. Affinion Grp., LLC,* 889 F.3d 116, 126 (2d Cir. 2018) (finding that a RICO conspiracy claims failed when the alleged "conspiracy involved an agreement to commit the same substantive RICO violations [already] deemed insufficiently pled [by the Court]."). Additionally, Plaintiff fails to plead a specific agreement to enter into the conspiracy between Virgil and ZNC. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* No. 91 Civ. 2923, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) ("district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim.").

As such, both of these causes of action must be dismissed with prejudice.

## G. COUNT XI – EQUITABLE ACCOUNTING AGAINST ZNC AND VIRGIL

By way of this cause for action, Plaintiff requests "a complete, sworn accounting" of "all settlement proceeds received; the account into which they were deposited; every transfer, fee, disbursement, and deduction, every endorsement or authorization; the receipt of each payment; and the basis, authorization, and computation of the $15,000 ZNC retained as its contingency fee." (Yannucci Decl., Ex. A, ¶ 165). Although Plaintiff claims there "is no signed fee agreement" in the "produced [client] file" (Yannucci Decl., Ex. A, ¶ 165), ZNC's produced the May 3, 2015 retainer agreement which governs ZNC's representation of Plaintiff in the Silver Hill Action and expressly identifies how all fees and expenses would be handled. (Yannucci Decl., Ex. O).[8] Notably, Plaintiff expressly "agree[d] to reimburse [ZNC] for all such expenses, which [he] underst[ood] are separate

---

[8] Plaintiff "agree[d[ to pay [ZNC] one-third (or 33 1/3 %) of the total amount of money recovered […] by way of settlement." Plaintiff also agreed that ZNC would "advance all of the reasonable and necessary costs and expenses on [his] behalf in order to thoroughly prosecute" the Silver Hill Action" and would "pay all preparation and trial costs incurred the handling of [the] claim, including but not limited to: investigative expenses, court costs, trial expenses, expert witness fees, online research charges, Marshals' fees, court reports' fees and all other reasonable and necessary expenses associated with a throughout and complete prosecution of [the] claim." (Yannucci Decl., Ex O).

and apart from the attorneys' fees and [was to] be paid from the net proceeds recovered in [the] case after the deduction of the attorneys' fees are taken." (*Id.*).

Plaintiff also alleges ZNC's client file does not contain any "closing statement, or itemization" for the settlement, attorneys' fees, and expenses. (Yannucci Decl., Ex. A, ¶ 165). However, ZNC's production contains a December 8, 2017 settlement statement, which itemizes all attorneys' fees, disbursements, and expenses, and provides that out of the $40,000.00 settlement, attorneys' fees amounted to $13,333.33, ZNC's disbursements and expenses amounted to $14,787.17, and that Plaintiff was entitled to $11,879.50 of the total amount. (Yannucci Decl., Ex. P). Finally, Plaintiff was not provided the December 8, 2017 settlement statement for execution because Virgil accepted Plaintiff's request, by November 7, 2017 email exchange, to reduce ZNC's attorney's fees and expenses to $15,000.00, and to increase Plaintiff's share of the settlement proceeds to $25,000.00. (Yannucci Decl, Ex. Q).

"The Second Circuit has held that New York law clearly requires that a principal demonstrate the unavailability of an "adequate remedy at law" in order to prevail on a claim for an equitable accounting, *in addition* to establishing the existence of a fiduciary relationship. *Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) (internal citations omitted). The *Soley* Court relied upon *Unitel Telecard Distrib. Corp. v. Nunez,* 90 A.D.3d 568, 569 (N.Y.App.Div. 1st Dep't 2011), which requires that "[t]o be entitled to an equitable accounting, a claimant must demonstrate that he or she has no adequate remedy at law." Here, Plaintiff's request for an accounting should be dismissed. First, the Silver Hill Action was governed by the fee schedule contained within ZNC's retainer agreement. (Yannucci Decl., Ex. O). Second, while the client file did contain a settlement statement, same was rendered moot as it was superseded by the written fee agreement entered into between Plaintiff and Virgil on November 7, 2017. (Yannucci Decl., Exs. P & Q).

Third, Plaintiff fails to show the absence of other adequate remedies at law, particularly given his that the remedy demanded by the accounting, namely, disgorgement of fees, is sought as part of Plaintiff' breach of fiduciary duty claim. (Yannucci Decl., Ex. A, ¶ 165).

Plaintiff's equitable accounting cause of action must be dismissed with prejudice.

