# **EXHIBIT I**

**Ari B. Teman**
ari@teman.com

June 23, 2026

**VIA EMAIL**

Cristina R. Yannucci, Esq.

Lewis Brisbois Bisgaard & Smith LLP

140 Broadway, Suite 3100

New York, New York 10005

**Re:** *Teman v. Zeldes Needle & Cooper LLP, et al., No. 1:24-cv-09830 (LJL) (S.D.N.Y.)*

Ms. Yannucci:

I am in receipt of your June 22, 2026 letter responding to my client-file request pursuant to the Court's June 9, 2026 Order. I accept ZNC's proposed production specifications, namely production of my entire client file in native format as maintained in the ordinary course of business, with metadata intact, including reproduction of all records previously produced in discovery, delivered through a shared repository. On that basis, production should commence immediately and proceed on a rolling basis. As your letter acknowledges, and consistent with the Court's June 9, 2026 Order, any dispute concerning cost does not delay production, and I ask that production begin without waiting for the cost issue to be resolved.

I write to address three points: (1) the scope of the file, as to the Buch and United States v. Teman matters; (2) the recently disclosed collection of approximately 21.1874 GB of data and its bearing on prior completeness representations; and (3) the proposed production costs.

**I. The Buch and United States v. Teman Materials Are Part of My Client File.**

Your letter takes the position that materials relating to Dr. Sandip Buch v. Teman and United States v. Teman fall outside my client file because ZNC "never appeared or made filings" in those actions. Whether ZNC entered an appearance is not the test. The client file consists of the materials ZNC created, received, maintained, or possessed in the course of representing me. ZNC's own conduct, not the caption of a docket, defines that scope.

As to Buch: ZNC attorneys communicated regarding the Buch matter and provided advice concerning the Buch matter. Attached as Exhibit 1 is a September 11, 2018 email I sent to Jeremy Virgil at his ZNC email address (jvirgil@znclaw.com), copied to jvirgil.znc@gmail.com, expressly requesting Mr. Virgil's legal analysis regarding potential claims involving PATH, Buch, and Reddy and discussing litigation strategy as to those claims. ZNC also advised on consolidating the Buch matter with the PATH/Braverman action and on the timing of the Buch matter relative to the criminal proceedings in United States v. Teman. These are representation activities concerning Buch. The resulting communications, notes, drafts, and related materials reside in repositories controlled by ZNC and Mr. Virgil, and they are part of my client file regardless of whether ZNC formally appeared in the Buch action.

The September 11, 2018 email is particularly significant because it was copied to jvirgil.znc@gmail.com. Accordingly, ZNC cannot reasonably contend that Buch-related records were confined to a matter in which it did not appear, nor can it reasonably exclude jvirgil.znc@gmail.com from any collection, search, or production effort concerning my client file. If jvirgil.znc@gmail.com was not collected and searched, please explain why. Similarly, please confirm whether materials maintained in prueher76@gmail.com were collected and searched, and whether ZNC contends that materials maintained in that account fall outside my client file.

As to United States v. Teman: ZNC, as my civil counsel, coordinated with my criminal defense counsel, Justin Gelfand, Esq., and Joseph DiRuzzo, Esq., regarding overlapping facts common to my civil matters and the criminal proceeding, and regarding the sequencing of the civil matters relative to the criminal trial. ZNC's communications with me and with Messrs. Gelfand and DiRuzzo concerning those matters, and any related materials, were generated in the course of ZNC's representation of me and concern me directly. They are part of my client file regardless of whether ZNC appeared in the criminal action.

Accordingly, the client-file production should include all Buch-related and United States v. Teman-related materials within ZNC's possession, custody, or control, including those maintained by Mr. Virgil and any other custodian. To the extent ZNC contends any such category is not part of the file, please identify the category and the specific basis for that position so the issue can be presented to the Court if necessary.

**II. The 21.1874 GB Collection and Prior Completeness Representations.**

Your letter states that an eDiscovery vendor has ingested approximately 21.1874 GB of data and exported approximately 20.5501 GB to a production platform, and that ZNC is now processing this data to produce my "entire client file." ZNC previously represented that responsive materials and my client file had been produced. The chronology described in your letter is difficult to reconcile with those prior representations concerning completeness, because the collection and processing of 21.1874 GB of data ordinarily precedes, rather than follows, a determination that a production is complete. The June 22 letter appears to describe the creation of a client-file collection now, rather than the production of a client file that had already been identified, maintained, and produced. To understand how the prior representations relate to a 21 GB collection only now being processed, please provide the following:

1. Identify the eDiscovery vendor, the project manager assigned, every individual who collected, processed, exported, hosted, reviewed, or otherwise handled my data, the date the vendor was retained, and the date it first received data relating to me.
2. Identify each source repository contributing to the collection and the approximate volume drawn from each.
3. Identify every custodian whose data was included in the 21.1874 GB collection and the approximate volume collected from each custodian.
4. Confirm whether each of the following was searched, collected, and included in the collection: jvirgil.znc@gmail.com; prueher76@gmail.com; Jeremy Virgil's firm email accounts; Jason Prueher's firm email accounts; PST/OST archives for each; shared drives; cloud-storage repositories; document-management systems; and archived repositories.

5. Produce the vendor's chain-of-custody logs, collection logs, processing reports, exception reports, export reports, and custodian/source-repository reports relating to my files.
6. State whether, at the time ZNC made prior discovery responses, document productions, certifications, or representations concerning the completeness of production, the 21.1874 GB collection had been identified, collected, processed, searched, and reviewed; and if not, explain how ZNC determined that its prior representations regarding completeness were accurate before this collection was identified and processed.
7. When prior discovery responses, productions, certifications, and completeness representations were made, had the data now comprising the 21.1874 GB collection been collected? If not, identify which representations were made before that data was collected.
8. Identify the date on which each repository listed in Paragraph 4 was first identified as a source of potentially responsive information, and the date on which each such repository was first collected.

I also request immediate production of all native files already collected and maintained in the ordinary course of business, together with associated metadata, through the shared repository, without waiting for completion of additional imaging, hosting, Bates-stamping, or export procedures.

**III. Production Costs.**

I dispute the proposed production costs of approximately $4,179.20 to $4,404.20. This is a return of my own client file and client property, not a litigation production. ZNC already possesses these files and, by your own description, maintains them in native form in the ordinary course of business. Returning them requires only that ZNC copy the existing native files, with their metadata, into a secure, password-protected shared folder.

That can be accomplished using a standard corporate Google Drive, Box, SharePoint, or Dropbox folder, at a cost well under $100. It does not require an eDiscovery vendor, per-gigabyte ingestion or export fees, a hosted review or production platform, load files, or Bates-stamping. I did not request a litigation-style production; I requested my native files with metadata. The per-GB vendor charges, hosting/export apparatus, and Bates production reflected in your letter are the product of a method ZNC elected, not a method this request required.

To the extent ZNC nevertheless elected to route a client-file return through an eDiscovery vendor, or to the extent costs arise from ZNC having to assemble or reconstruct materials it should already maintain in the ordinary course, those are costs occasioned by ZNC's own choices and circumstances, not by my request, and they are not properly charged to me. As your letter recognizes, the Court reserved judgment on whether I must pay for production of the client file, and ZNC has committed to produce prior to resolution of any cost dispute. I reserve all rights on the cost question and intend to be heard on it before the Court if it is not resolved.

Please confirm that production will commence immediately on a rolling basis through a secure, password-protected shared folder as described above, and please respond to the scope and collection questions set out in Parts I and II.

Very truly yours,

Ari Teman