## POINT II

## IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED BASED UPON THE FUGITIVE DISENTITLEMENT DOCTRINE

If this Court declines to dismiss Plaintiff's First Amended Complaint or any particular cause of action against Law Firm Defendants, it is respectfully requested the entirety of this action or any remaining cause of action be dismissed pursuant to the fugitive disentitlement doctrine.

"A district court must complete a two-step analysis to determine whether a defendant is a fugitive who may be disentitled from relief in federal court": (1) "the court must decide whether the defendant is, in fact, a fugitive"; and (2) if disentitling the fugitive "would serve the [fugitive disentitlement] doctrine's objectives." *United States v. Bardakova*, *supra,* 145 F.4th at 240.[9] The first step of this analysis is satisfied. By July 7, 2025 Order, the Court in *United States of America v. Ari Teman*, United States District Court, Southern District of New York, Case No. 1:19-cr-00696, declared Plaintiff "a fugitive under Second Circuit Case law" for his failure to abide by Court imposed travel restrictions and conditions following his release from prison. (Yannucci Decl., Ex. R). Regarding the second step of this analysis, Plaintiff admits in his Complaint that he "[c]urrently

---

[9] Such objectives include: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *United States v. Bescond*, 24 F.4th 759, 767, 771 (2d Cir. 2021).

[resides] in Tel Aviv, Israel." (Yannucci Decl., Ex. A, ¶ 13).[10]

Here, this Court should utilize its inherent power to dismiss Plaintiff's First Amended Complaint pursuant to the fugitive disentitlement doctrine, as: (1) it will be difficult to enforce any Court Orders in this proceeding that may be rendered against Plaintiff; (2) Plaintiff should be penalized and parties should be disincentivized against pursuing frivolous, burdensome, and harassing civil litigation while flooding the criminal legal process as an overseas fugitive; and (3) if Plaintiff remains a fugitive and refuses to return to the United States, Law Firm Defendants will undoubtedly incur prejudice in its ability to prepare defenses, as Law Firm Defendants will be unable compel Plaintiff to appear for deposition, trial, or an independent medical examination.

As such, dismissed pursuant to the fugitive disentitlement doctrine is appropriate.

## CONCLUSION

Law Firm Defendants respectfully request issuance of an Order: (a) dismissing Plaintiff's First Amended Complaint in its entirety against Law Firm Defendants pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and the doctrine of prior action pending; or, in the alternative, (b) dismissing Plaintiff's First Amended Complaint pursuant to the fugitive disentitlement doctrine; and (c) granting such other and further relief as this Court deems just and proper.

[10] The Court in *United States of America v. Ari Teman*, by way of its April 3, 2026 Order, denied Plaintiff's motion to vacate his conviction, grant a new trial, and eliminate his fugitive status as "frivolous and vexatious" and determined that the "fugitive disentitlement doctrine" applied to Plaintiff's application. (Yannucci Decl., Ex *).

Dated: New York, New York
August 20, 2026

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Cristina Yannucci, Esq.
Cristina Yannucci, Esq.
Sam Cohen, Esq.
*Attorneys for Law Firm Defendants*
140 Broadway, Suite 3100
New York, New York 10005
Phone: (212) 232-1412
Email: cristina.yannucci@lewisbrisbois.com
Email: sam.cohen@lewisbrisbois.com

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1 of the Local Rules of the Southern Districts of New York, Hon. Lewis J. Liman, D,J.'s Individual Practice Rule 2.I. for Civil Cases, and this Court's July 24, 2026 Order (ECF Doc. No. 57), that the foregoing

**MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LAW FIRM DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

was prepared on a computer using Microsoft Office 365.

A proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman.

Point size: 12 (10 for footnotes)

Line spacing: Double.

Page Count: That the total page count is less than 35 pages, exclusive of the caption, table of contents, table of authorities, signature black, and required certificates.

Dated: New York, New York
August 20, 2026

/s/ Cristina R. Yannucci, Esq.
CRISTINA YANNUCCI, ESQ.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 20, 2026, copies of the following documents:

**(1) NOTICE OF MOTOIN; (2) DECLARATION OF CRISTINA YANNUCCI, ESQ. SUBMITTED IN SUPPORT OF LAW FIRM DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; AND (3) MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF LAW FIRM DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDEDCOMPLAINT**

were served upon all parties and counsel of record via ECF.

Dated: New York, New York
August 20, 2026

/s/ Cristina R. Yannucci, Esq.
CRISTINA YANNUCCI, ESQ.